IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | * | |
| | * | |
| | * | Civil Action No.: 8:17-cv-00964-PWG |
| Plaintiffs, | * | Class Action Complaint |
| vs. | * | |
| Government Employees Insurance Company (GEICO), a Maryland Company, and its affiliates, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND CLASS ALLEGATIONS**

/s/  George M. Church
George M. Church (Fed. Bar No. 00133)
Laura A. Cellucci (Fed. Bar No. 25119)
Joshua F. Kahn (Fed. Bar. No. 18238)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
gchurch@milesstockbridge.com
lcellucci@milesstockbridge.com
jkahn@milesstockbridge.com

/s/ Peter D. Weinstein
Peter D. Weinstein (Fed. Bar No. 913502)
COLE, SCOTT & KISSANE, P.A.
Lakeside Office Center, Suite 500
600 N. Pine Island Road
Plantation, Fla.  33324
Tel: (954) 343-3951
peter.weinstein@csklegal.com
Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Government Employees Insurance Company*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................... 1

II.     BACKGROUND ..................................................................... 5

III.    LEGAL STANDARD............................................................... 7

IV.     ARGUMENT ......................................................................... 9

        A.      The Amended Complaint Should Be Dismissed Because
                Plaintiffs Lack Standing.................................................. 9

        B.      The Complaint Should Be Dismissed As Plaintiffs Rely Upon
                Conclusions, Rather Than Facts, To Support Their Claims ........... 10

                1.      Plaintiffs have failed to set forth a single GEICO
                        settlement with a claimant that would trigger GEICO's
                        obligation to reimburse an MAO ....................................... 10

                2.      Plaintiffs fail to plead basic facts to support
                        reimbursement of conditional payments as a
                        Medicare Secondary Payer ................................................ 14

        C.      It Is Appropriate To Dismiss The Class Allegations At The Pleading
                Stage ............................................................................. 17

        D.      The Court Should Dismiss The Class Allegations Because Plaintiffs'
                Class Definition Is Deficient And Plaintiffs Fail To Allege Facts To
                Support The Class Action Criteria Of Rule 23(a) And (b)(3) ........ 19

                1.      Plaintiffs' class definition is overly broad and does not
                        necessarily include class members entitled to relief from
                        GEICO ........................................................................ 19

                2.      Plaintiffs have failed to allege facts sufficient to
                        support certification under Rule 23(a) and (b)(3) ............... 23

Page

E.    Plaintiffs' Amended Class Action Allegations Require Dismissal Because The Class Action Criteria Under Rule 23(b)(3) Can Never Be Met As A Matter Of Law ........................................................... 24

    1.    Individual questions will invariably predominate over any common questions as a matter of law ................................. 24

    2.    Plaintiffs cannot satisfy the superiority and manageability requirements of Rule 23(b)(3) as a matter of law .................................................. 31

F.    Plaintiffs Cannot Maintain A Class Action Under Rule 23(b)(2) Because The Relief They Seek Is Primarily Monetary ................................................................................. 32

G.    Plaintiffs Cannot Maintain A Class Action Under Rule 23(c)(4) ................................................................................ 32

V.    CONCLUSION ................................................................................. 34

## CASES

Page

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998).............................. 32

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................. 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... *passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. *passim*

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331
          (4th Cir. 1998) .............................................................................................. 30

*California Ins. Guarantee Ass'n. v. Price,*
          2017 WL 1737717 (C.D. Cal. May 3, 2017) ............................................... 16, 17, 26

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996).......................................... 32

*Chatham v. Sears, Roebuck & Co.,* 2007 WL 4287511(N.D. Ill 2007) ................. 22

*Cooper Univ. Hosp. v. Sebelius,* 636 F.3d 44 (3d Cir. 2010) ................................ 4

Diacakis v. Comcast Corp., 2013 WL 1878921 (N.D. Cal. May 3, 2013)............. 21, 22

Friedman v. Dollar Thrifty Auto Group, 304 F.R.D. 601 (D. Colo. 2015) ............ 22

*General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ......................................... 18

*Gunnels v Healthplan Servs., Inc.*, 348 F. 3d 417 (4th Cir. 2003)......................... 34

*Humana Med. Plan Inc. v. Western Heritage Ins. Co.,*
          832 F.3d 1229 (11th Cir. 2016) .................................................................. 5, 27

*In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.,*
          685 F.3d 353 (3d Cir. 2012)........................................................................ 5

*In re A.H. Robins*, 880 F. 2d 709 (4th Cir. 1989) .................................................. 34

*In re Yasmin & Yaz (Drospirenone) Mktg.,* 275 F.R.D. 270 (S.D. Ill. 2011) ......... 19

Page

*In the case of E.M.P.,* 2001 WL 6960487 (H.H.S. June 28, 2011)........................ 17

*In the case of B.H.,* 2013 WL 8718442 (H.H. S. July 31, 2013) ........................... 17

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................ 7, 8

*MSP Claims 1, LLC v. Security Nat'l Ins.Co.,* Case No. 2015-28181-CA-13
    (11th Jud. Cir. Miami-Dade Cty. Ct., Fla. March 31, 2017)...................... *passim*

*MSP Recovery, LLC* v. *Allstate Ins. Co.,*
    2015 WL 5882122 (S.D. Fla. Oct. 6, 2015)................................................. 13

*Oshana v Coca-Cola Co.,* 472 F.3d 506 (7th Cir. 2006) ........................................ 21, 22

*Ostrof v. State Farm Mut. Auto. Ins. Co.,* 200 F.R.D. 521
    (D. Md. 2001) ............................................................................................ 17

*Parra v. PacifiCare of Arizona, Inc.,* 715 F.3d 1146 (9th Cir. 2013) ................... 4

*Perez v. Metabolife Int'l Inc.* 218 F.R.D. 262 (S.D. Fla. 2003)............................. 20

*Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943 (6th Cir. 2011) ................. 19

*Pye v. United States,* 269 F.3d 459 (4th Cir. 2001) ................................................ 7

*Ross-Randolph v. Allstate Ins. Co.,* 2001 WL 36042162
    (D. Md. May 11, 2001) .............................................................................. 17, 18

*Southwestern Refining Co., Inc. v. Bernal*, 22 S.W. 3d 425 (Tex. 2000)............. 31

*Spokeo Inc., v. Robins,* ___ U.S. ___ , 136 S.Ct. 1540 (2016) ............................. 7, 8, 9

*Stanley v. Cent. Garden & Pet Corp.,* 891 F. Supp. 2d 757 (D. Md. 2012)........... 18

*Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.,*
    760 F.3d 307 (3d Cir. 2014)........................................................................ 7

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) .................... 32

*United States ex rel. Takemoto v. Nationwide Mut. Ins.,*
    674 Fed. Appx. 92 (2d Cir. 2017)............................................................... 13

Page

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.,*
    274 F.R.D. 229 (S.D. Ill. 2011) .................................................. 22

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) .......................................... 31

*Warth v. Seldin,* 422 U.S. 490 (1975)...................................................................... 7, 9

*Wright v. Family Dollar, Inc.,* 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ........ 19

## RULES/REGULATIONS

Fed. R. Civ. P. 8 ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................... *passim*

Fed. R. Civ. P 23 ...................................................................................... *passim*

Fed. R. Civ. P. 23(a) ............................................................................... *passim*

Fed. R. Civ. P. 23(b)(2)............................................................................ *passim*

Fed. R. Civ. P. 23(b)(3)............................................................................ *passim*

Fed. R. Civ. P. 23(c)(1) ............................................................................ 18

Fed. R. Civ. P. 23(c)(4) ............................................................................ 4, 32, 33, 34

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................... 18

Fed. R. Civ. P. 23(c)(2) ............................................................................ 19

Fed. R. Civ. P. 23(d)(1)(D) ...................................................................... 18

42 C.F.R. §405.902 .................................................................................. 6

42 C.F.R. §405.904 .................................................................................. 6

42 C.F.R. §405.906(a)(4) ......................................................................... 6

42 C.F.R. §405.921(c).............................................................................. 6

Page

42 C.F.R. §405.924(b)(16) ........................................................ 6

42 C.F.R. § 411.21 ................................................................... 5, 15

42 C.F.R. §411.22(c) ............................................................... 6

42 C.F.R. §411.24(h) .............................................................. 6

42 C.F.R. §411.24(i) ............................................................... 6

42 C.F.R. §422.108(b) ............................................................ 16

42 U.S.C. §1395y(b)(3)(A) ..................................................... 3

42 U.S.C. §§1395w-21-29 ...................................................... 5

42 U.S.C. §1395w-22(a)(4) ..................................................... 5

42 U.S.C. §1395y(b) ............................................................... 5

42 U.S.C. §1395y(b)(2)(A)(i)-(ii) ........................................... 15

42 U.S.C. §1395y(b)(2)(B)(i)-(ii) ........................................... 6

42 U.S.C. §1395y(b)(2)(B)(iii) ............................................... 23, 29

42 U.S.C. §1395y(b)(2)(B)(vi) ............................................... 29

## OTHER

Fed. R. Civ. P. 23 Advisory Committee's Note ..................................... 31, 32

CMS Medicare Secondary Payer Manual, Publication 100-05 .............................. 15

CMS "Applicable Plan" Appeals ................................................................. 6

Manual for Complex Litig. §21.222 (4th ed. 2004) .............................................. 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | * | |
| | * | |
| | * | Civil Action No.: 1:17-cv-00964-PWG |
| Plaintiffs, | * | Class Action Complaint |
| vs. | * | |
| Government Employees Insurance Company (GEICO), a Maryland Company, and its affiliates, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND CLASS ALLEGATIONS**

Defendant, Government Employees Insurance Company, (hereafter "GEICO"), by and through its undersigned attorneys, and pursuant to Local Rule 105, submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' First Amended Complaint and Class Allegations pursuant to Rules 12(b)(1), 12(b)(6) and Rule 23.

## I.   INTRODUCTION

On April 6, 2017, Plaintiffs, on behalf of themselves and putative class members, filed a class action complaint (the "original complaint") asserting certain violations of the Medicare Secondary Payer ("MSP") statute, 42 U.S.C. §1395y(b), of the Medicare Act.   Plaintiffs'

complaint is one of many virtually identical complaints filed against other property and casualty insurers in federal courts throughout the country.[1]

On June 16, 2017, GEICO moved to dismiss the original complaint based on numerous deficiencies in Plaintiffs' original allegations.  *See* Doc No. 27.  Plaintiffs' amended complaint, filed on June 30, 2107, barely addresses the issues raised in GEICO's original motion to dismiss. The vast majority of the changes in the amended complaint are stylistic or correct typographical errors.  The only substantive changes are (1) a clarification that Plaintiffs seek reimbursement of payments for medical expenses on behalf of claimant Medicare beneficiaries (hereafter "claimant") with whom GEICO settled claims on behalf of its insureds (*see e.g.*, Am. Compl. ¶¶1, 17); (2) the allegation that "[t]he identity of the Medicare Beneficiary, the MAO, and more specific details regarding the claim, settlement and medical expenses will be provided to Defendant during the course of discovery" and that the "[f]ull details" of the settlements at issue are "in Defendant's possession and will be located and assessed through the process of discovery" (*id.* ¶¶51, 53, n. 7); (3) the legal contention that Plaintiffs are "not required to plead the particularly [sic] of any specific medical treatment that was not reimbursed by Defendant" (*id.* ¶52); (4) a nebulous description of an Ohio resident, identified only as "Mr. V.G.,"  who was injured in an accident purportedly caused by a GEICO insured on an unidentified date who subsequently received Medicare benefits from an unidentified Medicare Advantage Organization ("MAO"), and who settled his claim with GEICO (*id.* ¶53); and (5) a revised class definition, which, as explained below, is overly broad and does not necessarily include any class member entitled to relief.  Like the original complaint, the amended complaint features only conclusory allegations.  There are no substantive changes and Plaintiffs have not otherwise addressed the

---

[1] These cases are set forth in GEICO's May 30, 2017 letter to the Honorable Paul W. Grimm. Doc No. 19.

multitude of pleading deficiencies identified by GEICO in its previous motion.  Plaintiffs are still attempting to pursue a class action without bringing an actual claim.

Plaintiffs' amended complaint and class allegations should be dismissed.  First, pursuant to Rule 12(b)(1), the amended complaint should be dismissed because it fails to allege an Article III case or controversy over which this Court may exercise subject matter jurisdiction.

Second, pursuant to Rule 12(b)(6), the amended complaint should be dismissed because it rests on legal allegations and conclusions, not facts, and therefore fails to state a claim upon which relief can be granted.  Pleading the particulars of GEICO's purported failure to reimburse conditional payments made by Plaintiffs' MAO assignors is not just a technical detail, but is an essential element of Plaintiffs' lone asserted count, styled by Plaintiffs as "Private Cause of Action Under 42 U.S.C. §1395y(b)(3)(A)."  The crux of the allegations in Count I is that GEICO "*failed to appropriately reimburse* Class Members after entering into settlements" with claimants whose Medicare Plans were administered by a Class Member.  *Id.* ¶56.[2] Plaintiffs further allege, without any factual support, that "in each case [GEICO] was primary payer for all Medicare Services instead of the Plaintiffs and the Class Members." *Id.* ¶62. Then they allege that a "number of Medicare Part C beneficiaries were involved in incidents which resulted in the provision of Medicare Services." *Id.* ¶63.  Importantly, however, Plaintiffs make no effort to tie those incidents to GEICO.  Nevertheless, Plaintiffs leap to the assertion that GEICO "failed to administratively appeal the MAO's right to reimbursement" without any mention that the MAOs complied with their numerous obligations under the MSP statute. *Id.* ¶64.  Despite amending their complaint, Plaintiffs have again failed to include facts

---

[2] In their original complaint, Plaintiff referred to settlements between GEICO **and its insureds**. In the amended complaint, Plaintiffs have revised their allegations and now refer to settlements between GEICO and claimants enrolled in Medicare Advantage plans administered by the putative class members. *See, e.g.*, Am. Compl. ¶66.

in Count I to support the claim that they are entitled to reimbursement from GEICO.  Even assuming the truth of Plaintiffs' allegations (*Id.* ¶¶56-69), Plaintiffs have again failed to plead facts that could support a cause of action against GEICO under the MSP statute.

Finally, Plaintiffs' class allegations should be dismissed for several reasons: (1) Plaintiffs' revised class definition is overly broad as it does not define a class whose members would be entitled to recover from GEICO; (2) no facts have been alleged to support the Rule 23(a) and (b)(3) class action requirements; (3) even with the amendments, Plaintiffs cannot, under any scenario, meet the predominance requirements of Rule 23(b)(3) due to the individual nature of their claims, nor will they be able to show that a class action is a superior and manageable method to fairly and efficiently adjudicate this case; (4) the relief Plaintiffs seek is primarily monetary thereby preluding certification under Rule 23(b)(2) as a matter of law; and (5) the same deficiencies that preclude certification under Rule 23(b)(3) preclude certification under Rule 23(c)(4).

In short, not only does this matter present highly individualized issues inherent in claims hinging upon personal injury settlements, it also involves navigating a labyrinth of Medicare statutory and regulatory provisions, further complicating every aspect of evaluating even a single claim.   Indeed, the Medicare Act has been described as one of "'the most completely impenetrable texts within human experience.'"  *Parra v. PacifiCare of Arizona, Inc*., 715 F.3d 1146, 1149-50 (9th Cir. 2013) (quoting *Cooper Univ. Hosp. v. Sebelius,* 636 F.3d 44, 45 (3d Cir. 2010)).   Accordingly, GEICO respectfully requests that this Court enter an order dismissing Plaintiffs' First Amended Complaint and Class Allegations with prejudice.

## II.   **BACKGROUND**

Before 1980, "Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Humana Med. Plan Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016) (citation omitted).  In 1980, however, Congress enacted a series of cost-cutting amendments to the Medicare program, collectively known as the Medicare As Secondary Payer statute, codified in 42 U.S.C. §1395y(b).  The MSP statute "inverted that system; it made private insurers covering the same treatment the 'primary' payers and Medicare the 'secondary' payer.'"  *Id.* (citation and some quotation marks omitted). "Primary plan[3]" is defined as a "group health plan or large group health plan . . . and a workmen's compensation law, or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance."  42 U.S.C. §1395y(b)(2)(A)(ii).

In 1997, Medicare Part C, known as the Medicare Advantage program, was enacted.  *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 357 (3d Cir. 2012); 42 U.S.C. §§1395w-21 to -29.  "Part C allows Medicare enrollees to obtain their Medicare benefits through private insurers (MAOs) instead of receiving direct benefits from the government under Parts A and B."  *Avandia*, 685 F.3d at 357.  MAOs may act as secondary payers in situations where Medicare could act as a secondary payer.  42 U.S.C. §1395w-22(a)(4) (citing 42 U.S.C. §1395y(b)(2)).

While under the MSP statute, "Medicare benefits are 'secondary' to other benefits available through 'primary plans,' . . . not all secondary payments qualify for reimbursement as conditional payments under the Medicare scheme."  *See* Exhibit 1 (Mar. 31, 2017 Order

---

[3] Primary plans are also described in the regulations as "applicable plans" (*see* 42 C.F.R. §405. 902) and "primary payers" (*see* 42 C.F.R. 411.21).

Granting Motion to Dismiss in *MSPA Claims 1, LLC v. Security Nat'l Ins. Co.*, Case No. 2015-28181-CA-13 (11th Jud. Cir. Miami-Dade Cty. Ct. Fla).  The MSP statute **prohibits** Medicare payments when "payment has been made or can reasonably be expected to be made" under a primary plan.  *Id.* at *10-11 (citing §1395y(b)(2)(A)(ii)).  Consistent with the MSP's payment prohibition provisions, "it is only in the circumstance where a primary plan has received an enrollee's bill from a provider" and the MAO "makes a determination that a primary plan 'has not made or cannot reasonably be expected to make payment'" that the MAO "may make a 'conditional' payment that may qualify for reimbursement."  *Id.* at *11 (citing §1395y(b)(2)(B)(i)-(ii)).  Such payments are "conditional" and subject to reimbursement "if it is demonstrated that [the] primary plan has or had a responsibility to make payment" by way of a settlement, judgment or other award to the beneficiary. §1395y(b)(2)(B)(i)-(ii).

CMS regulations create a hierarchy among parties responsible for reimbursing CMS, stating that "[i]f the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days."  42 C.F.R. §411.24(h).  If the beneficiary does not satisfy that reimbursement obligation, CMS (or an MAO) may also seek reimbursement from a primary payer despite the fact that said plan already paid the beneficiary.  42 C.F.R. §411.24(i).  The primary payer learns of its potential double liability when CMS sends it a "recovery demand letter."  *Id.* at §411.22(c).  That demand letter is an "initial determination" from which a primary payer has the right to appeal through a five-level appellate process.  *See* 42 C.F.R. §§405.902, 405.904, 405.906(a)(4), 405.921(c), 405.924(b)(16); *See* Exhibit 2, CMS "Applicable Plan" Appeals (May 5, 2015).

Thus, in laymen's terms, if a claimant settles a claim with a liability insurer and an MAO has paid medical benefits arising out of the claimant's accident, then the claimant has the

obligation to reimburse the MAO for such payments.  It is only when the claimant fails to reimburse as required, that the MAO may then seek reimbursement from the liability insurer, even though it has already settled the claim.  When an MAO sends a recovery demand letter to a liability insurer under these circumstances, the liability insurer can either make reimbursement or proceed through a five level appeal process (redetermination, reconsideration, ALJ hearing, Appeals Council review and judicial review in a United States District Court.  *See* 42 C.F.R. § 405.904;  *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.* 760 F.3d 307 (3d Cir. 2014) (describing the appellate process undertaken by a claimant who received a settlement which included medical expenses that were subject to reimbursement to Medicare).

### III.   LEGAL STANDARD

#### A.   Rule 12(b)(1)

Rule 12(b)(1) requires dismissal of any claim over which the court lacks subject matter jurisdiction.  The question of standing ultimately asks whether litigants are "entitled to have the court decide the merits of the dispute."  *Warth v. Seldin,* 422 U.S. 490, 498 (1975).  In its constitutional dimension, "standing imports justiciability."  *Id.*  The Supreme Court has consistently recognized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies."  *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547 (2016). Standing, therefore, is a fundamental component of a court's subject matter jurisdiction.  *Pye v. United States,* 269 F.3d 459, 466 (4th Cir. 2001).

To establish standing, the plaintiff must claim an injury-in-fact – "an invasion of legally protected interest" which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560 (1992)).  For an injury to be "particularized" it must "affect the plaintiff in a personal and individual way."  *Id.*  Particularization is necessary to establish an injury-in-fact, but it is not sufficient.  An injury-in-fact must also be "concrete," meaning "'real' and not 'abstract.'"  *Id.*

### B.    Rule 12(b)(6)

The Supreme Court's 2009 opinion, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), reiterated that the pleading requirements of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) should be rigorously enforced by the lower courts when considering a Rule 12(b)(6) motion to dismiss a complaint.  The Court explained that while a complaint does not need "detailed factual allegations," Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

When ruling on a Rule 12(b)(6) motion, a district court must consider "[t]wo working principles."  *Id.*  First, legal conclusions couched as factual allegations need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is ***plausible on its face***.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Rule 8(a)(2)).

## IV.     ARGUMENT

### A.     The Amended Complaint Should Be Dismissed Because Plaintiffs Lack Standing.

The amended complaint fails to plead any facts demonstrating how Plaintiffs or their MAO assignor(s) suffered an injury-in-fact as required to establish standing. Rather, the amended complaint is merely a bare bones pleading that articulates a legal theory of liability,[4] but provides no specifics as to how Plaintiffs or their assignors have been injured. Likewise, by virtue of amending their class definition to include all MAOs or their assignees "who made payments for medical items and services on behalf of their beneficiaries for which the [GEICO] has not reimbursed in full or in part after [GEICO] entered into settlements with Medicare Beneficiaries," (Am. Compl. ¶55), Plaintiffs have defined a class that does not necessarily include a single member that has sustained an injury. Merely because an MAO made a payment that was not reimbursed by GEICO means nothing. GEICO has no obligation to reimburse until numerous prerequisites,[5] unmentioned in Plaintiffs' class definition (or elsewhere in the amended complaint), have been satisfied.[6] As discussed above, this Court has provided Plaintiffs with an opportunity to amend their complaint. Notwithstanding those amendments, Plaintiffs have failed to satisfy the *Spokeo* test for Article III injury-in-fact. *See* 136 S.Ct. at 1549 ("Robins, could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III"); *Warth,* 422 U.S. at 501-02 (holding that the trial court may allow amendment to supply "further particularized allegations of fact" supporting standing but "[i]f after this opportunity,

---

[4] For a discussion of Plaintiffs' failure to state a cause of action, *see* section IV.B.1, *infra.*
[5] For a discussion of the MSP statutory requirements, *see* section IV.B.2, *infra*
[6] For a discussion of Plaintiffs' flawed class definition, *see* section IV.D.1, *infra.*

the plaintiffs' standing does not adequately appear from all materials of record, the complaint must be dismissed.").

  **B.**  **The Complaint Should Be Dismissed As Plaintiffs Rely Upon Conclusions, Rather Than Facts, To Support Their Claims.**

  Plaintiffs' amended complaint rests on wholly conclusory allegations, not facts, and therefore fails to state a claim for which relief can be granted. The amended complaint merely recites broad, unspecified allegations and legal conclusions premised upon federal statutory law. The amended complaint fails to comply with the *Iqbal* and *Twombly* pleading requirements, and should therefore be dismissed.

    1.  Plaintiffs have failed to identify a single GEICO settlement with a Claimant that would trigger GEICO's obligation to reimburse an MAO.

  In an effort to avoid dismissal, Plaintiffs amended their complaint to include an "illustrative example" of an occurrence that purports to give rise to GEICO's liability to Plaintiffs under the MSP statute:

> An Ohio resident named Mr. V.G. was injured in an accident by a Geico isurance [sic] carrier [sic]. Mr. G's medical expenses were subsequently paid by an MAO. Following Mr. G's claim against the Geico insured, Geico indemnified its insured Tortfeasor and made payments pursuant to a settlement of Mr. G's claims. However, Geico did not pay or reimburse the MAO for Mr. G's medical expenses within the required time frame, as required of a primary payer.

Am. Compl. ¶53. The amended complaint fails to provide any other facts including: (1) the identity of the claimant who settled his claim with GEICO; (2) the identity of the GEICO insured on whose behalf a settlement was made; (3) the identity of the MAO(s) allegedly entitled to reimbursement for "conditional" payments of the medical expenses for treatment rendered to the claimant; (4) the date of the incident that was the subject of settlement; (5) the treatment sought and received by the claimant and whether it was reasonable, necessary and causally related to the incident; (6) the identity of the medical providers(s) who rendered treatment; (7) the bills

submitted by the medical provider(s); (8) whether it was determined that GEICO would not make payment or that payment by GEICO was not reasonably expected to be made; (9) when, in what amount and to whom payments were made; (10) the amount of any "conditional" payment made by the MAO(s) that GEICO allegedly should have paid; (11) whether GEICO notified Medicare of its primary payer status; (12) whether any MAO identified GEICO as a primary payer; (13) whether recovery demand letters were sent to GEICO requesting reimbursement for any "conditional payment" made; (14) whether GEICO pursued the five levels of appeal; and (15) whether and when any valid assignments or rights were made by the MAO(s) at issue to any Plaintiff.  In short, the nominal facts provided in the amended complaint are insufficient to state a claim under the pleadings requirements.

The majority of Plaintiffs' amended complaint is devoted to recitations of various provisions of Medicare law rather than facts which actually state a cause of action.  The assertion in paragraph 51 that GEICO has possession of the "full details of settlements" with Medicare beneficiaries at issue, which settlements will be located and revealed through the process of discovery, does not relieve Plaintiffs of their burden to plead facts in support of their claims.  *See Iqbal*, 556 U.S. at 667 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").  Moreover, many, if not all, facts necessary to properly support Plaintiffs' claim are actually in Plaintiffs' control, as acknowledged in paragraph 50, where Plaintiffs state that "[t]he ***data reviewed by Plaintiffs*** indicates that [GEICO] never reimbursed Plaintiffs' MAOs."

In footnote 7 of the amended complaint, Plaintiffs state that they will provide the identity of the Medicare beneficiary, the MAO and more specific details regarding the claim, settlement and medical expenses during discovery.  Plaintiffs, however were clearly on notice of GEICO's

objection to missing factual allegations, noted in GEICO's original motion to dismiss, and had the opportunity to supply the missing facts in their amended pleading. Yet, other than providing the unidentified claimant's resident state and initials, Plaintiffs have refused to provide any meaningful facts to support their claims. Without the most basic facts supporting Plaintiffs' claims, GEICO cannot answer any of the fundamental questions raised above. Simply put, the amended complaint fails to set forth Plaintiffs' claim in "a short and plain statement" as required by Rule 8(a)(2). The factual allegations in the amended complaint are deficient, just like those provided in the original.

Courts have dismissed complaints asserting violations of the MSP statute where the underlying facts necessary to support a legal theory are missing from the complaint. In *Security National*, MSPA Claims 1, as assignee of MAO Florida Healthcare Plus, Inc. ("FHCP"), sought reimbursement from an automobile insurance company defendant for payment of accident-related medical expenses made by FHCP as a secondary payer under the MSP statute. The plaintiff sought $516.00 in damages and class action treatment on behalf of up to fifty other MAOs that allegedly made conditional payments for their enrollees' medical bills which the plaintiff claimed were reimbursable under the defendants' no-fault coverage ("PIP") benefits. Exhibit 1 at *1-2. The court dismissed the plaintiff's complaint and class allegations. While the initials of the Medicare beneficiary ("M.F."), the MAO at issue (FHCP) and the amount in dispute were included in the complaint, the court still found the factual allegations lacking:

> Plaintiff fails to allege any facts about the medical treatment of M.F. or how it relates to M.F.'s alleged injuries sustained in a covered automobile accident. Nor does Plaintiff allege facts to show that it was compelled, obligated, or even entitled to make payment, or had any reasonable basis to conclude that Defendant knew about the bills but could "not reasonably be expected to make payment promptly." Accordingly, Plaintiff fails to adequately plead facts to establish that [FHCP] paid bills falling within the scope of M.F.'s PIP coverage

and that such payments were "conditional," potentially entitling Plaintiff to reimbursement for such payments as [FHCP's] alleged assignee.

*Id.* at *11.

Similarly, in *MSP Recovery, LLC* v. *Allstate Insurance Co.,* 2015 WL 5882122 (S.D. Fla. Oct. 6, 2015), the plaintiff, an assignee of FHCP, sought reimbursement from Allstate under its PIP/no-fault policies pursuant to the MSP statute for medical expenses made by FHCP as a secondary payer.  *Id.* at *1.  The district court granted Allstate's motion to dismiss, stating:

> Plaintiff does nothing more than make conclusory statements that the medical bills it paid were reasonable, necessary, and related to the auto accident.  Plaintiff, however, has not pled any underlying facts.  There are no allegations regarding what type of injuries Plaintiff suffered in the accident, what injuries were treated, what services the medical bills payed by [the MAO] were for, the amounts of the individual bills that were payed, or whether the amounts of the bills were reasonable. . . .  Plaintiff's conclusory allegations . . . are simply a formulaic recitation of the elements of its claim and are, thus, insufficient to meet the pleading standard of *Iqbal* and *Twombly*.

*Id.* at *2.  *See also United States ex rel. Takemoto v. Nationwide Mut. Ins.,* 674 Fed. Appx. 92 (2d Cir. 2017) (affirming dismissal of complaint seeking reimbursement of MSP conditional payments on Rule 8 grounds as the complaint did not "identify any beneficiaries for whom [CMS] made conditional payments, the amounts or dates of such payments, an associated settlement, and the relation of any conditional payments to any particular defendant.")

Requiring Plaintiffs to allege basic facts to support their claims (i.e. who, what, where, and when) is also a matter of fundamental fairness.  This is particularly important where Plaintiffs allege that GEICO "failed to administratively appeal the MAOs' right to reimbursement within the administrative remedies period on a class-wide basis" and therefore is "time-barred from challenging the propriety of reimbursements or the amounts paid."  Am. Compl.  ¶32.  Plaintiffs have provided no meaningful facts for even their illustrative claim, thereby precluding GEICO from determining the truth or falsity of such an allegation, let alone

13

formulating an answer or affirmative defenses.[7] Absent such facts, the amended complaint should be dismissed.

> 2.  Plaintiffs fail to plead basic facts to support reimbursement of conditional payments as a Medicare Secondary Payer.

Plaintiffs repeatedly invoke the theory that, as assignees of secondary payers, they are entitled to reimbursement from GEICO by virtue of a settlement between GEICO and a claimant. Plaintiffs, however, fail to allege any facts demonstrating that it was proper for Plaintiffs' MAO assignors to pay any medical bills in the first instance, such that the payments may truly be considered "conditional" and, therefore, reimbursable. Plaintiffs ignore this requirement and conclude that if Plaintiffs' assignors paid, then they ***must*** be entitled to reimbursement. That assertion is plainly wrong.

Under the MSP statute, a payment must meet certain criteria in order to qualify as "conditional" and subject to reimbursement:

> When specified conditions are met, the MSP statute ***prohibits*** Medicare from making payment ***where payment has been made or can reasonably be expected to be made by group health plans (GHPs), a workers' compensation law or plan, liability insurance (including self-insurance), or no-fault insurance.*** If payment has not been made or cannot be reasonably expected to be made promptly by workers' compensation, liability insurance (including self-insurance), or no-fault insurance, Medicare may make conditional payments.
>
> *     *     *
>
> **NOTE**: If the injury resulted from an automobile accident and/or there is an indication of primary coverage under a GHP, the provider, physician, or other supplier bills the liability insurer or no-fault insurer and/ [sic] GHP as appropriate ***before*** requesting conditional Medicare payments. Except as delineated below in subsection 10.7.1., Medicare *does not make conditional primary payment when there is GHP coverage that is a primary payer to Medicare.*

---

[7] For additional examples of Plaintiffs' threadbare allegations found in the amended complaint, *see e.g.*, ¶¶ 28-30, 48-49, 77, and 82.

*See* CMS Medicare Secondary Payer Manual, Publication 100-05, Ch. 1, at 10.7 (emphasis added).

Indeed, the MSP statute contemplates situations where multiple insurers are at issue and, therefore, Medicare is a secondary payer to more than one primary payer. *Id.*, Ch. 1 at 10.9. "Where services are covered in part by [workers' compensation] and also under liability or no-fault insurance, or there is primary coverage by a GHP, Medicare is the residual payer only." *Id.* Thus, medical providers are *required* to identify all potential primary payers: "There may be situations where more than one payer is primary to Medicare (e.g., liability insurer and GHP). The provider, physician, or other supplier *must identify all possible payers*." *Id.*, Ch. 3 at 20.1.

Consistent with this provision, medical providers are *required* to bill a primary payer and *may not* bill Medicare, or an MAO, unless all primary payers have first been billed.

> If the services are related to an automobile accident, the provider ascertains whether coverage under no-fault insurance is available. If a provider learns that no-fault insurance may pay for otherwise covered services, it *must* bill the insurance company as primary insurer during the promptly period. If the no-fault insurance will not pay promptly, the provider may bill Medicare for conditional payment. *If no-fault insurance does not pay or does not pay in full and there is indication of primary GHP coverage under Chap 1, §§10.1, 10.2, or 10.3, the provider must bill the GHP for the services not paid in full*. *It may bill Medicare for secondary benefits only after all primary payers to Medicare have been billed*.

*Id.* at 30.2.1 (emphasis added).

Similarly, the MSP statute states that, as a secondary plan, an MAO is *prohibited* from paying unless the primary plan cannot reasonably be expected to make payment promptly or because the intermediary or carrier did not know that the other coverage existed. *See* 42 U.S.C. §1395y(b)(2)(A)(i)-(ii); 42 C.F.R. §411.21. At a minimum, an MAO is required to "[i]dentify payers that are primary to Medicare," "[i]dentify the amount payable by those payers," and

"[c]oordinate its benefits to Medicare enrollees with the benefits of the primary payers." 42 C.F.R. §422.108(b).

While Plaintiffs cite the MSP statute throughout their amended complaint, they continually gloss over the statute's complexity. Indeed, when an MAO pays for services unrelated to an injury for which GEICO is the responsible liability insurer, the MAO is not entitled to reimbursement. Whether services are related is a determination that ***can only be made on a case-by-case basis,*** as discussed in *California Ins. Guarantee Ass'n ("CIGA") v. Price*, 2017 WL 1737717 (C.D. Cal. May 3, 2017). In *Price*, CIGA, as administrator of several workers' compensation insurers, challenged CMS's billing practices and requests for reimbursement of conditional payments, claiming that CMS was seeking reimbursement for treatments having no connection to work-related injuries. CIGA argued that it "should not be held responsible for the full amount of each line-item charge if it contained uncovered diagnosis codes." *Id.*

In agreeing with CIGA, the *Price* court issued a declaration, finding in pertinent part that:

(2) Whether a particular line-item charge on a payment summary form contains more than one indivisible medical item, device, medical supply or service ***is a factual question that must be resolved on a case-by-case-basis***; (3) ***If a single line-item charge on a payment summary form contains multiple diagnosis codes – some of which relate to a medical condition covered by the insurance policy administered by CIGA and some of which do not – the presence of one covered code does not ipso facto make CIGA responsible for reimbursing the full amount of the charge;*** and (4) In the event that a single line-item charge on a payment summary form contains one indivisible item, device, medical supply or service that is covered by the workers' compensation policy CIGA is administering, and one individual item, device, medical supply or service that is not so covered***, CIGA does not have a responsibility to make payment for the uncovered item, device, medical supply or service just because it was billed under the same single line-item charge as the covered item, device, medical supply or service.***

*Id.* at *4 (emphasis added).

Thus, the *Price* court held that CMS's pursuit of unrelated charges, simply because they were bundled with related charges, ***is an unlawful practice*** under the MSP statute.  Moreover, the court ruled that the burden rests with CMS "to determine whether some sort of apportionment of the charges is warranted, and if so, by how much." *Id.* at *2.

In short, only when a payment meets certain criteria does it qualify as "conditional" and potentially subject to reimbursement.  Even where a settlement is reached, the mere fact that a conditional payment was made cannot demonstrate GEICO's responsibility to make reimbursement, as the conditional payment does not prevent GEICO from contesting reimbursement of unrelated charges bundled with payments for covered charges.  *See e.g., Price, supra; In the case of E.M.P.*, 2001 WL 6960487, *1 (H.H.S. June 28, 2011)(Medical Appeals Council removing charge for MRI from MSP lien as unrelated to claimant's accident after claimant received settlement); *In the case of B.H.,* 2013 WL 8718442, *3 (H.H.S. July 31, 2013) (where Medicare assessed a lien against a settlement for conditional Medicare payments as a result of claimant's accident-related treatment, Appeals Council found that a portion of the conditional payments were unrelated to the accident, were not subject to the Medicare lien and should be refunded to the claimant.)  The amended complaint is devoid of any factual allegations demonstrating GEICO's purported responsibility to pay anything.  Consequently, the amended complaint should be dismissed.

### C.      It Is Appropriate To Dismiss The Class Allegations At The Pleading Stage

A party seeking class action status under Rule 23 must allege facts showing that all prerequisites for class action treatment are met.  *Ross-Randolph v. Allstate Ins. Co.,* 2001 WL 36042162, at *4 (D. Md. May 11, 2001); *Ostrof v. State Farm Mut. Auto. Ins. Co*., 200 F.R.D.

521, 528 (D. Md. 2001).  In addition to meeting the requirements of Rule 23(a), a putative class action must also satisfy one of the subsections of Rule 23(b).  *Id.*

GEICO's motion to dismiss Plaintiffs' class allegations is timely at the pleading stage. As explained by the Honorable Deborah K. Chasanow, "[i]n determining whether a party complies with Rule 23, ***a court does not have to wait until class certification is sought***."  *Ross-Randolph,* 2001 WL 36042162, at *4 (citations omitted) (emphasis added).  Judge Chasanow further explained that "[a] party challenging the validity of maintaining an action under Rule 23 may move for a determination under Rule 23(c)(1) that a class action is unwarranted."  *Id.*

The plaintiffs in *Ross-Randolph* filed a class action complaint against Allstate alleging that Allstate wrongfully denied certain PIP benefits under Allstate's motor vehicle liability insurance policy.  *Id.* at *1.  Allstate moved to dismiss the complaint and stay discovery pending resolution of its motion to dismiss.  *Id.*  Allstate also moved to strike the class allegations, arguing that the plaintiffs had failed to establish several Rule 23 requirements.  *Id.*  Relying on Rules 23(c)(1)(A) and , 23(d)(1)(D) (formerly Rule 23(d)(4)), and the Supreme Court's  decision in *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), Judge Chasanow struck the class allegations,[8] ruling that "it is apparent from the pleadings that individual factual determinations will constitute a significant part of this action" and that the claims asserted were "riddled with individual inquiries," rendering the action "inappropriate for class certification."  *Id.* at *9.

Other federal courts have similarly relied on Rule 23(c)(1)(A) and 23(d)(1)(D) to dismiss class allegations at the outset of litigation.  *See e.g., Stanley v. Cent. Garden & Pet Corp.,* 891 F.

---

[8] Judge Chasanow utilized the terms "strike" and "dismiss" interchangeably in granting Allstate's motion to dismiss/strike the class allegations.  *See* Doc. 22 (Order), Case No. 8:99-cv-03344-DKC.

Supp. 2d 757, 769 (D. Md. 2012); *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949

(6th Cir. 2011); *In re Yasmin & Yaz (Drospirenone) Mktg.,* 275 F.R.D. 270, 274 (S.D. Ill. 2011);

*Wright v. Family Dollar, Inc.*, 2010 WL 4962838, *1 (N.D. Ill. Nov. 30, 2010); Exhibit 1,

*Security Nat.'l Ins. Co.* at *13**.**

> **D.** **The Court Should Dismiss The Class Allegations Because Plaintiffs' Class Definition Is Deficient and Plaintiffs Fail To Allege Facts To Support The Class Action Criteria Under Rule 23(a) And (b)(3).**

Plaintiffs' amended complaint fails to meet even the minimum pleading requirements to

assert a class action.  Although Plaintiffs have amended their class definition, the definition is

overly broad and does not necessarily include any class members entitled to reimbursement from

GEICO.  Moreover, Plaintiffs fail to state ***facts*** that could satisfy the numerosity, commonality,

typicality and adequacy requirements of Rule 23(a).  Finally, while Plaintiffs seek certification

under Rule 23(b)(3), they do not assert ***a single*** factual allegation as to why certification under

that Rule would be appropriate.

> 1. Plaintiffs' class definition is overly broad and does not necessarily include class members entitled to relief from GEICO.

In their amended complaint, Plaintiffs seek class certification on behalf of the putative

class, which is defined in paragraph 55:

> All non-governmental organizations, and/or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for medical items and services on behalf of their beneficiaries for which [GEICO] has not reimbursed in full or in part after [GEICO] entered into settlements with Medicare Beneficiaries enrolled in a Medicare Advantage Plan.

Am. Compl. ¶55.

Implicit in the prosecution of a class action is the requirement that the plaintiff adequately

define the class.  "Defining the class is of critical importance because it identifies the person (1)

entitled to relief; (2) bound by a final judgment; and (3) entitled under Rule 23(c)(2) to the 'best

notice practicable' in a Rule 23(b)(3) action.  The definition must be precise, objective and presently ascertainable."  Manual for Complex Litig. §21.222 (4th ed. 2004).  The due process rights of the absent class members and the defendant are implicated by the plaintiff's failure to adequately define a proposed class.  *Perez v. Metabolife Int'l Inc*. 218 F.R.D. 262, 268-69 (S.D. Fla. 2003).

GEICO challenged the sufficiency of Plaintiffs' original class definition because it defined an impermissible failsafe class which, for each potential class member, would have required a determination of liability before class membership could be established.  *See* Doc. No. 27 at 20-22.  Plaintiffs amended their class definition in an apparent attempt to cure this defect.  However, the amended definition is overbroad and, as defined, could, in theory, be comprised entirely of members not entitled to reimbursement from GEICO.

The amended definition includes all MAOs that "made payments for medical items and services on behalf of their beneficiaries for which [GEICO] has not reimbursed in full or in part after [GEICO] entered into settlements with Medicare Beneficiaries."  Am. Compl. ¶55.  This definition is problematic for numerous reasons.  First, under the MSP statute, a settling liability insurer is only obligated to reimburse an MAO for medical expenses that are reasonable, medically necessary and causally-related to an incident for which the liability insurer settled the claim.  And, of course, there are numerous prerequisites imposed by the MSP statute that also impact the liability insurer's obligation to reimburse. *See* sections II, IV.B.2 and IV. E. 1. (*e.g.*, identification of primary payers, recovery demand letter, payment qualifies as "conditional payment", notice, administrative appeals, etc.).  Under Plaintiffs' amended class definition, ***all*** medical expenses paid by an MAO ***for any reason*** would be subject to reimbursement by GEICO whenever GEICO settles a liability claim with a Medicare Part C beneficiary.  The MSP

statute imposes no such obligation.  As such, the amended definition does not advance the potential claims of class members against GEICO or move this litigation toward resolution.

In *Oshana v Coca-Cola Co*., 472 F.3d 506 (7th Cir. 2006), the plaintiff filed a class action complaint alleging that regular Diet Coke was sweetened only with aspartame whereas, unknown to consumers, fountain Diet Coke was sweetened with a combination of aspartame and saccharin.  The plaintiff asserted claims, *inter alia,* under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").  Under Illinois law, to properly plead the element of proximate causation in a private ICFA cause of action for deceptive advertising, a plaintiff must allege that he was deceived.  *Id.* at 513-14.  The plaintiff's proposed class definition required only that class members purchased fountain Diet Coke during the relevant class period.  The Seventh Circuit affirmed the district court's denial of class certification, holding that "[s]uch a class could include millions who were not deceived and thus have no grievance under the ICFA . . . .  Countless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception."  *Id.* at 514.

Similarly, in *Diacakis v. Comcast Corp.,* 2013 WL 1878921 (N.D. Cal. May 3, 2013), the plaintiff filed a class action complaint alleging that he was misled into subscribing to Comcast bundled services because he was not advised about rental or lease fees for telephone modems when he subscribed.  The class counts included fraud and various statutory causes of action, each requiring proof of misrepresentation and reliance.   Yet, the class definition included all individuals who purchased the bundled services and were charged modem rental or lease fees.  In denying the plaintiff's motion for class certification, the district court found that

> the class includes *anyone* who purchased any bundled package, irrespective of whether he or she was deceived by Comcast's alleged failure to disclose the existence of additional modem charges.   Since the proposed class included

persons who were not injured in the same manner as Plaintiff, the proposed class
is overbroad.

*Id.* at *4 (emphasis in original). *See also Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.,*
274 F.R.D. 229, 235 (S.D. Ill. 2011); *Chatham v. Sears, Roebuck & Co.,* 2007 WL
4287511(N.D. Ill 2007); *Friedman v. Dollar Thrifty Auto Group,* 304 F.R.D. 601, 606-607 (D.
Colo. 2015).

The amended class proposed here suffers from the same flaws that precluded class
certification in *Oshana* and *Diacakis.* Plaintiffs seek to certify a class of MAOs and/or their
assignees that made payments for medical items/services on behalf of their beneficiaries
irrespective of whether any MAO/assignee is actually entitled to reimbursement from GEICO.
Merely making payments on behalf of claimants who settle claims with GEICO does not entitle
an MAO to reimbursement. Establishing the right to reimbursement requires much more.
Plaintiffs are entitled to relief only if numerous conditions under the complex MSP statutory and
regulatory scheme are met. The amended definition ignores the statutes and regulations and
instead embraces Plaintiffs' flawed theory that if an MAO paid, it is automatically entitled to
reimbursement from GEICO – a theory wholly inconsistent with the MSP statute. Plaintiffs
ignore the prerequisites that must be satisfied before a right to reimbursement is created.
Without including those requirements within their amended class definition, the definition fails
to necessarily include any members who might be entitled to relief.

Moreover, the amended class definition is also problematic because it conflicts with
allegations found elsewhere in the amended complaint. Apparently recognizing the numerous
prerequisites that must be satisfied before GEICO is obligated to reimburse an MAO under the
MSP statute, Plaintiffs' original class definition stated that it would only apply where GEICO
"failed to ***properly*** pay . . . or reimburse." Doc. No. 1 ¶50. GEICO challenged that definition,

arguing that it defined a failsafe class.  In an attempt to cure that problem, Plaintiffs omitted the failsafe language from the amended class definition.  Yet, Plaintiffs continue to assert a cause of action alleging that GEICO "failed to ***appropriately*** reimburse Class Members after entering into settlements with claimants [sic] Medicare beneficiaries."  Am. Compl. ¶¶56; *see also id.* ¶69.  By their use of "***appropriately***" to modify GEICO's duty to pay, Plaintiffs tacitly acknowledge that an MAO can only prevail against GEICO if it first establishes all of the requirements set forth in the MSP statutory and regulatory scheme.  Only then would GEICO have failed to ***appropriately*** pay or reimburse an MAO.  Plaintiffs, however, cannot use such language in their class definition, as doing so would mean that class membership could only be established after a full airing of each individual claim to determine the propriety of GEICO's action.  As concerns their class definition, Plaintiffs are stuck between the proverbial "rock and a hard place."[9]

2.   Plaintiffs have failed to allege facts sufficient to support certification under Rule 23(a) and (b)(3).

In paragraph 73 of the amended complaint, Plaintiffs allege that this matter satisfies the four requirements of Rule 23(a).  The entirety of paragraph 73, however, contains only conclusory statements and fails to assert any facts to show how this purported class action actually satisfies Rule 23(a)'s requirements.  Specifically, Plaintiffs perfunctorily allege that numerosity exists because there are "hundreds of MAOs throughout the United States who were not reimbursed by [GEICO]."  Am. Compl. ¶73(a).  This allegation, however, fails to satisfy the

---

[9] Moreover, if Plaintiffs seek a nationwide class, are the three named Plaintiffs legally entitled to assert claims nationwide?  Do they have assignments from MAOs in each jurisdiction?  Do they have sufficient claims involving GEICO in each jurisdiction to satisfy the numerosity requirement of Rule 23(a)?  None of these questions are addressed, let alone answered, anywhere in the amended class definition.  Similarly, Plaintiffs' amended class definition fails to identify any limitation on the timeframe at issue, even though 42 U.S.C. §1395y(b)(2)(B)(iii) imposes a three year limitation on the filing of claims.

minimal pleading requirements of Rule 8.  Plaintiffs further assert that the requirements of typicality, commonality and adequacy are met.  *Id.* ¶73(b)-(d).  Without an exemplar case that identifies an MAO, a claimant, basic facts about an incident, or specifics about GEICO's alleged failure to reimburse an MAO or its assignees after GEICO entered into a settlement with a claimant, there is no way to determine from the threadbare allegations if the typicality, commonality and adequacy requirements are or can be met.

Plaintiffs likewise fail to allege facts in support of Rule 23(b)(3).  ***No facts*** are alleged that show that common questions will predominate over the multitude of individual questions that will inevitably arise in every claim.  Likewise, the amended complaint fails to include any facts that would demonstrate that proceeding under Rule 23(b)(3) would be superior to alternative procedures, or that the case would be manageable.  In short, Plaintiffs have failed to satisfy the pleading requirements of Rule 8 as applied to class allegations.  As such, the class allegations should be dismissed.

> **E.    Plaintiffs' Amended Class Action Allegations Require Dismissal Because The Class Action Criteria Under Rule 23(b)(3) Can Never Be Met As A Matter Of Law**.

>> 1.    <u>Individual questions will invariably predominate over any common questions as a matter of law</u>.

The crux of Plaintiffs' allegations is that (1) a claimant enrolled in an MAO, was involved in an incident with a GEICO insured; (2) the claimant sought treatment for his/her injuries, the charges for which were paid by the MAO; (3) as a result of the incident, GEICO entered into a settlement agreement with the claimant; and (4) pursuant to the MSP provisions and by virtue of GEICO's settlement, GEICO was a primary payer and therefore obligated to reimburse the MAO.  *Id.* ¶¶58-69.  Inherent in these allegations is a wide range of individualized questions that necessarily would have to be addressed, including:

- Who is the claimant whose medical expenses for an incident were purportedly paid by an MAO?

- What is the identity of the MAO that paid medical expenses?

- When did the incident occur?  Is the claim barred by the statute of limitations?

- What settlement(s) were entered into that purportedly obligated GEICO to reimburse the MAO(s)?  When?  Who was a party to the settlement(s)?

- Under what circumstances did GEICO settle a third-party liability claim?

- Who provided the medical services for treatment rendered to the claimant?  What bills were submitted and for how much?  Which charges were causally related to the incident, and which were not?  Were the charges reasonable and was the treatment medically necessary?

- Did GEICO notify CMS regarding coverage?

- Prior to any payment by the MAO, did it determine whether payment was not reasonably expected to be made by a primary plan, including a group health plan, workers' compensation plan, automobile or liability insurance plan, or no-fault insurance?

- Did the MAO make a "conditional payment" for the claimant's reasonable and necessary and causally-related medical expenses following the incident?

- What was the factual basis underlying any "conditional payment" made by an MAO such that it was compelled, obligated, or even entitled to make payment? i.e., was it truly conditional?

- How much was paid?  When was payment made?  To whom was payment issued?

- Did any other primary plan (i.e. no-fault insurer, workers' compensation law or plan, or group health plan), reimburse the MAO for any conditional payments made by the MAO?

- When was the MAO billed by the health care provider?  Prior to billing, did the health care provider identify other primary payers?

- When did the MAO make conditional payments?  Prior to doing so, did the MAO identify other primary payers?

- Were payments made, as required, by other primary payers before GEICO settled with its insured?

- Did other primary plans fail to make payment or reimburse the MAO for any conditional payment?  Which primary payer?  What was the basis for withholding payment?  Would that primary payer be a viable third party defendant in this matter?

- Was a demand letter sent to GEICO by the MAO requesting reimbursement for the conditional payment of the medical expenses?   If so, when?  Were the time limits for administratively appealing the demand set forth in the letter?

- Did the MAO notify GEICO that the MAO was asserting a lien for any and all conditional payments?

- Was the Medicare lien reduced through negotiations?  If so, how much?

- Did GEICO dispute any portion of the conditional payment on any ground, including that the MAO's reimbursement request was over inclusive by including payments unrelated to the incident?

- Did GEICO comply with its reporting requirements under the MSP statute?

- Did GEICO reimburse the MAO?  If not, why not?  What charges did GEICO allegedly fail to pay?  Were those charges reasonable, for medically necessary treatment which resulted from the incident?

- Was a timely administrative appeal filed?  If so, what was the result?

- Did GEICO seek judicial review of any administrative appeal?

- Upon failure to receive payment from GEICO, did the MAO assign its rights to Plaintiffs?  When was the assignment made?  What MAOs assigned rights to each Plaintiff?  What rights were assigned?

- Did GEICO receive notice of an assignment of the MAO's rights?

In short, this Court would need to conduct individualized fact finding for ***each settlement*** in order to determine whether each particular settlement demonstrates GEICO's responsibility to pay for any particular medical expense, thus raising the question of whether GEICO failed to "appropriately reimburse."  Yet, such determination cannot be made on a class wide basis.  As discussed in *Price*, 2017 WL 1737717, *supra*, an insurer is not responsible for reimbursement of a conditional payment which includes uncovered items/services just because the items/services were billed under the same line-item charge as covered items/services.  Moreover, the

determination of whether a particular line-item charge on a payment summary form contains more than one indivisible medical item, device, medical supply or service "*is a factual question that must be resolved on a case-by-case-basis.*"  *Id.* at \*4.

This matter differs from a typical MSP case featuring a group health plan, workers' compensation plan or no-fault insurance as a primary payer because those plans are ordinarily primary payers from the outset of treatment and most cases arise out of a contractual relationship with the Medicare beneficiary.  In this case, a liability insurer only becomes responsible as a primary payer after a settlement is reached or a judgment is paid.  That fact adds another layer of issues that must be addressed before a liability insurer such as GEICO could be held responsible for reimbursement of any conditional payment made by an MAO.  Moreover, even though the thrust of Plaintiffs' claims in this matter only involves settlement of a claim by a liability insurer, the interplay with group health, workers' compensation and no-fault plans would necessarily be implicated in virtually every case.  As the Eleventh Circuit recent observed, "[f]requently, more than one insurer is liable for an individual's medical costs.  For example, a car accident victim may be entitled to recover medical expenses from both her health insurer and a tortfeasor's liability insurer."  *Humana Med. Plan, Inc. v Western Heritage Ins. Co.*, 832 F. 3d 1229, 1233 (11th 2016).  That comment only scratches the surface of possible scenarios that may arise in any individual case.

The following hypothetical scenario illustrates the many issues that may arise in a settlement case that involves other primary payers in addition to the settling liability insurer.[10] Assume Mr. Jones is a Medicare Part C beneficiary enrolled with ABC-MAO.  Further assume

---

[10] Since the amended complaint contains no reference to a complete exemplar claim, this hypothetical scenario will hopefully shed light on the types of factual and legal issues that could confront the Court in every single claim.

that he is employed by XYZ Corp., and is also covered under XYZ's group health insurance issued by GHP Co.  XYZ also has workers compensation insurance coverage through WC Ins. Co.  One day, Mr. Jones is driving his personal automobile on a work related errand for his employer when he is catastrophically injured in a motor vehicle accident caused by the (disputed) negligence of Mr. Smith, who allegedly ran a red light.  At the time of the accident, Mr. Jones had automobile insurance issued by Charm City Ins. Co., which included PIP (no-fault) coverage and also included $1,000,000 uninsured ("U/M")/underinsured ("UIM") coverage.  Finally, Mr. Smith had $500,000.00 automobile liability insurance coverage through Regressive Ins. Co.  ABC-MAO paid some of Mr. Jones medical bills.

Under this scenario, questions that may arise include, but are certainly not limited to, the following:

(1)     As an initial matter, did Mr. Jones's healthcare providers identify primary payers before submitting bills to ABC-MAO for payment?  What efforts were made?  What was discovered?  Were GHP or WC or Charm City identified as primary payers by the health care providers?

(2)     Were claims properly submitted by Mr. Jones to GHP?  WC?  Charm City?

(3)     Did any potential primary payer notify CMS of their primary payer status as required by the MSP statute?

(4)     Did any of the potential primary payers have contractual or statutory defenses to some or all of the providers' charges?  What payments, if any, were made?

(5)     If that occurred, what steps did ABC-MAO take to comply with its statutory requirement to determine the existence of any primary payers?

(6)     Were the bills paid by ABC-MAO truly "conditional?"  That is, did ABC-MAO have reason to believe that the submitted charges had not been paid, and could not reasonably be expected to be paid, by one or more primary payers as required under 42 U.S.C. 1395y(b)(2)(B)(i)?

(8)     If ABC-MAO made "conditional payments," did ABC-MAO submit claims to GHP, WC and/or Charm City as primary payers?  Were the claims timely submitted? *See* 42 U.S.C. §1395y(b)(2)(B)(iii) & (vi).

(9)     If a timely claim was submitted, did any primary payer dispute the claim?  If so, what was the result? Did any primary payer exhaust administrative remedies?

(10)     If the claim was upheld, did any primary payer make payment? Were double damages awarded?

(11)     Did any primary payer seek judicial review? What was the result?

(12)     Did Mr. Jones file a lawsuit against Smith for his injuries? Was Charm City included as a defendant under Mr. Jones's UIM coverage?

(13)     Did the *Jones* case go to trial? And if Mr. Jones received a favorable verdict, what was the amount?  Was an appeal filed? Assuming a final judgment was entered in Mr. Jones's favor, did it include a finding against Smith <u>and</u> Charm City?  If so, did Regressive and/or Charm City notify ABC-MAO of the imminent payments at any time beginning 120 days before the reasonably expected date of settlement, judgment award or other payment?

(14)     Did ABC-MAO send a recovery demand letter to Mr. Jones seeking reimbursement for ABC's conditional payment as required by MSP regulations?  Did Jones reimburse for some or all of those payments?  Did Jones dispute the recovery demand letter by availing himself of the five level appeal process available to him?  What was the final result?

(15)    Did ABC-MAO send Regressive and/or Charm City a recovery demand letter regarding its allegedly conditional payments?

(16)    Did ABC-MAO seek reimbursement for conditional payments that bundled payments for items/services, some of which were unrelated to Mr. Jones's accident?

(17)    Did either Regressive or Charm City dispute ABC-MAO's claim?  Were there administrative appeals?  Judicial review?  What were the results?

This is just a sampling of the numerous types of issues that must be explored with respect to just one purported conditional payment where multiple primary payers are implicated.  The issue of whether each purported conditional payment actually qualifies as a conditional payment under the MSP statute alone creates a host of individualized issues that make this matter particularly unsuitable for class action treatment.  Even if the *Jones* hypothetical matter was settled and not tried, these issues would still exist.  In short, Plaintiffs' case is more complex than Plaintiffs would have this Court believe.  It is not simply a matter of Plaintiffs identifying each conditional payment, and GEICO having to reimburse each, solely because it entered into settlements.

Of equal importance to the predominance analysis is the existence of numerous unique defenses to the claims of class members.  GEICO is entitled to present all available defenses.  In class action litigation, "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quotations omitted).   In *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 342 (4th Cir. 1998), the Fourth Circuit held that "when the defendant's 'affirmative defense . . . may depend on facts peculiar to each plaintiff's case,' class certification is erroneous."   A class action defendant's right to present individualized defenses was confirmed by the Supreme Court of the United

States in *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 367 (2011) ("[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims.").  GEICO has numerous potential defenses to Plaintiffs' claims and the claims of potential class members that give rise to individual factual issues and render certification wholly inappropriate.  To determine which claims may survive would require an individual analysis of each claim—a process inconsistent with the Rule 23(b)(3) predominance requirement.

> 2.   Plaintiffs cannot satisfy the superiority and manageability requirements of Rule 23(b)(3) as a matter of law.

Plaintiffs offer no facts in support of their threadbare assertion that prosecuting this matter as a class action is superior to alternative methods as required by Rule 23(b)(3).  "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Rule 23 advisory committee's note.  Thus, "[i]f it is not determinable ***from the outset*** that the individual issues can be considered in a manageable, time efficient, yet fair manner, then certification is not appropriate."  *Southwestern Refining Co., Inc. v. Bernal*, 22 S.W.3d 425, 436 (Tex. 2000) (emphasis added).  Moreover, in a properly-conducted class action, the defendants have the right to raise the same defenses they could if actions were brought individually because Rule 23 cannot affect the substantive rights of the parties to any litigation.  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

To the extent Plaintiffs truly seek a nationwide class, the myriad of individual issues increases exponentially because of differences in insurance policies, state statutes, state insurance departments' ruling and regulations, etc.  As the Fifth Circuit explained, "[i]n a multi-

state class action, variations in state law may swamp any common issues and defeat predominance.  Accordingly, a district court must consider how variations in state law affect predominance and superiority."  *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (citations omitted).

It is clear from the outset that Plaintiffs have neither sufficiently alleged in their complaint, nor will they ever be able to demonstrate, that prosecuting this case as a class action is a superior and manageable method for the fair and efficient adjudication of this matter.

**F.    Plaintiffs Cannot Maintain A Class Action Under Rule 23(b)(2) Because The Relief They Seek Is Primarily Monetary.**

Apart from two passing references to injunctive relief, the primary relief sought by Plaintiffs in this case is money damages.  Am. Compl. ¶¶77, 85(c)(ii).  Even at this initial pleading stage, Plaintiffs do not allege a basis to seek certification of this action under Rule 23(b)(2).  A class may only be certified under Rule 23(b)(2) if the ***predominant*** relief sought is injunctive or declaratory, as opposed to monetary.  *See* Rule 23 advisory committee note (noting that subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages").[11]  The claim for injunctive relief is ancillary to the primary relief sought: money damages.  As such, certification under Rule 23(b)(2) is inappropriate.

**G.    <u>Plaintiffs Cannot Maintain A Class Action Under Rule 23(c)(4)</u>**

In paragraphs 78 to 83 of the amended complaint, Plaintiffs seek certification of an issues class under Rule 23(c)(4) as an alternative to Rule 23(b)(2) or (b)(3) certification.  Rule 23(c)(4) states, in pertinent part, that "[w]hen appropriate . . . an action may be brought or maintained as a

---

[11] *See also Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 330 (4th Cir. 2006); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998).

class action with respect to particular issues." However, a review of the issues Plaintiffs seek to certify, listed in the complaint at paragraph 80(a)-(e), makes clear that *none* of those issues could be decided on a class wide basis, as each would require an individual determination based on the facts of each and every claim.

The first issue, found in paragraph 80(a), requests a class wide determination of "[w]hether [GEICO] occupies primary payer status as defined by the MSP provisions." Determination of that issue, however, would require findings about whether an MAO made conditional payments, whether the claimant was involved in an incident with a GEICO insured, whether treatment was necessary and for a causally-related condition, whether charges were reasonable, whether the Medicare beneficiary was covered under another primary plan or plans (i.e., no-fault insurer, workers' compensation plan or law, group health plan) that either paid as required, reimbursed or was responsible to reimburse the MAO for any conditional payments, whether the MAO sent notice and demand for payment to GEICO, whether administrative appeals were taken, etc. The proposed issue could never be decided on a class wide basis. On some claims, GEICO would undoubtedly occupy primary payer status, while on others, it would not.[12]

There appears to be no dispute that, in considering a Rule 23(c)(4) class, the party seeking certification must satisfy the four requirements of Rule 23(a) and the predominance requirements of Rule 23(b):

> "[[I]]f an] action includes multiple claims, one or more of which might qualify as a certifiable class claim, the court may separate such claims from other claims in the action and certify them under the provisions of subsection (c)(4)," provided that "each subclass must independently meet all the requirements of (a)

---

[12] Due to space limitations, the other four class wide issues proposed in paragraph 80 of the complaint will not be analyzed here. However, a review of those issues reveals that the individualized nature of each would preclude a class wide determination of each.

and at least one of the categories specified in (b)." . . . . [S]ubsection 23(c)(4) should be used to separate "one or more" claims that are appropriate for class treatment, provided that within that claim or claims (rather than within the entire lawsuit as a whole), the predominance and all other necessary requirements of subsections (a) and (b) of Rule 23 are met.

*Gunnels v Healthplan Servs*., *Inc.*, 348 F.3d 417, 441 (4th Cir. 2003) (quoting *In re A.H. Robins*, 880 F. 2d 709, 728 (4th Cir. 1989) (emphasis in original)).  As with the issue raised in paragraph 80(a), discussed above, each of the other four issues proposed in subparagraphs (b) through (e) cannot satisfy the predominance requirement because each issue necessitates an individualized analysis for each claim and each charge.  Moreover, the paragraph 80 issues are not common, which further precludes certification.  For these reasons, Plaintiffs' alternative request for certification under Rule 23(c)(4) must be dismissed.

## V.     **CONCLUSION**

For all the foregoing reasons, Defendant Government Employees Insurance Company respectfully requests that Plaintiffs' First Amended Complaint and Class Allegations be dismissed with prejudice.

Respectfully submitted,


/s/  *George M. Church*
George M. Church (Fed. Bar No. 00133)
Laura A. Cellucci (Fed. Bar No. 25119)
Joshua F. Kahn (Fed. Bar. No. 18238)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
gchurch@milesstockbridge.com
lcellucci@milesstockbridge.com
jkahn@milesstockridge.com

/s/ *Peter D. Weinstein*
Peter D. Weinstein (Fed. Bar No. 913502)
COLE, SCOTT & KISSANE, P.A.
Lakeside Office Center, Suite 500
600 N. Pine Island Road
Plantation, Fla.  33324
Tel: (954) 343-3951
peter.weinstein@csklegal.com
Admitted *Pro Hac Vice*


*Attorneys for Defendant*
*Government Employees Insurance Company*