# Exhibit 1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO. 2015-28181-CA-13

MSPA CLAIMS 1, LLC,
a Florida Limited Liability Company,

  Plaintiff,
v.
SECURITY NATIONAL INSURANCE COMPANY,
a Florida Profit Corporation,

  Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
## CORRECTED SECOND AMENDED COMPLAINT

THIS MATTER is before the Court on the Motion to Dismiss Corrected Second Amended Complaint filed by Defendant, Security National Insurance Company ("Defendant"), to which Plaintiff MSPA Claims 1, LLC ("Plaintiff") filed a response in opposition ("Opposition"), and Defendant a reply ("Reply"). Each party also has filed notices of supplemental authority. Upon review of the record, having heard argument of counsel on March 13, 2017, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED that the motion to dismiss is GRANTED with prejudice as to all counts.

### Background

Plaintiff is suing for Florida No-Fault personal injury protection ("PIP") benefits as the alleged twice-removed assignee of a now-defunct Medicare Advantage Organization called Florida Healthcare Plus, Inc. ("Florida Healthcare"). Plaintiff seeks to be reimbursed for its alleged processing of payment on bills arising from the medical treatment of an individual referred to in the Corrected Second Amended Complaint (the "Complaint") as "M.F". M.F.

allegedly was enrolled in a Medicare Advantage plan offered by Florida Healthcare and also insured by Defendant under an auto insurance policy with PIP coverage at the time of an automobile accident involving M.F.  Plaintiff claims that Florida Healthcare paid M.F.'s medical bills resulting from that auto accident as a "secondary payer," as that term is used in Medicare regulations, and that Defendant must pay up to the limits of M.F.'s PIP benefits to Plaintiff as reimbursement.  Plaintiff claims that reimbursement is required because Defendant was the "primary payer" with primary responsibility to pay the medical bills.

Plaintiff brings four counts against Defendant: Breach of Contract for Failure to Pay PIP Benefits (Count I); Breach of Contract for Failure to Pay PIP Benefits (Conventional Subrogation) (Count II); Breach of Contract for Failure to Pay PIP Benefits (or, in the Alternative, Equitable Subrogation) (Count III); and Breach of Contract for Failure to Pay PIP Benefits (Conventional Subrogation Arising from Third Party Beneficiary Rights) (Count IV). Defendant seeks dismissal of each count.  Plaintiff seeks $516.00 in damages for itself with respect to M.F.'s medical bills.  Plaintiff also sues on behalf of a putative class of 25-50 other Medicare Advantage Organizations that allegedly made secondary payments for their own enrollees' medical bills, and allegedly are entitled to payment of unspecified amounts in PIP benefits from Defendant under § 627.736, Fla. Stat.

## Discussion

**I.     Defendant's Standing Arguments Require Dismissal**

Plaintiff alleges that, as a result of a series of agreements, it has standing to bring suit for amounts Defendant allegedly should have paid to Florida Healthcare.  Plaintiff alleges Florida Healthcare assigned its rights to La Ley Recovery Systems, lnc. ("La Ley") in a contract dated April 15, 2014 (the "La Ley Agreement").  Plaintiff alleges that La Ley later assigned all rights

2

obtained from Florida Healthcare to Plaintiff on February 20, 2015 ("La Ley Assignment to Plaintiff"). Plaintiff attaches copies of the La Ley Agreement and the La Ley Assignment to Plaintiff as Exhibits A and B, respectively, to the Complaint. Plaintiff further alleges that a June 1, 2016, settlement agreement with a court-appointed Receiver for Florida Healthcare cured any problems with these earlier agreements and assignments. Defendant challenges Plaintiff's standing allegations on several grounds. This Court may consider the documents attached to the Complaint and which control to the extent they contradict allegations.

### *The La Ley Agreement is Not an Assignment of Rights*

Defendant's first challenge involves the original alleged assignment from Florida Healthcare to La Ley. Defendant argues that, on its face, the La Ley Agreement does not transfer the rights that Plaintiff alleges were assigned. The Court agrees. The La Ley Agreement is a contingency-based, receivables collections agreement - not a transfer of all interests and rights in any claims of Florida Healthcare for reimbursement from no-fault insurance companies such as Defendant. The La Ley Agreement shows that Florida Healthcare retained La Ley on April 15, 2014, as an "independent contractor" working on a "contingency fee basis" to "recover costs already paid" by Florida Healthcare. Florida Healthcare agreed to pay La Ley 50% of any collections. In contrast to this contingency-fee-for-service arrangement, "[a]n assignment is a transfer of all the interest and right to the thing assigned." *Lauren Kyle Holdings, Inc. v. Heath-Peterson Const. Corp.*, 864 So. 2d 55, 58 (Fla. 5th DCA 2003).

### *Plaintiff's Allegations Are Insufficient to Support Approval of Assignment to Plaintiff*

Defendant next argues that Plaintiff's allegations are insufficient to show that the purported assignment from La Ley to Plaintiff was approved by Florida Healthcare, as required by the terms of the La Ley Agreement. The Court agrees. The La Ley Agreement states, "La

3

Ley Recovery may assign the Agreement in whole or in part but the assignee must be approved by the Client [Florida Healthcare]." In an attempt to satisfy this requirement, Plaintiff alleges that "[Florida Healthcare] executives and officers, including Susan Molina and Arisay Martinez, among others, communicated to La Ley Recovery via a series of communications between April and August 2014 that [Florida Healthcare] accepted, acknowledged, approved and consented to any subsequent assignment from La Ley [] to any then-existing or future La Ley Company, including the La Ley Recovery-MSPA Claims, 1, LLC Assignment Agreement [La Ley Assignment to Plaintiff] . . . ." Plaintiff claims that "the term 'La Ley Company' refers to" five different entities, including Plaintiff.

Defendant argues, however, that Plaintiff fails to allege that these purported communications constituted an official, authorized act of Florida Healthcare. In addition, the purported "communications" of Florida Healthcare personnel, which are neither quoted or attached, cannot possibly pertain to the assignment to Plaintiff, which is dated six months after the purported "communications" took place. Defendant argues that the generalized catch-all assertion that these individuals approved of an assignment to "any then-existing or future La Ley Company" is insufficient to constitute an approval of "the assignee," as the La Ley Agreement requires. This Court agrees.

### *Florida Healthcare's Receiver Repudiated the La Ley Agreement and the Receiver's Post-Lawsuit Agreement with Plaintiff Cannot Retroactively Cure Plaintiff's Lack of Standing*

Defendant argues that the La Ley Agreement cannot provide a basis for Plaintiff's standing because the Receiver for Florida Healthcare terminated and repudiated the La Ley Agreement prior to the La Ley Assignment to Plaintiff, and any alleged new deal with the

4

Receiver occurred well after Plaintiff initiated this lawsuit.[1] As part of the December 10, 2014, order appointing the Receiver for Florida Healthcare ("Order"), all of Florida Healthcare's executory contracts were cancelled unless adopted by the Receiver. In a February 5, 2015 letter to La Ley, the Receiver rejected the La Ley Agreement; and, on September 18, 2015 (after the La Ley Assignment to Plaintiff), the Receiver filed a petition to enjoin La Ley or any assignees from collection activities on behalf of Florida Healthcare (the "Petition"; the February 5, 2015 letter is attached to the Petition). It was not until after this rejection that Plaintiff filed its Articles of Incorporation on February 12, 2015 and signed the La Ley Assignment to Plaintiff on February 20, 2015. Plaintiff asserts that after all of these events – including the Receiver's repudiation of the La Ley Agreement - on June 1, 2016, Plaintiff entered into a settlement agreement with the Receiver, which allegedly approved and ratified all of the assignments leading up to Plaintiff's purported standing. The Court agrees with Defendant and several other courts, finding that the Settlement Agreement cannot retroactively confer standing on Plaintiff six months after Plaintiff filed this lawsuit (December 4, 2015).[2]

---

[1] Florida Healthcare was placed into Receivership Proceedings in Leon County, Florida. Pursuant to a Liquidation Order, the Florida Department of Financial Services was appointed as Receiver for Florida Healthcare effective January 1, 2015. Plaintiff refers to and relies on various filings and orders from the receivership proceedings in the Complaint and, to the extent not expressly relied on and incorporated by Plaintiff, the Court takes judicial notice of the receivership filings at Defendant's request because they are central to the claims against Defendant and are publicly available. *See* Fla. Stat. §§ 90.202(6) & (12). All receivership filings and orders referenced in this Order are part of the record.

[2] *See Hartford Ins. Co. v. St. Mary's Hosp., Inc.*, 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 2016 WL 5719805 (16-20338-CIV-LENARD) (S.D. Fla. Sept. 30, 2016); *MSPA Claims 1, LLC v. United Auto Ins. Co.*, 2016 WL 4532871 (Case No.: 16-20486-CIV-WILLIAMS) (S.D. Fla. Aug. 29, 2016); *MSPA Claims v. National Specialty Ins. Co., State Auto Ins. Co. and State Automobile Mut. Ins. Co.,* 2016 WL 4479372 (Case No.: 16-20401-CIV-COOKE) (S.D. Fla. Aug. 25, 2016).

*Plaintiff Cannot Prove It Has Maintained Standing Throughout This Litigation*

Plaintiff must show not only that it had standing at the inception of its lawsuit (which it has failed to do), Plaintiff must also show that it has retained standing throughout this litigation. *See Pennington v. Ocwen Loan Servicing, LLC*, 151 So. 3d 52, 54 (Fla. 1st DCA 2014). Defendant argues, and the Court agrees, that Plaintiff cannot satisfy this requirement. Even if Plaintiff could show that it possessed standing at the inception of this lawsuit, there was a gap in Plaintiff's standing that requires dismissal of Plaintiff's claims. The La Ley Agreement was signed on April 15, 2014. Absent any allegations by Plaintiff of a further extension (which do not appear in the Complaint), the La Ley Agreement terminated on its face on April 15, 2016, at the latest.[3] Thus, the La Ley Agreement expired several months before the settlement agreement between Plaintiff and the Receiver. Even accepting Plaintiff's arguments about the retroactive nature of the settlement agreement (which the Court rejects), there still would have been a gap of several months while this lawsuit was pending – between the La Ley Agreement expiration on April 15, 2016 (at the latest) and the settlement agreement on June 1, 2016 – that Plaintiff lacked standing. Plaintiff tries to avoid this result by arguing that the La Ley Agreement conveyed to La Ley ownership of claims for reimbursement – ***forever***. But, that simply is not what the document says. The La Ley Agreement states it is a "fee for services" arrangement lasting a maximum duration of two years. The La Ley Agreement clearly contemplates termination, as it requires La Ley to provide a closing statement at the "conclusion of the representation."

---

[3]     The La Ley Agreement states, "The term of this agreement shall be for one (1) year from the date of execution herewith, with an automatic renewal for an additional one (1) year unless terminated at any time by the parties within ninety (90) day prior written notification."

*Plaintiff's Standing Authorities Are Inapposite*

The cases Plaintiff cites in its Response – *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351 (11th Cir. 2016) (the "*Allstate* Order"), and *MSPA Claims I, LLC v. Nat'l Fire Ins. Co. of Hartford*, Case No. 16-cv-20531 (S.D. Fla. Dec. 6, 2016) (order adopting Report and Recommendation of Magistrate) – do not assist Plaintiff. The only argument regarding assignments and standing addressed in the *Allstate* Order deals with the non-assignability of a government contract. The arguments raised by Defendant and discussed in this Court's opinion are not addressed in the *Allstate* Order. *See Allstate* Order; *see also* Order Denying Plaintiff's Motion for Leave to Amend, et al., *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 16-20338-CIV-LENARD/GOODMAN (S.D. Fla. March 15, 2017) (in a similar lawsuit by Plaintiff filed against a different insurance company, rejecting the argument that the *Allstate* Order is binding with respect to the same standing arguments raised by defendant in that case, and relied upon for dismissal here).

Similarly, Plaintiff cites to *MSPA Claims I, LLC v. Nat'l Fire Ins. Co. of Hartford*, Case No. 16-cv-20531 (S.D. Fla. Dec. 6, 2016) (order adopting Report and Recommendation of Magistrate). That Order and Report also fails to address the issue of whether Plaintiff sufficiently alleged a valid chain of assignments from Florida Healthcare to La Ley to Plaintiff. That Order and Report also addresses the irrelevant issue of whether an assignment by a Medicare Advantage Organization of a government contract is legally prohibited; it has no bearing on the arguments raised by Defendant in the motion to dismiss here.

For all of the foregoing reasons, the Complaint is dismissed with prejudice.

## II.     Plaintiff Fails to Allege a Pre-Suit Demand Letter, Which Requires Dismissal

Each of Plaintiff's four counts is expressly based on Defendant's alleged "Failure to Pay PIP Benefits."  Plaintiff fails to allege, however, that it served a compliant pre-suit demand on Defendant for payment of M.F.'s benefits pursuant to Fla. Stat. § 627.736(10).  Service of a pre-suit demand letter is a mandatory prerequisite to bringing a suit to recover PIP benefits in Florida.  *See* Fla. Stat. § 627.736(10) ("insurer must be provided with written notice of an intent to initiate litigation"); *Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 879 (Fla. 2010) ("insurer has an additional period of time to meet its obligation under the statute, and an action for a claim of benefits cannot be initiated until the additional time for payment has expired [such that] . . . the statute substantively alters an insurer's obligation to pay and an insured's right to sue").  "The statutory requirements surrounding a demand letter are significant, substantive preconditions to bringing a cause of action for PIP benefits." *MRI Assocs. of America v. State Farm Fire & Cas. Co.*, 61 So. 3d 462, 465 (Fla. 4th DCA 2011).

Plaintiff fails to provide, and the Court is unaware, of any binding case law that creates an exception to this pre-suit demand requirement under § 627.736(10), Fla. Stat based on preemption or any other basis.  Plaintiff contends, without citing any authority, that the Code of Federal Regulations exempts it from serving a pre-suit demand because 42 C.F.R. § 411.24 (f)(1) applies so that "CMS[4] may recover without regard to any ***claims filing requirements***."  The regulation on which Plaintiff relies states:

> CMS may recover without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claimant ***such as a time limit for filing a claim or a time limit for notifying the plan*** or program about the need for or receipt of services.

---

[4] "CMS" is the Centers for Medicare and Medicaid Services.

42 C.F.R. § 411.24(f)(1) (emphasis added).  Medicare limits the application of this regulation to time filing constraints only.  *See* 54 FR 41716-01, Medicare as Secondary Payer and Medicare Recovery Against Third Parties at 12-13 (stating that the application of this claims filing requirement waiver—to anything other than an insurer's time frames for filing—would "unconstitutionally infringe upon contractual rights and obligations and purports to give [Health Care Financing Administration] greater rights than are afforded to a person or group to whom an insurer issues a particular contract."); *Health Ins. Assn of America, Inc. v. Shalala*, 23 F.3d 412 (D.C. Cir. 1994) (finding this regulation was invalid as it exceeded the Department of Health and Human Services' authority under the Medicare Secondary Payer Act).  Therefore, this alleged exemption does not apply because Florida's pre-suit demand letter condition precedent is a requirement to the ***filing of a lawsuit***, not a claims filing requirement for an insured to file an insurance claim.[5]  Therefore, because Plaintiff failed to satisfy a mandatory condition precedent to each of its claims, the Complaint is dismissed on this basis as well.

---

[5] The Court rejects Plaintiff's theory at oral argument that Defendant cannot raise any state law defenses to Plaintiff's claims based on preemption or otherwise.  Plaintiff argued that support for this theory is found in *Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195, 204 (Fla. 3d DCA 2015).  After reviewing the *Reale* opinion, the Court finds that it does not offer support for Plaintiff's theory.  Notably, Defendant countered this argument by citing *MSP Recovery, LLC v. Allstate Ins. Co*., 835 F.3d 1351, 1361(11th Cir. 2016), a case involving a similar Medicare/PIP reimbursement request, which states that a defendant "may still assert any valid contract defense in arguing against . . . liability."

Plaintiff also cites to *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216 (Fla. 1985) to argue that Defendant must show "prejudice" as a result of Plaintiff's failure to serve the pre-suit demand letter.  But that ***1985*** decision is inapposite.  It does not speak to the statutory pre-suit demand letter requirement added to the PIP Statute in ***2001***.

### III. The Complaint Must Be Dismissed Because Plaintiff Fails to Plead Basic Facts to Support Entitlement to PIP Benefits or to Reimbursement of Conditional Payments as a Medicare Secondary Payer

Defendant argues, and this Court agrees, that the Complaint lacks allegations sufficient to support payment of PIP benefits for M.F.'s bills or Defendant's right to have made and receive reimbursement for a conditional payment under the Medicare Secondary Payer Act. Not every bill sent in connection with an auto accident is payable under PIP; not every payment made by a Medicare Advantage Organization in connection with an auto accident must be reimbursed by a PIP insurer.

Under the PIP statute, any automobile insurance policy issued in Florida is required to provide PIP coverage for 80 percent of "all reasonable expenses for medically necessary medical, surgical, X-ray, dental and rehabilitative services," under certain limited circumstances. Fla. Stat. § 627.736(1)(a), *et seq.* Under the Medicare Secondary Payer Act, a payment must meet certain criteria in order to qualify as "conditional" and subject to reimbursement. Plaintiff, however, merely concludes that "once F[lorida Healthcare] provides payments in situations where it is deemed a secondary payer, F[lorida Healthcare] is automatically subrogated the right to receive reimbursement from the primary plan." While it is true that under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, Medicare benefits are "secondary" to other benefits available through "primary plans," such as no-fault insurance, not all secondary payments qualify for reimbursement as conditional payments under the Medicare scheme.

As set forth in the Medicare Secondary Payer Act and explained further in the CMS Medicare Secondary Payer Manual Publication 100–05 (the "CMS Manual"),[6] when "payment

---

[6] At Defendant's request, the Court takes judicial notice of this publication as an official government report and publication. *See* Fla. Stat. § 90.202(5) and (12).

has been made or can reasonably be expected to be made" under the primary plan, Medicare is prohibited from paying. 42 U.S.C. § 1395y(b)(2)(A)(ii). It is only in the circumstance where a primary plan has received an enrollee's bill from a provider and makes a determination that the primary plan "has not made or cannot reasonably be expected to make payment" that a Medicare Advantage Organization such as Florida Healthcare may make a "conditional" payment that may qualify for reimbursement. 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii).

Furthermore, as explained in the CMS Manual, medical providers are required to bill all primary payers first, and must have reason to believe payment will not be made promptly by a primary payer before even billing a secondary payer, such as Florida Healthcare. Even after being billed, the Medicare Advantage Organization is required "to attempt to identify primary payers" and should not pay unless it also makes a determination that a primary plan *cannot reasonably be expected to make* payment promptly or is unaware of the existence of primary coverage existed. *See Humana Ins. Co. v. Farmers Texas County Mut. Ins. Co.*, 95 F. Supp. 3d 983, 993 (W.D. Tex. 2014); 42 C.F.R. § 108 (requiring a Medicare Advantage Organization to "identify payers that are primary"); 42 USC 1395y(b)(2)(B); 42 C.F.R. § 411.21.

Plaintiff fails to allege any facts about the medical treatment of M.F. or how it relates to M.F.'s alleged injuries sustained in a covered automobile accident. Nor does Plaintiff allege facts to show that it was compelled, obligated, or even entitled to make payment, or had any reasonable basis to conclude that Defendant knew about the bills but could "not reasonably be expected to make payment promptly." Accordingly, Plaintiff fails to adequately plead facts to establish that Florida Healthcare paid bills falling within the scope of M.F.'s PIP coverage and that such payments were "conditional," potentially entitling Plaintiff to reimbursement for such payments as Florida Healthcare's alleged assignee.

11

In *MSP Recovery, LLC v. Allstate Insurance Co.*, No. 15-20788, 2015 WL 5882122 (S.D. Fla. Oct. 6, 2015), a federal court judge dismissed a nearly identical complaint:

> Plaintiff does nothing more than make conclusory statements that medical bills it paid were reasonable, necessary, and related to the auto accident. Plaintiff, however, has not pled any underlying facts. There are no allegations regarding what type of injuries Plaintiff suffered in the accident, what injuries were treated, what services the medical bills paid by [Florida Healthcare] were for, the amounts of the individual bills that were paid, or whether the amount of the bill is reasonable.… Plaintiff's conclusory allegations . . . are simply a formulaic recitation of the elements of its claim and are, thus, insufficient to meet the pleading standard . . . .

*Id.* at *2-3. Plaintiff cannot merely rely on its formulaic conclusion that *if* Plaintiff paid, then it *must* be entitled to reimbursement. For this reason also, the Complaint is dismissed.

## IV. Plaintiff's Claims Are Inappropriate for Class Treatment as a Matter of Law

Defendant argues that the class claims may be dismissed or stricken at this stage of the litigation because they are inappropriate for class treatment as a matter of law. Defendant first stresses that Plaintiff not only fails to allege service of a pre-suit demand letter for its claim for reimbursement regarding M.F., but also fails to allege that the other putative class members (other Medicare Advantage Organizations like Florida Healthcare) complied with this statutory requirement for any of their claims to be reimbursed for PIP benefits. It would be impossible for the Plaintiff to allege compliance by all putative class members for all potential underlying claims. Therefore, the Court agrees that, for this reason alone, the class claims are to be stricken and the entire Complaint dismissed. *See Shenandoah Chiro., P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283 (S.D. Fla. 2007) (court dismissed putative class claims because plaintiff could not allege compliance with presuit demand letter requirement for alleged class); *MRI Assocs. of St. Pete, Inc. v. State Farm*, 755 F. Supp. 2d 1205, 1207-08 (M.D. Fla. 2010); *Pan Am Diag. Servs., Inc. v. Equity Ins. Co.*, 22 Fla. L. Weekly Supp. 814a (Fla., 11th Jud'l Cir. Dec. 11,

12

2014); *Progressive Health Servs., Inc. v. Security Nat'l Ins. Co.*, 22 Fla. L. Weekly Supp. 816a (Fla., 11th Jud'l Cir. Sept. 17, 2013).

Actions for PIP benefits are generally inappropriate for class treatment. *MRI Associates of St. Pete* at 1207. Here, there is another layer of individualized inquiries, as Plaintiff is seeking PIP benefits and invoking Medicare laws. Plaintiff's own argument that Defendant is somehow required under Medicare laws to exhaust administrative remedies prior to raising any defenses to Plaintiff's claims emphasizes the types of individualized inquiries and issues that may be necessary to resolve Plaintiff's claims. Here, this Court would have to review and make a determination as to each putative class member's standing and its satisfaction of conditions precedent to a claim for PIP benefits or for reimbursement of conditional payments under Medicare. The Court would have to determine that the payments at issue are for bills that fall within PIP coverage, that they were not already paid by the Defendant, and that the PIP benefits have not already been properly exhausted. The need to assess the class members' claims and Defendant's defenses to each will require a succession of mini trials, making Plaintiff's claims inappropriate for class action treatment as a matter of law. It is appropriate for this Court to make this determination on a motion to dismiss; waiting for class certification is not necessary. *See Rosenwasser v. Frager,* 307 So. 2d 865, 865-66 (Fla. 3d DCA 1975) (reversing trial court's order denying a motion to strike class allegations raised at the motion to dismiss stage because such allegations could not be maintained as a matter of law); *see also, e.g., Feijoo v. Progressive Am. Ins. Co.*, 23 Fla. L. Weekly Supp. 138a (Fla. 11th Jud'l Cir. 2015); *Berman v. Windhaven Ins. Co.*, 23 Fla. L. Weekly Supp. 139a (Fla., 11th Jud'l Cir. 2015); *Accumed Chiro. & Wellness Ctr., Inc. v. Progressive Select Ins. Co.*, 22 Fla. L. Weekly Supp. 349a (Fla., 11th Jud'l Cir. 2014). Therefore, the Court strikes all class allegations and class claims from the Complaint.

### V. Counts I and IV Must Be Dismissed Because Plaintiff Is Not a Party to, or Intended Beneficiary of, the Insurance Policy Between Defendant and M.F.

In Count I, Plaintiff purports to sue Defendant for "Breach of Contract for Failure to Pay PIP Benefits" under the no-fault automobile insurance policy between M.F. and Defendant. Count IV is also a claim for "Breach of Contract for Failure to Pay PIP Benefits," but instead of claiming direct rights under the policy, Plaintiff claims that it has rights as a third party beneficiary. Plaintiff's allegations do not substantiate either claim. Plaintiff is not a party to the automobile insurance contract and fails to allege that it was assigned any of M.F.'s contractual rights under that contract.[7] Nor does Plaintiff allege that the policy expresses an intent to primarily and directly benefit Plaintiff or any other third party.[8]

Plaintiff cannot bring a claim for a breach of Defendant's contract with Defendant's insured (M.F.), either directly or as a purported third-party beneficiary. *See*, *e.g.*, *Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005) (affirming the dismissal with prejudice of a breach of contract claim where "[t]he plaintiffs were not parties to the contract" and plaintiff failed to attach a contract or otherwise establish that both of "the parties to the contract actually and expressly intended to benefit the third party"); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030-31 (Fla. 4th DCA 1994) ("A

---

[7] Plaintiff argues in its Opposition that each of "Counts I-IV . . . allege [] breach of contract theories for Defendant's failure to pay PIP benefits based upon *subrogation* principles." But, Count I does not purport to be a subrogation claim (as do Counts II-IV). Count I is pled as a straightforward breach of contract count. Notably, if Count I were based on purported subrogation rights, then Count II (for contract-based subrogation) would be entirely duplicative and unnecessary.

[8] Further, Plaintiff cannot claim third party beneficiary status as an alleged assignee of an insurer. *See Continental Cas. Co. v. United Pacific Ins. Co.*, 637 So. 2d 270, 273, n. 6 (Fla. 5th DCA 1994) (court "simply [could not] take seriously" the argument that "when an insured purchases multiple policies of insurance to cover his risk of loss, these several insurers become third-party beneficiaries of all the other policies.").

person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract" unless the "parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party"). Accordingly, Counts I and IV are dismissed with prejudice for this additional reason.

### VI. Count II Must Be Dismissed Because Plaintiff Fails to Allege Facts Sufficient to Support Subrogation Rights With Respect to M.F.

Count II is a claim for "Breach of Contract for Failure to Pay PIP benefits" based on "Conventional Subrogation." Conventional subrogation requires a contract that allows for subrogation; it arises when "an insurer's subrogation right [is] expressly provided for by a clause that is either in the applicable insurance policy or in a settlement agreement with the insured." *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick*, 742 So. 2d 328, 332 (Fla. 3d DCA 1999). In the context of Medicare advantage organizations, such as Florida Healthcare, standing to allege subrogation rights on behalf of the enrollee would come from the terms of the agreement between the Medicare advantage organization (Florida Healthcare) and its enrollee (M.F.). *See Ferlazzo v 18th Ave. Hardware, Inc.*, 929 N.Y.S. 2d 690 (N.Y. Sup. Ct. 2011) ("right to reimbursement does not stem from the statute but rather from the private contract made with the enrollee. There is . . . only 'statutory permission' to include recovery provisions in the contracts"); *Konig v. Yeshiva Imrei Viznitz of Boro Park Inc.*, No. 12-CV-467, 2012 WL 1078633, *2 (E.D. N.Y. Mar. 30, 2012) (holding that Medicare laws do not provide a private cause of action for Medicare Advantage organizations to enforce a claim for subrogation because "the Medicare statute simply authorizes [Medicare advantage policy] providers to contractually create subrogation rights."); *see also* 42 U.S.C. § 1395w-22(a)(4) (statute provides CMS an absolute right to reimbursement for conditional payments, but only provides a Medicare

Advantage Organization a permissive right to contract with its enrollees for a subrogation right to reimbursement).

Plaintiff alleges that Florida Healthcare subrogated to M.F.'s rights pursuant to the contract between them called the "Evidence of Coverage." Plaintiff quotes a provision purportedly from "F[lorida Healthcare]'s Evidence of Coverage,"[9] but that language does not convey M.F. to Florida Healthcare subrogation rights.[10] Plaintiff fails to attach or cite any contract in which M.F. agrees to provide a right to Florida Healthcare to stand in the shoes of M.F. in order to bring a claim for M.F.'s medical bill payments. Because Plaintiff fails to adequately allege that M.F.'s contract with Florida Healthcare provided subrogation rights, Count II is dismissed on this basis as well.

### VII. Count III Fails Because a Medicare Advantage Organization May Have Only Contractual – Not Equitable – Subrogation Rights

Count III is nearly identical to Count II, but is based on "Equitable Subrogation" instead of conventional contractual subrogation. As explained above, the Medicare laws allow subrogation *only* when it is based in contract; there simply is no way for a Medicare Advantage Organization to sue for equitable subrogation. *See* Section VI, *supra* (citing authorities). In addition, because Plaintiff alleges it has a contractual right to subrogation (although those allegations are deficient as currently pled), it cannot bring an equitable subrogation claim. *See*

---

[9] Plaintiff fails to allege that this language is actually contained in the Evidence of Coverage binding on M.F. and in effect at the time of the Accident.

[10] Plaintiff quotes the following language: "We [Florida Healthcare] have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR sections 422.108 and 423.462, [Florida Healthcare], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws." This language does not grant the enrollee's subrogation rights to Florida Healthcare.

*MSP Recovery, LLC v. Allstate Ins. Co.*, No. 15-20788-CIV-Seitz/Turnoff, 2015 WL 5882122, at * 4 (S.D. Fla. Oct. 6, 2015) (dismissing Plaintiff's similar equitable subrogation claims with prejudice); *Dade Cnty. School Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999); *E. Nat'l Bank v. Glendale Fed. Savings & Loan Ass'n*, 508 So. 2d 1323, 1325 (Fla. 3d DCA 1987) (defendant not entitled to equitable subrogation because "the relative positions of the parties [were] clearly fixed by terms of contract, and enforcement of [the] contract [did] not prejudicially affect the innocent persons or otherwise work an injustice, there [was] no need to resort to equity"); *Jackson v. Computer Science v. Raytheon*, 36 So. 3d 754, 756 (Fla. 1st DCA 2010) (Equity will not act when there is a remedy at law.).  For these additional reasons, Count III is dismissed with prejudice.

## VIII.  Plaintiff's Demand for Attorneys' Fees is Stricken

Defendant moves to dismiss or strike Plaintiff's request for attorneys' fees pursuant to § 627.428, Fla. Stat., which is included in every count.  The Court grants this request, and Plaintiff's fee demand is stricken because the cited statute does not apply in this case.  *See* Order, *MSPA Claims 1, LLC v. Century Surety Co.*, No. 16-120752-CIV-GAYLES (S.D. Fla. March 15, 2017), at 11-12.  Section 627.428(1) provides that, upon rendition of a judgment "against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees. . . ."  This provision does not apply to third-party beneficiaries, and Plaintiff is not "the named or omnibus insured, the insured's estate, [a]specifically named beneficiar[y] under the policy, [or] an[y] other third-part[y] who claim[s] policy coverage through an assignment."  *Cont'l Cas. Co. v. Ryan Inc. E.*,

17

974 So. 2d 368, 377 (Fla. 2008); *Hartford Accident & Indem. Co. v. M-B Leasing, Inc.*, 394 So. 2d 561, 562 (Fla. 3d DCA 1981).

### Conclusion

For these reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's Corrected Second Amended Complaint is DISMISSED with prejudice. All pending motions are DENIED as MOOT. The Clerk is directed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 03/31/17.

_____
THOMAS J. REBULL
CIRCUIT JUDGE

**FINAL ORDERS AS TO ALL PARTIES**
**SRS DISPOSITION NUMBER   12**

**THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.**

**Judge's Initials   TJR**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.