**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | Case No. 8:17-cv-00711-PWG |
| | Hon. Paul W. Grimm |
| Plaintiffs, | |
| vs. | |
| GOVERNMENTAL EMPLOYEES INSURANCE COMPANY (GEICO), a Maryland Corporation, and its affiliates, | |
| Defendant. | |
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | Case No. 8:17-cv-00964-PWG |
| | Hon. Paul W. Grimm |
| Plaintiffs, | |
| vs. | |
| GOVERNMENTAL EMPLOYEES INSURANCE COMPANY (GEICO), a Maryland Corporation, and its affiliates, | |
| Defendant. | |

**PLAINTIFFS' COMBINED OPPOSITION TO GEICO'S MOTIONS TO DISMISS IN NO-FAULT CASE (17-cv-711, Dkt. 44) & SETTLEMENT CASE (17-cv-964, Dkt. 31)**

Governmental Employees Insurance Company's ("GEICO") motions to do dismiss in both cases, (17-cv-711, Dkt. 44) & (17-cv-964, Dkt. 31), are nearly identical.  So, to simplify the briefing, Plaintiffs file a combined response.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

   I.   Medicare Parts A-E ................................................................................. 2

   II.  Medicare Secondary Payer Provisions and the Mechanisms for Enforcement ............... 3

   III. The "No-Fault" and "Settlement" Cases ............................................... 5

ARGUMENT ....................................................................................................... 7

   I.   Plaintiffs Have Standing to Bring MSP Claims Against GEICO Because the MAOs that Assigned their Rights of Recovery to Plaintiffs Suffered an Economic Injury ............... 7

   II.  The FACs Allege Plausible MSP Claims ............................................... 8

       A.  Plaintiffs Are Not Required to Alleged the Particularized Detail of Each Underlying Claim ................................................................. 8

       B.  Plaintiffs Are Not Required to Allege Facts Concerning the Conditionality of MAOs' Payments ....................................................... 16

          1.  Plaintiffs Are Not Required to Allege Efforts by the Medical Provider to Bill a Primary Payer ......................................... 17

          2.  Plaintiffs Are Not Required to Allege Efforts by the MAO to Deem a Payment "Conditional" Because the Conditionality of any Medicare Payment Is Automatic ....................... 19

   III. GEICO's Attempt to Challenge the Class Allegations in the FACs Should Be Rejected 21

       A.  GEICO's Class Challenge Is Premature Because the Court Cannot Address the Numerous Factual Issues Raised in GEICO's Motions without Allowing Some Class Discovery ....................................................... 21

       B.  GEICO's Challenges to Class Certification Are All Unavailing ............... 24

          1.  The Proposed Class Definitions Are Sufficient Because they Put GEICO on Notice of the Scope of the Alleged Classes ................... 24

          2.  GEICO's Bald Demand for More "Facts" Is Meritless .................... 25

          3.  Without Discovery It Is Impossible to Know Whether "Individual" Issues Will Predominate over Common Ones ................... 26

          4.  Determining Whether Each MAO's Payment Was Reasonable and Necessary Will Not Involve Any Individual Inquiry ................... 27

          5.  Plaintiffs' Claims Are Maintainable Under Both Rule 23(b)(2) and 23(b)(3). 32

          6.  Plaintiffs' Claims are Maintainable Under Rule 23(c)(4)................................. 33

CONCLUSION.................................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Baughan v. Thompson*,
   No. CIV.A. 3:02CV00111, 2003 WL 22295354, at \*1 (W.D. Va. Sept. 30, 2003) ......... 29

*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*,
   903 F.2d 480 (7th Cir. 1990) ........................................................................................... 29

*Brown v. Thompson*,
   374 F.3d 258 (4th Cir. 2004) .................................................................................... 18, 19

*Cochran v. United States Health Care Fin. Admin.*,
   291 F. 3d 780 (11th Cir. 2002) ...................................................................................... 31

*Collins v. Wellcare Healthcare Plans, Inc.*,
   73 F. Supp. 3d 653 (E.D. La. 2014) .............................................................................. 21

*Collins v. Wellcare Healthcare Plans, Inc.*,
   73 F. Supp. 3d 661 (E.D. La. 2014) .............................................................................. 29

*Crest Constr. II, Inc. v. Doe*,
   660 F.3d 353 (8th Cir. 2011) ........................................................................................ 16

*Cupp v. Johns*,
   No. 2:14-CV-02016, 2014 WL 916489, at \*2 (W.D. Ark. Mar. 10, 2014) .................... 30

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011) ........................................................................................ 21

*Ealy v. Pinkerton Gov't Servs., Inc.*,
   514 F. App'x 305 (4th Cir. 2013) .................................................................................. 26

*Einhorn v. CarePlus Health Plans, Inc.*,
   43 F. Supp. 3d 1329 (S.D. Fla. 2014) ........................................................................... 29

*EQT Prod. Co. v. Adair*,
   764 F.3d 360 n.9 (4th Cir. 2014) .................................................................................. 24

*Fanning v. United States*,
   346 F.3d 386 (3d Cir. 2003).......................................................................................... 20

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 424 (4th Cir. 2003) ........................................................................................ 27

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
   832 F.3d 1229 (11th Cir. 2016) .................................................................................... 13

*In re A.H. Robins*,
   880 F.2d 740 (4th Cir. 1989) ........................................................................................ 27

*In re Avandia Mktg.*,
   685 F.3d 353 (3d Cir. 2012)............................................................................................ 3

*In re Jiffy Lube Sec. Litig.*,
    No. CIV. Y-89-1939, 1990 WL 10010982, at *6 (D. Md. Oct. 31, 1990) ...................... 10

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
    174 F. Supp. 2d 1242 (N.D. Ala. 2001) ...................................................... 10

*Jay Clogg Realty Grp., Inc. v. Burger King Corp.*,
    298 F.R.D. 307 (D. Md. 2014) .............................................................. 21

*Law Offices of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*,
    No. CIV. JKB-12-2600, 2013 WL 2244811, at *2 (D. Md. May 21, 2013) ................... 21

*Messner v. Northshore Univ. HealthSys.*,
    669 F.3d 825 (7th Cir. 2012) ............................................................... 24

*Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*,
    758 F.3d 790 (6th Cir. 2014) ................................................................. 3

*Michaels Bldg. Co. v. Ameritrust Co. N.A.*,
    848 F.2d 674 (6th Cir.1988) ............................................................... 10

*Mikes v. Straus*,
    274 F.3d 700 (2d Cir. 2001)................................................................. 28

*MSP Recovery, LLC v. Allstate Ins. Co. ("MSP Recovery II")*,
    835 F.3d 1351 (11th Cir. 2016) ............................................................ 12

*MSP Recovery, LLC v. Allstate Ins. Co. ("MSP Recovery III")*,
    No. 15-21532-Civ, slip op. at 10-11 (S.D. Fla. Mar. 21, 2017)................................ 13, 14

*MSP Recovery, LLC v. Allstate Ins. Co.*,
    835 F.3d 1361 (11th Cir. 2016) ............................................................. 4

*MSPA Claims 1, LLC v. Infinity Auto Ins. Co.*, No. 15-21504-CIV, 2017 WL 2733789, at *4
    (S.D. Fla. Mar. 9, 2017) .................................................................... 13

*MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*,
    16-20212-CIV-KING/TORRES, slip. Op. at pg. 11 (S.D. Fla. Aug. 28, 2017)............... 13

*MSPA Claims 1, LLC v. Security Nat. Ins. Co.*, Case No. 2015-28181-CA-13 (11th Jud. Cir.
    Miami-Dade Cty. Ct., Mar. 31, 2017).......................................................... 14

*Myers v. Cent. Ins. Companies*,
    No. 1:08-CV-96, 2009 WL 77258 (N.D. Ind. Jan. 8, 2009) ............................................. 20

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994)........................................................................ 12

*New York City Health & Hosps. Corp. v. WellCare of New York, Inc.*,
    801 F. Supp. 2d 140 (S.D.N.Y. 2011)...................................................... 31

*Porter v. Farmers Ins. Co.*,
    No. 10-CV-116-GKF-PJC, 2012 WL 256014, at *19 (N.D. Okla. Jan. 27, 2012)....... 5, 20

*Potts v. Rawlings Co.*, LLC,
    897 F. Supp. 2d 185 (S.D.N.Y. 2012).................................................... 30, 31

*Protocols, LLC v. Leavitt*,
    549 F.3d 1294 (10th Cir. 2008) ................................................................ 20

*Shalala v. Illinois Council on Long Term Care, Inc.*,
    529 U.S. 13 (2000)..................................................................................... 29

*Shirley v. Staffing Network Holdings, LLC*,
    No. 16 C 6279, 2016 WL 6599951 (N.D. Ill. Nov. 8, 2016)........................... 21

*Starnes v. Schweiker*,
    748 F.2d 218 (4th Cir. 1984) ..................................................................... 29

*Stillmock v. Weis Markets*, Inc.,
    385 F. App'x 273 (4th Cir. 2010) ............................................................... 26

*Telecare Corp. v. Leavitt*,
    409 F.3d 1345 (Fed. Cir. 2005).................................................................. 20

*Trostle v. Centers for Medicare & Medicaid Servs.*,
    No. 1:16-CV-156, 2016 WL 6082131, at *4 (M.D. Pa. Oct. 17, 2016) ............ 30

*U.S. ex rel. Palmieri v. Alpharma, Inc.*,
    928 F. Supp. 2d 853 (D. Md. 2013)............................................................ 16

*United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*,
    674 F. App'x 94 (2d Cir. 2017) ................................................................. 14

*United States v. Baxter Int'l, Inc.*,
    345 F.3d 866 (11th Cir. 2003) ........................................................... passim

*United States v. Stricker*,
    524 F. App'x 504 (11th Cir. 2013) ............................................................... 5

*Universal Health Servs., Inc. v. United States*,
    136 S. Ct. 1989 (2016).............................................................................. 28

*W. Heritage*, 832 F.3d at 1239; *see also Cox v. Shalala*,
    112 F.3d 154 (4th Cir. 1997) ..................................................................... 17

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 347 (4th Cir.2001) ...................................................................... 22

*Wilfong v. Rent-A-Ctr., Inc.*,
    No. 00-CV-680-DRH, 2001 WL 1795093, at *8 (S.D. Ill. Dec. 27, 2001)...... 32

**Rules**

*Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)........................................ 23

*Federal Practice & Procedure* § 1795 (3d ed. 2005).................................................. 23

*Moore's Federal Practice* § 23.61[1] (3rd ed. 2017) .................................................. 22

F.R.C.P. Rule 23(b)(3)................................................................................................. 7

F.R.C.P. Rule 9(b)............................................................................................. *passim*

F.R.C.P. Rule 8 ................................................................................................. *passim*

**Other Authorities**

42 C.F.R § 411.24(e) ........................................................................................... 6

42 C.F.R. § 411.22(a) .......................................................................................... 5

42 C.F.R. § 411.24(a) .......................................................................................... 5

42 U.S.C. § 1395y(b)(7)(A)(ii) ..................................................................... *passim*

42 U.S.C. §§ 1395c ...................................................................................... *passim*

42 U.S.C. §§ 405(h) ......................................................................................... 30

42 C.F.R. § 411.22 ........................................................................................... 20

## INTRODUCTION

Plaintiffs represent Medicare Advantage Organizations ("MAOs") who, for all practical and legal purposes, stand in the same shoes at the Centers for Medicare and Medicaid Services ("CMS") in providing Medicare benefits.  No-Fault First Amended Complaint ("No-Fault FAC") ¶¶ 18-33 (8:17-cv-00711-jdp, Dkt. 33); Settlement First Amended Complaint ("Settlement FAC") ¶¶ 18-33 (8:17-cv-964-PWG, Dkt. 28).  And, under the Medicare Secondary Payer ("MSP") laws, CMS and MAOs are always "secondary payers."   If there is another insurance policy or contractual agreement covering a medical expense, i.e., a separate auto insurance policy or a settlement agreement, that other source of payment is considered the primary plan and *must* pay first.  These cases seek recovery of payments made by MAOs—both those that have assigned their rights of recovery to Plaintiffs as well as all MAOs as part of a national class—to pay for medical expenses that should have been paid by the GEICO as a result of an underlying no-fault automobile insurance policy or a settlement agreement.

GEICO moves to dismiss both cases and strike the class allegations in both FACs.  Regarding dismissal, GEICO raises three general challenges.  First, GEICO challenges Plaintiffs' standing, arguing that the FACs fail to allege any concrete or real injury.  But, this challenge is meritless.  Plaintiffs allege a concrete economic loss by various MAOs and that loss was assigned to Plaintiffs.  Thus, there is standing.  Second, GEICO argues that Plaintiffs are required to plead a host of detailed information about each underlying claim, effectively injecting the pleading requirements of Rule 9(b) into a case that has nothing to do with fraud.  However, this exact challenge has been expressly considered and rejected by numerous courts and, more importantly, it runs counter to the basic purpose of the MSP laws.  The FACs, as written, sufficiently allege MSP causes of action pursuant to Rule 8.  Finally, GEICO argues that the

FACs fail to allege details surrounding how each underlying MAO made payments for their beneficiaries. However, the circumstances surrounding an MAO's decision to make a payment, i.e., whether it knew of a primary payer or attempted to locate one, is immaterial to an MSP cause of action. GEICO is attempting to inject elements in an MSP claim that simply do not exist.

Regarding class certification, GEICO attempts to engage in a full-fledged class certification inquiry before any discovery arguing, remarkably, that individualized facts predominate over common issues. GEICO makes this argument, however, in a vacuum, making assumptions about what the facts are and then claiming they are too individualized to allow class certification. But, absent rampant speculation, resolving the class certification issue is just premature without discovery. For the purposes of pleading, however, the FACs sufficiently put GEICO on notice of the allege class claims. And, nothing more is required.

For these reasons, and for the reasons discussed below, Plaintiffs respectfully request that the Court DENY both of GEICO's motions to dismiss.

## BACKGROUND

**I.    Medicare Parts A-E**

The Medicare Act consists of five parts: Part A, Part B, Part C, Part D, and Part E. Parts A and B create, describe, and regulate traditional fee-for-service, government-administered Medicare. *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w. Under Parts A and B, Medicare provides hospital insurance and coverage for medically necessary outpatient and physician services. 42 U.S.C. § 1395w-21(a)(1)(A). These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise. CMS provides coverage under Parts A & B. Part C outlines the Medicare Advantage program, wherein

Medicare beneficiaries may elect to use private insurers, *i.e.*, MAOs, paid for by the United States, to provide Medicare benefits.  42 U.S.C. §§ 1395w–21–29.[1]  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

## II.   Medicare Secondary Payer Provisions and the Mechanisms for Enforcement

At the time of its inception, Medicare was the primary payer of medical costs.  When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient.  However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare Secondary Payer ("MSP") provisions to the Medicare Act.  *See also In re Avandia Mktg.*, 685 F.3d 353, 365 (3d Cir. 2012) ("[B]y recovering from primary payers, MAOs save money, that savings results in additional benefits to enrollees not covered by traditional Medicare.").

Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage.  If there is overlapping insurance coverage or an overlapping settlement for a particular beneficiary, that overlapping coverage is primary, i.e., it pays the medical expense first—Medicare is always secondary.  *See, e.g.*, *Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 790 (6th Cir. 2014) ("[W]hen payment is available from a primary plan, the primary plan and not Medicare is responsible for paying the costs of the individual's medical treatment.").   If a primary payer, such as a no-fault

---

[1] MAOs enter into a contract with CMS to administer and provide the same benefits received under traditional Medicare.  42 U.S.C. §§ 1395w-21, 1395w-23.  Pursuant to this contract, MAOs receive a fixed payment from CMS for each enrollee.  MAOs do not issue a Medicare "insurance policy" but, rather, send out a document describing the Medicare benefits that enrollees receive.  MAOs pay healthcare providers directly for the care received by Part C enrollees.  If the cost of this care exceeds the fixed payment received from the government, the MAO assumes the risk and cost.  However, if that care costs less than the fixed payment, the MAO keeps the difference as profit.  Thus, MAOs are incentivized to provide health insurance more efficiently and focus on positive health outcomes in a way that traditional fee-for-service Medicare models are not.  *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

insurer, "has not made or cannot reasonably be expected to make payment," Medicare makes a conditional payment. 42 U.S.C. § 1395y(b)(2)(B)(i). However, since Medicare is the secondary payer, the primary payer (such as a no-fault or settlement maker) must reimburse Medicare for all conditional payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

Under the MSP provisions, a payer becomes a "primary payer" when responsibility for payment is demonstrated. 42 U.S.C. § 1395y(b)(2)(B)(ii). Responsibility is demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.* Thus, by its very terms, a settlement agreement creates demonstrated responsibility. Additionally, the last part, "by other means," means demonstrated responsibility can be established by a contractual obligation, i.e., a no-fault insurance policy. *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1361 (11th Cir. 2016) ("We hold that a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act.").

To enforce this secondary payer scheme, the MSP laws empower CMS and MAOs to recover payments from primary payers when they fail to pay or reimburse expenses.[2] *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). The law provides for two types of relief.

The first is a direct private right of action created by the MSP statute. The MSP laws allow for "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment." 42 U.S.C. § 1395y(b)(3). This private right of action has three elements: (1) the defendant's

---

[2] Plaintiffs have been assigned the right to recover reimbursements under the MSP laws by various MAOs from around the United States.

status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount. *W. Heritage*, 832 F.3d at 1239. Essentially, if the defendant was the primary payer and did not make payment or reimburse an MAO, it is subject to double damages.  42 C.F.R. § 411.22(a), (c). There is no need to prove negligence, notice, duty, breach, causation, reliance, or any of the typical "tort" elements. "Medicare's reimbursement rights are automatic, and it is not required to give notice of its claim."  *Porter v. Farmers Ins. Co.*, No. 10-CV-116-GKF-PJC, 2012 WL 256014, at *19 (N.D. Okla. Jan. 27, 2012), *aff'd*, 505 F. App'x 787 (10th Cir. 2012).

The second avenue for recovery is based on subrogation.  The MSP laws specifically allow MAOs "to step in and assume the Medicare beneficiary's right for payment of medical bills that should have been paid by the primary payer."  *United States v. Stricker*, 524 F. App'x 500, 504 (11th Cir. 2013).  MAOs possess subrogation rights over "any right . . . of an individual . . . with respect to such item or service under a primary plan."  42 U.S.C. § 1395y(b)(2)(B)(iv); *see* 42 C.F.R. § 411.24(a).  In other words, federal law allows Medicare providers to enforce the contractual rights of its beneficiaries under a primary plan to recover reimbursements.  No-Fault FAC ¶ 84.  So, if an MAO's beneficiary had a contractual right to demand payment from a primary payer, but the MAO footed the bill, the statute allows the MAO to subrogate the beneficiary and enforce that contract with the primary payer—and this can be done without any assignment of rights from the underlying beneficiary.

## III.   The "No-Fault" and "Settlement" Cases

These two cases arise out of the alleged failure of the GEICO to make payments or reimbursements for medical expenses that were paid for Plaintiffs' MAOs but for which the

GEICO was obligated to pay as a primary payer.  The way that failure to pay or reimburse occurs is what distinguishes the cases.

The first case, 3:17-cv-00175, is called the "No-Fault Case."  When Medicare beneficiaries get into car accidents and suffer medical injuries, they typically submit their Medicare insurance card to the medical provider.  No-Fault FAC ¶ 37.  That bill gets submitted to Medicare and either CMS or an MAO pays the bill.  *Id.*  Many of those individuals, however, were also covered by a no-fault auto insurance policy issued by GEICO, i.e., an auto insurance policy that obligates the insurer to pay for medical expenses, regardless of fault, up to a policy limit.  *Id.* ¶¶ 63, 71-72, 74.  And, because of that policy, under the MSP laws,   GEICO was required to pay for those medical expenses first or, if payment was made by the MAO already, reimburse the MAO.  *Id.* ¶ 78.  Instead, Plaintiffs and Class Members paid for those items and services as part of providing Medicare benefits.  *Id.* ¶¶ 51, 74.  The result is simple—MAOs (and ultimately taxpayers) never get reimbursed for medical expenses that should have been covered by GEICO.  Plaintiffs' comprehensive review of claims data and various private insurance databases reveals a systematic failure of GEICO to comply with the MSP reimbursement provisions.  *See id.* ¶¶ 52-56.  In the No-Fault case, Plaintiffs assert a direct cause of action under 42 U.S.C. § 1395y(b)(3)(A) (Count I) and a direct right of recovery under 42 C.F.R § 411.24(e) for breach of contract (Count II).

The second case, 3:17-cv-00262, is called the "Settlement Case."  Whereas the first case arises in the context of a no-fault insurance policy, this case arises in the context of settlement.  *See* Settlement FAC ¶¶ 17, 36, 49.  Basically, one of Plaintiffs' beneficiaries gets into an automobile accident with someone insured by GEICO, and Plaintiffs' MAO pays for associated medical expenses for that beneficiary.  *Id.* at ¶¶ 3, 49.  At some later point, the beneficiary and

6

GEICO enters into a settlement which specifically covers liabilities associated with the auto accident, including medical expenses. *Id.* at ¶ 49. Such a settlement, under the MSP laws, turns GEICO into a "primary payer" for the medical expenses paid for by the MAO and obligates reimbursement. *Id.* Before distributing funds for the settlement, GEICO is obligated to ensure that there are no Medicare liens on the settlement. *Id.* at ¶¶ 49, 68. To satisfy that obligation, GEICO normally checks with CMS to ensure there are no Medicare liens. However, insurance companies like GEICO almost never check with MAOs to ensure there are no liens, even when MAOs occupy an analogous position to CMS. *Id.* at ¶¶ 35-40. The result is that MAOs are rarely reimbursed for medical expenses covered by a settlement. Under the MSP law, GEICO is responsible for that failure and is subject to double damages. *Id.* at ¶ 33. Like the No-Fault case, Plaintiffs' comprehensive review of claims data and various private insurance databases reveals a systematic failure of GEICO to resolve Medicare liens with MAOs in settling cases on behalf of their insured. *See id.* ¶¶ 51-52. In the Settlement case, Plaintiffs only assert a direct cause of action under 42 U.S.C. § 1395y(b)(3)(A) (Count I), there is no subrogation claims.

Both of these cases are brought under the MSP law and assert claims on behalf of the Plaintiffs' MAOs and all other similarly situated MAOs as a national class action. *Id.* ¶ 71; No-Fault FAC ¶ 89. As a national class, Plaintiffs seek double damages, a Rule 23(b)(3) class, and injunctive relief, a Rule 23(b)(2) class. Settlement FAC ¶ 70; No-Fault FAC ¶ 82. Additionally, as an alternative to a damages or injunctive relief class, Plaintiffs also allege a national issues class, pursuant to Rule 23(c)(4). Settlement FAC ¶ 79; No-Fault FAC ¶ 97.

## ARGUMENT

eamble re. arguments.

**I.    Plaintiffs Have Standing to Bring MSP Claims Against GEICO Because the MAOs that Assigned their Rights of Recovery to Plaintiffs Suffered an Economic Injury**

GEICO first challenges Plaintiffs' standing.  This challenge, however, is largely unexplained, amounting an assertion that Plaintiffs provide "no specifics as to how Plaintiffs or their assignors have been injured."  No-Fault MTD at 10; Settlement MTD at 9-10.  There is simply no merit to this argument.  Both FACs allege that the underlying MAOs, who assigned their rights of recovery to the Plaintiffs, suffered an *economic injury* as result of making payments GEICO was statutorily required to pay in the first place, whether by virtue of an underlying no-fault insurance policy or a settlement agreement.  *E.g.*, No-Fault FAC ¶ 4 ("[T]he MAOs paid or otherwise incurred losses for the medical items or treatment even though the GEICO was responsible for paying those expenses."); *id.* ¶¶ 5, 55, 57, 60-61, 75, 77, 81, 83, 88 (alleging how GEICO caused economic injury to the underlying MAOs); Settlement FAC ¶¶ 4, 5, 51, 56, 66, 69, 71, 72 (same).  In either case, this quantifiable economic loss is a real and cognizable injury sufficient to confer standing to the underlying MAOs and thus, by assignment, to Plaintiffs.  The FACs, therefore, allege sufficient facts to confer standing on Plaintiffs to bring a cause of action under the MSP provisions.[3]

## II.   The FACs Allege Plausible MSP Claims

### A.   Plaintiffs Are Not Required to Alleged the Particularized Detail of Each Underlying Claim

GEICO asserts that Plaintiffs are required to allege the details of all the underlying no-fault claims which triggered GEICO's obligations as a primary payer, and focuses specifically on the illustrative claims provided in the FACs.  In what reads like a detailed discovery request, GEICO demands a jarring amount of information for each claim:

(1) the identity of the claimant who settled his claim with GEICO; (2) the identity

---

[3] To the extent GEICO's standing challenge is focused on whether Plaintiffs alleged the particularized details of the underlying claims, then that argument is, as discussed below, unavailing because such details are not required under Rule 8.

of the GEICO insured on whose behalf a settlement was made; (3) the identity of the MAO(s) allegedly entitled to reimbursement for "conditional" payments of the medical expenses for treatment rendered to the claimant; (4) the date of the incident that was the subject of settlement; (5) the treatment sought and received by the claimant and whether it was reasonable, necessary and causally related to the incident; (6) the identity of the medical providers(s) who rendered treatment; (7) the bills submitted by the medical provider(s); (8) whether it was determined that GEICO would not make payment or that payment by GEICO was not reasonably expected to be made; (9) when, in what amount and to whom payments were made; (10) the amount of any "conditional" payment made by the MAO(s) that GEICO allegedly should have paid; (11) whether GEICO notified Medicare of its primary payer status; (12) whether any MAO identified GEICO as a primary payer; (13) whether recovery demand letters were sent to GEICO requesting reimbursement for any "conditional payment" made; (14) whether GEICO pursued the five levels of appeal; and (15) whether and when any valid assignments or rights were made by the MAO(s) at issue to any Plaintiff.

Settlement MTD at 10-11; *see* No-Fault MTD at 11 (seeking thirteen categories of information). However, all of these factual inquiries are the stuff of discovery, not pleading. This is clearly an attempt to inject the particularity requirements of Rule 9(b) into a case unrelated to fraud.

This *exact* issue, i.e., whether a plaintiff is required to allege the underlying particulars of an MSP claim, was addressed in *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).[4] In *Baxter*, a global settlement was reached relating to injuries associated with silicone breast implants between thousands of plaintiffs and several manufacturers. In light of the settlement, the United States filed a suit under the MSP statute, claiming CMS paid for medical expenses involving the settled injuries and were entitled to reimbursement—the same direct right of action alleged here.[5] The defendants moved to dismiss arguing, like GEICO here, that "the United States must identify the individuals who received government benefits for breast implant-related medical conditions and specify the services that were provided to those individuals." *In*

---

[4] Although the decision predates *Twombly* and *Iqbal*, the reasoning by the Eleventh Circuit still applies. Indeed, the Fourth Circuit has expressly endorsed the views expressed in Baxter. *See Brown v. Thompson*, 374 F.3d 253, 258 (4th Cir. 2004).
[5] MAOs "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

*re Silicone Gel Breast Implants Prod. Liab. Litig.*, 174 F. Supp. 2d 1242, 1251 (N.D. Ala. 2001). In reversing the lower court, the Eleventh Circuit held that "the district court applied too exacting a standard when it found the Government's Complaint fatally deficient for failing to identify each member of the plaintiff class on whose behalf Medicare made a conditional payment." *Baxter*, 345 F.3d at 882.

The Eleventh Circuit started with a commonsense proposition: "[c]ourts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant." *Id.*; *accord In re Jiffy Lube Sec. Litig.*, No. CIV. Y-89-1939, 1990 WL 10010982, at *6 (D. Md. Oct. 31, 1990) ("[I]n a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control . . . It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery." (quoting *Michaels Bldg. Co. v. Ameritrust Co. N.A.*, 848 F.2d 674 (6th Cir.1988)). The *Baxter* court noted that, "[a]t best, the Government may be able to generate a list of all patients who received treatment for breast implant-related medical conditions during the period covered by the RSP settlement[,]" but such a list would be overbroad and seeking recovery using a "patently inaccurate list" would violate Rule 11. *Baxter*, 345 F.3d at 833. "[G]iven the benefit of discovery, it appears not only possible but in fact inevitable that the Government will turn up a number of claims eligible for reimbursement." *Id.* at 883-84. The court also explained that requiring a Medicare provider "to plead with the specificity Defendants seek would run counter to the intent of the MSP statute." *Id.* at 884.

> In carrying out its principal purpose of shifting the burden of paying for health
> care from Medicare to private insurers, the MSP creates as a practical matter a
> need for insurers to determine, before paying a disputed liability claim . . .
> whether the Government has made a conditional payment, upon peril of being

> forced to pay the same claim twice . . . [I]t would . . . ***defeat the purpose of the statute to require that the Government identify each patient, procedure, and payment amount at the pleading stage without benefit of discovery.***

*Id.* at 884–85 (emphasis added).[6]

The reasoning in *Baxter* applies with equal force here.  Plaintiffs allege, in detail, how they came to know that GEICO systematically failed to reimburse MAOs, including those MAOs that assigned their recovery rights to the Plaintiffs, for medical expenses arising out of automobile accidents for which GEICO issued no-fault policies or were covered by a settlement agreement.  No-Fault FAC ¶¶ 50-55; Settlement FAC ¶ 47-52.  That process starts with Plaintiffs identifying "medical claims whereby Plaintiffs' beneficiaries were involved in automobile-related accidents and experienced medical expenses as a result."  No-Fault FAC ¶ 55.  Then, of those claims, "Plaintiffs . . . determine[d] that those Medicare beneficiaries possessed automobile insurance policies with the Defendant containing no-fault provisions" using "a national property/casualty claims database[.]"  *Id.* ¶¶ 55, 54.  Similarly, using various databases in the Settlement case, Plaintiffs identified instances were settlement agreements were reached and reported to CMS *by* GEICO.  Settlement FAC ¶¶ 47-48, 50-51.  And, for many of those claims, GEICO failed "to reimburse Plaintiffs' MAOs[.]" No-Fault FAC ¶¶ 55, 53; Settlement FAC ¶¶ 50-52.

Indeed, some of those claims cannot reasonably be disputed, as GEICO has already reported to CMS that it was the primary payer for those beneficiaries.  *See* No-Fault FAC ¶ 52.  Having undergone this data-driven process using accessible databases, i.e., the CMS and ISO databases, Plaintiffs plausibly allege that "Defendant has a practice and course of conduct to not properly pay and/or []fail to reimburse the secondary payer[.]"  *Id.* ¶ 55; *see Nat'l Org. for*

---

[6] The Eleventh Circuit also called out the defendants for attempting to inject Rule 9(b) into a Rule 8 standard: "[t]he pleading standards urged by the RSP Defendants are akin to the heightened requirements of Fed. R. Civ. P. 9[.]" *Baxter*, 345 F.3d at 833.  The Eleventh Circuit explained that for Rule 9(b) to be different than Rule 8 "then, a complaint governed by the ordinary standard of Rule 8 . . . need not allege the particulars of each instance of injury in order to survive a motion to dismiss." *Id.* at 883-84.

*Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) ("At the pleading stage, general factual

allegations of injury resulting from the defendant's conduct may suffice[.]").  That said, data

mining from public databases is no substitute for data *in GEICO's possession*—"[f]ull details of

those claims, i.e., specific payments, coverage determinations, etc., are in the Defendant's

possession and will be located and assessed through the process of discovery."  No-Fault FAC ¶

55; Settlement FAC ¶ 51 (same).  And, under *Twombly*, the Complaint only requires "'enough

facts to raise *a reasonable expectation that discovery will reveal evidence' supporting the*

*plaintiff's allegations.*" *Brooks*, 578 F.3d at 581 (emphasis added) (quoting *Twombly*, 550 U.S.

at 556).  Plaintiffs' allegations do exactly that.

Remarkably, GEICO relies on *MSP Recovery, LLC v. Allstate Insurance Co. ("MSP*

*Recovery I")*, 2015 WL 5882122, *1 (S.D. Fla. October 6, 2015) to support its heightened

pleading requirement for an MSP claim.  *See* No-Fault MTD at 11-12; Settlement MTD at 13.

But, GEICO fails to disclose that this case was specifically abrogated and reversed by the

Eleventh Circuit in *MSP Recovery, LLC v. Allstate Ins. Co. ("MSP Recovery II")*, 835 F.3d

1351, 1361 (11th Cir. 2016).  Indeed, on March 21, 2017, the Florida District Court specifically

explained this point in in rejecting the very challenge GEICO brings here:

> Defendant is correct that this Court in *MSP Recovery* dismissed the Plaintiff's
> allegations as conclusory because "[t]here are no allegations regarding what type
> of injuries Plaintiff suffered in the accident, what injuries were treated, what
> services the medical bills payed by FHCP were for, the amounts of the individual
> bills that were payed, or whether the amounts of the bills were reasonable."  No.
> 1:15-cv-20788-PAS.  Yet, ***Defendant fails to properly consider the more recent***
> ***opinion by the Eleventh Circuit outlined above***, which held the following: "We
> hold that a contractual obligation may serve as sufficient demonstration of
> responsibility for payment to satisfy the condition precedent to suit under the
> MSP Act." *Allstate*, 835 F.3d at 1361.  Defendant acknowledges as much, but
> still, as Plaintiff notes, "[Defendant] attempts to place additional pleading
> requirements on Plaintiff that simply do not exist by virtue of the MSP Act."
> [D.E. 36 at 18].

The Eleventh Circuit found that under the MSP Act at the summary judgement stage Plaintiff only need show that (1) Defendant is a primary plan; (2) Defendant failed to pay or reimburse; and (3) the damages amount. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016). **Therefore, we cannot find, as Defendant suggests, that Plaintiff must allege additional information at the pleading stage regarding the type of injuries, treatment of injuries, and what medical bills were paid by FHCP.** *Id.* Accordingly, Plaintiff's allegations here—that Defendant was contractually obligated to make primary payment and failed to do so—are sufficient. [D.E. 30 at ¶ 35; 48-49].

*MSP Recovery, LLC v. Allstate Ins. Co. ("MSP Recovery III")*, No. 15-21532-Civ, slip op. at 10-11 (S.D. Fla. Mar. 21, 2017)[7] (emphasis added); *see also MSPA Claims 1, LLC v. Infinity Auto Ins. Co.*, No. 15-21504-CIV, 2017 WL 2733789, at *4 (S.D. Fla. Mar. 9, 2017)[8] (holding the same). GEICO's citation to *MSP Recovery I* is deeply misleading.

Indeed, just today, another federal court considered this very issue and ruled, again, in Plaintiffs' favor:

Defendant contends that the Second Amended Complaint "relies upon conclusions rather than facts to support its claim under the Act." [D.E. 37, p. 14-15]. Specifically, Defendant contends that "MSPA does not allege the nature of the Enrollee's injuries, does not allege the care that she received for her alleged injuries, nor does MSPA attach medical records or bills to its Second Amended Complaint to demonstrate Kingsway's responsibility with respect to MSPA's alleged payments." *Id.*, p. 15. **Such arguments might be appropriate at summary judgment, but such exacting detail and evidentiary proof is simply not required at the motion to dismiss stage of the proceedings.** See *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (internal quotations omitted). Plaintiff has met its burden in pleading sufficient factual content – the contractual obligation to make primary payments by Defendant and its subsequent failure to do so – that allows us to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 16-20212-CIV-KING/TORRES, slip. Op. at pg. 11 (S.D. Fla. Aug. 28, 2017).[9]

---

[7] A copy of the order is attached as Exhibit A.
[8] A copy of the order is attached as Exhibit B.
[9] A copy of the order is attached as Exhibit C.

GEICO also cites an unpublished Florida state case, *MSPA Claims 1, LLC v. Security Nat. Ins. Co.*, Case No. 2015-28181-CA-13 (11th Jud. Cir. Miami-Dade Cty. Ct., Mar. 31, 2017).[10] Respectfully, the court's decision in that case is interlocutory, in error, and contrary to MSP law and the weight of authority.  Moreover, that court was not applying the pleading standard under Rule 8, but the pleading requirements under Florida State law.  Considering multiple *federal* courts in Florida have expressly rejected this very proposition in applying the pleading standards under Rule 8, *e.g.*, *MSP Recovery III*, No. 15-21532-Civ, slip op. at 10-11; *Infinity Auto Ins. Co.*, 2017 WL 2733789, at *4, this unpublished state case deserves little deference.  Indeed, a motion for reconsideration in the *Security National* case is currently pending before the court.

Finally, GEICO cites to *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 94 (2d Cir. 2017) to support a heightened pleading standard for an MSP claim.  In *Takemoto*, a doctor who owned a Medicare Secondary Payer compliance company brought a False Claims Act case against over fifty defendants.  *Id.*  The doctor claimed that by failing to make payments under the MSP laws to CMS, these fifty defendants had caused false claims to be submitted to the United States.  *Id.*  The sole basis of this lawsuit was that "approximately 17% of the population are Medicare beneficiaries and . . . defendants issue settlements, judgments, or awards for 'tens of thousands of claims involving Medicare beneficiaries' each year."  *Id.*  The complaint failed to allege any explanation as to why any of the fifty-named defendants had failed to meet their obligations or how the doctor had come to learn of any defendants' misconduct.  The district court dismissed the case and the Second Circuit affirmed, holding that "[h]ere, Takemoto can only speculate that each defendant had one or more reimbursement obligations under the MSPA[.]"  *Id.  Takemoto* is hardly applicable here.  Unlike Takemoto, Plaintiffs

---

[10] GEICO attached the slip opinion as Exhibit 2 in its No-Fault Motion to Dismiss (Dkt. XX) and Exhibit 1 to the Settlement Motion to Dismiss (Dkt. 31-2).

explain, in detail, how a specific defendant, i.e., GEICO, failed to properly reimburse claims that Plaintiffs' MAOs paid, and how a careful review of databases, cross-checked against millions of records of claims data, showed a systematic failure by GEICO to comply with its reimbursement obligations under the MSP laws.

Indeed, notwithstanding these allegations, and even though Plaintiffs are not required to allege the particularized details of any specific underlying claim, as explained in *Baxter*, the FACs do provide illustrative examples, discovered through cross-checking various insurance databases. For example, in the No-Fault case, Plaintiffs allege a plausible MSP claim, e.g.:

> A Florida resident was a receiving Medicare benefits from the an MAO whose right to recover under the MSP act have been assigned to Plaintiffs. That person was involved in an automobile accident on April 25, 2014 that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Plaintiffs' MAO paid for those medical expenses. That person, however, at the time of the accident also possessed a PIP policy with the Defendant, which required payment of medical expenses up to the policy limit of $10,000. Defendant, however, did not pay or reimburse the MAOs for those expenses within the required time frame, as required of a primary payer. Additionally, the Defendant did not challenge the MAO's payment of those medical expenses as reasonable and necessary within the required time frame.

FAC ¶ 57. Similarly, for the Settlement case:

> An Ohio resident named Mr. V.G. was injured in an accident by a Geico insurance carrier. Mr. G's medical expenses were subsequently paid by an MAO. Following Mr. G's claim against the Geico insured, Geico indemnified its insured Tortfeasor and made payments pursuant to a settlement of Mr. G's claims. However, Geico did not pay or reimburse the MAO for Mr. G's medical expenses within the required time frame, as required of a primary payer.

Settlement FAC ¶ 53. GEICO attacks these allegations as not providing "meaningful" facts, *see, e.g.*, Settlement MTD at 13, but even a casual reading belies that claim.[11] These are *facts which,*

---

[11] GEICO takes umbrage with the fact that Plaintiffs possess more detail relating to these underlying claims, but elected not to include those details in the FAC. *See* No-Fault MTD at 13. However, that argument misses the point. Simply because Plaintiffs possess greater details concerning the medical provision of these individuals does not mean Plaintiffs are *required* to plead those details in a publicly available filing. The pleading standard is not dictated by how much information a party possesses, but whether the allegations, themselves, plausibly assert a

if true, would make GEICO liable under the MSP laws.  Nothing more is required under Rule 8.

GEICO is trying to inject the pleading requirements of Rule 9(b), which "requires plaintiffs to plead the who, what, when, where, and how[,]" into the basic pleading requirements of Rule 8. *U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 853 (D. Md. 2013) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)).  Indeed, GEICO explicitly claims that alleging the "who, what, where, and when" is "a matter of fundamental fairness." No-Fault MTD at 13; Settlement MTD at 13.  But, that is Rule 9(b), not Rule 8.  And, it would be even inappropriate to cast aside Rule 8, impose Rule 9, and force discovery under the guise of "notice" pleading.  As it stands, the FACs plead enough to raise a plausible claim for relief.  The rest of the details, involving many thousands of claims of Plaintiffs' MAOs, will be the subject of discovery and, ultimately, trial.  Indeed, putting all the details of each possible claim in the FACs would make the pleading tedious and lengthy, and it would somehow put GEICO on better notice of the claims against it.

## B.    Plaintiffs Are Not Required to Allege Facts Concerning the Conditionality of MAOs' Payments

According to GEICO, to state an MSP claim, Plaintiffs are required to allege, for each underlying claim, facts concerning efforts by the medical provider to bill the primary payer, *see* No-Fault MTD at 14-15; Settlement MTD at 14-15, and facts concerning efforts by the MAO to deem the payments 'conditional' prior to paying them, *see* No-Fault MTD at 16-17; Settlement MTD at 16-17.  These arguments, however, misapprehend the law.

An MSP claim has three elements: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the

---

claim.  Moreover, the details surrounding the provision of medical services are, themselves, highly confidential, i.e., HIPAA protected.  Such information is properly relegated to discovery where private medical information can be protected under a HIPPA-compliant protective order.

damages amount. *W. Heritage*, 832 F.3d at 1239; *see also Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997) (discussing three elements of an MSP claim). An MSP claim does not require any proof of efforts by the medical provider to bill a primary payer, i.e., GEICO, or efforts by the MAO to deem a particular payment "conditional" prior to payment.  GEICO's attempt to inject these elements into an MSP cause of action is misplaced.

### 1.    Plaintiffs Are Not Required to Allege Efforts by the Medical Provider to Bill a Primary Payer

 Although GEICO's argument on this point is jumbled, GEICO apparently believes that before Plaintiffs can state a claim under the MSP laws, Plaintiffs must allege efforts by the *medical provider* to seek payment from GEICO first, citing a guidance documents published by CMS.  *See, e.g.*, No-Fault MTD at 14 ("[M]edical providers are required to bill a primary payer and may not bill Medicare, or an MAO, unless all primary payers have first been billed.").  In other words, because the medical provider did not bill GEICO initially, as suggested by the guidance document, GEICO is not responsible as a primary payer later.  This argument, however, run contrary to the law and conflates the responsibilities of a primary payer, i.e., to pay first, with the responsibilities of a medical provider, i.e., bill properly with known information. The conduct of one does not absolve the conduct of the other, nor is it material to the collection payments under the MSP laws.

The MSP laws were specifically amended in 2007 to put the onus on the primary payer to affirmatively assert its responsibility to MAOs and CMS.  *See* No-Fault FAC ¶¶ 34-37. Specifically, Responsible Reporting Entities ("RREs"), which include automobile insurers like GEICO, must determine whether its insureds are Medicare beneficiaries when they have been injured in an automobile accident.  42 U.S.C. §§ 1395y(b)(7)(A)(i) (RREs shall "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits

under" Medicare); *see* 42 C.F.R. § 411.25.  If an insured is a Medicare beneficiary, the RRE must electronically notify CMS and MAOs of the accident and report the Medicare beneficiary's full name, Medicare Health Insurance Claim Number ("HICN"), gender, date of birth, complete address, and phone number.  42 U.S.C. § 1395y(b)(7)(A)(ii).[12]  Then, when CMS or an MAO receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim.  In other words, there is an entire procedure for identifying primary payers and that procedure places an affirmative duty on the primary payer, i.e., GEICO, to disclose its role as primary payer.

In the context of the No-fault case, this process exists because, very often, when an injured person presents at a hospital for care, they give their Medicare card, not an auto insurance card.  Thus, the medical provider often remains unaware of the existence of any primary payer when it bills.  That said, even if the medical provider did know about a primary payer and for some reason did not bill that primary source, it would not somehow relieve the primary payer of its obligation to reimburse CMS or the MAO once those payments are made.  That is simply not how the MSP laws work.  *Cox*, 112 F.3d at 154 ("[T]he government has a direct right of recovery for the entire amount conditionally paid from any entity responsible for making primary payment.").  Focusing on what the medical provider did or did not do is a red herring.  Indeed, in the context of the Settlement case, the actions of the medical provider are even more irrelevant.  In those circumstances, GEICO became a "primary payer" once it settled its claims with Plaintiffs' MAO beneficiary, typically long after that person first presented for medical treatment to the medical provider.  *E.g.*, *Brown v. Thompson*, 374 F.3d 253, 258 (4th Cir. 2004) ("[T]his

---

[12] RREs are also required to notify CMS and MAOs when the RRE has made the determination to assume responsibility for ongoing medical services or items for one their insureds that is also a Medicare beneficiary.

new language plainly entitles Medicare to reimbursement of any payment it makes for medical services if a primary plan later pays for those medical services as part of a settlement agreement—regardless of whether that primary plan could have been expected to pay promptly when medical services were provided.").

> **2.    Plaintiffs Are Not Required to Allege Efforts by the MAO to Deem a Payment "Conditional" Because the Conditionality of any Medicare Payment Is Automatic**

GEICO next argues that Plaintiffs "fail to allege any factual support to demonstrate that it was proper for Plaintiffs or any MAO to pay any medical bills in the first instances, such that the payments may be considered 'conditional' and, therefore, reimbursable."  No-Fault MTD at 16; Settlement MTD at 14-16 (making similar arguments).  GEICO claims, without citation to any authority, that Plaintiffs must allege "the efforts any MAO made to discover the existence of other potential sources of payment" "whether any MAO was aware of GEICO's existence as a primary payer at the time it supposedly processed the charges" and "whether  and why payment was not reasonably expected to be 'promptly' made by GEICO."  No-Fault MTD at 15.  In other words, GEICO argues that Plaintiffs must allege actions by the MAO to deem a payment "conditional" to state a claim under the MSP laws.  This exact issue, however, has been already been specifically considered and *rejected* by numerous courts, including the Fourth Circuit.  *See Brown*, 374 F.3d at 257.

Put simply, GEICO's or an MAO's knowledge about the existence of a primary or secondary payer has no impact on whether GEICO is required to reimburse payments if they were, in the first instance, primary payers.  The law is *automatic*.  The MSP reimbursement provision states that "a primary plan, and an entity that receives payment from a primary plan, **_shall_** reimburse [Medicare] for any payment made[.]"  42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis

added); *Brown*, 374 F.3d at 258 (citing same language and endorsing the automatic nature of reimbursement rights). This means, regardless of whether an MAO investigated the existence of a primary payer or the secondary payer knew about the primary payment, if a payment was made and there was a primary payer, it is reimbursable and the MAO's payment is "conditional." "*[A]ny payment* that Medicare does make *is secondary* and is subject to reimbursement from sources of primary coverage under the statute." *Baxter*, 345 F.3d at 886 (emphasis added); *see Brown*, 374 F.3d at 258 (endorsing *Baxter*'s view of the law). The conditional nature of a payment results from an operation of law, not from any action by the MAO to label the payment "conditional." *Brown*, 374 F.3d at 258 ("MSP clearly provides that the reasonable expectation of a prompt payment is not a requirement for reimbursement."); *Fanning v. United States*, 346 F.3d 386, 389 (3d Cir. 2003) (anytime Medicare "makes a payment that a primary plan was responsible for, the payment is merely conditional"); *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1296 (10th Cir. 2008) (accidental payment by Medicare is still conditional); *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1357 (Fed. Cir. 2005) (same). Notice, whether actual or constructive, is also *not* an element of the cause of action. 42 C.F.R. § 411.22(a), (c). "Medicare's reimbursement rights are automatic, and it is not required to give notice of its claim." *Porter v. Farmers Ins. Co.*, No. 10-CV-116-GKF-PJC, 2012 WL 256014, at *19 (N.D. Okla. Jan. 27, 2012), *aff'd*, 505 F. App'x 787 (10th Cir. 2012).

This very issue has been soundly rejected, as noted above, by courts (including the Fourth Circuit) around the country. It is not surprising, then, that GEICO fails to cite a *single* case supporting its position. "There is nothing in the [Medicare Act] to support [the] interpretation that the Medicare organization must engage in a thorough investigation to unequivocally ascertain whether payment from another source can be expected." *Collins v. Wellcare*

*Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 669 (E.D. La. 2014).  Such action is simply not an

element of an MSP claim.

## III.   GEICO's Attempt to Challenge the Class Allegations in the FACs Should Be Rejected

### A.   GEICO's Class Challenge Is Premature Because the Court Cannot Address the Numerous Factual Issues Raised in GEICO's Motions without Allowing Some Class Discovery

At the pleading stage, prior to discovery, the proper way to challenge class allegations is

through a motion to strike.  *See, e.g.*, *Jay Clogg Realty Grp., Inc. v. Burger King Corp.*, 298

F.R.D. 304, 307 (D. Md. 2014) (J. Grimm) (considering pleading challenges to class allegations

pursuant to Rule 12(f)).  This is because the Court is required to conduct a rigorous analysis in

resolving the class certification question and, without discovery, such an analysis is typically not

possible.  *See, e.g.*, *Law Offices of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*, No.

CIV. JKB-12-2600, 2013 WL 2244811, at *2 (D. Md. May 21, 2013) ("At the proper juncture in

this case, and when all concerned are fully informed as to relevant circumstances, the Court will

entertain a motion for class certification. As of now, discovery has not concluded.").  To be

clear, challenging class allegations at the pleading stage *is* permitted—it just should be done

through the lens of a pleading challenge under Rule 12(f), not a full-fledged Rule 23 analysis

which usually requires discovery, expert reports, and fact-witness testimony.[13]  This issue is

discussed in Moore's Federal Practice:

> [T]he allegations in class action complaints should be evaluated like any other
> pleadings in federal courts.  Pleadings must provide fair notice of the claims
> asserted, but nothing more.  Rule 8(a) requires only that the pleadings put the
> defendants on notice that the plaintiffs seek class-wide relief.  Court-created
> special pleading standards, such as a ***standard that would require pleadings to set***

---

[13] *See, e.g.*, *Shirley v. Staffing Network Holdings, LLC*, No. 16 C 6279, 2016 WL 6599951, at *4 (N.D. Ill. Nov. 8, 2016) ("Determining whether the Rule 23 requirements have been satisfied requires a 'rigorous analysis,' and a court need not conduct an analysis before sufficient information has been presented."); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class[.]").

> ***out detailed allegations as to class action requirements, are highly suspect***[.]
> Pleading requirements are district from the requirements for certifying a case as a
> class action.  A court may not and should not certify a class action without
> rigorous examination of the facts to determine if the certification requirements of
> Rule 23(a) and (b) have been met[.]

5 James Wm. Moore, et al, *Moore's Federal Practice* § 23.61[1] (3rd ed. 2017) (emphasis

added).

It is also important to distinguish a motion to strike from a motion to dismiss.  At various

points GEICO asks this Court to "dismiss the class allegations" suggesting, incorrectly, that class

allegations are dismissible.  Class allegations, however, are not claims, causes of actions, or

remedies.  Class certification is a *procedural* request, akin to requesting trial by jury.  Thus, it is

incoherent, under the Rules, to "dismiss" class allegations.  It is also improper to impute the

plausibly standards for asserting a claim under *Twombly* and *Iqbal*.  The proper way to attack

class allegations at the pleading stage is to strike such allegations from the complaint pursuant to

Rule 12(f), *not* dismiss those allegations under Rule 12(b).

GEICO conflates the standards under Rules 23, 12(b)(6), and 12(f) throughout its

briefing.[14]  It does this because the legal standard for a motion to strike class allegations is

significantly higher than the others.  Indeed, "Rule 12(f) motions are generally viewed with

disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often

sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252

F.3d 316, 347 (4th Cir.2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal*

---

[14] GEICO's confusion appears to stem from its reliance on an unpublished decision from 2001 by the Honorable
Deborah K. Chasanow.  *See Ross-Randolph v. Allstate Ins. Co.*, No. CIV. A. DKC 99-3344, 2001 WL 36042162, at
*4 (D. Md. May 11, 2001).  In *Ross-Randolph*, the court considered class allegations at the pleading stage.
However, a careful reading of the decision shows that Judge Chasanow was applying the standard under Rule 12(f)
in response to a motion to strike, and did not engage in the typical Rule 23 analysis that would occur after discovery.
Indeed, Judge Chasanow specifically referenced "striking" the class allegations throughout her order and even
noted, at one point, that "[a] court should generally not deny class certification on manageability grounds without
allowing a plaintiff an opportunity to conduct some discovery." *Id.* at *9.  Nothing in the rules or in *Ross-Randolph*
changed the standard that should be applied in addressing class certification concerns at the pleading stage.

*Practice & Procedure* § 1380, 647 (2d ed. 1990)).  Striking class allegations are only appropriate

if class certification is, on the face of the pleadings, impossible.  *See* 5 James Wm. Moore, et al,

*Moore's Federal Practice* § 23.145 (3rd ed. 2017) ("A court may order deletion of portions a

complaint's class claims once it becomes clear that the plaintiffs cannot possible prove the

deleted portion[.]").

 Considering there have been two certified classes alleging near-identical claims already—

both cases decided *after* some class discovery,[15] it is difficult to see how this Court could

conclude that class certification, based on the pleadings alone, would be impossible.  At the very

least, this Court should delay resolving class certification until such time as enough factual

information is available.  As the Honorable James K. Bredar explained in another case:

> The last motion to be addressed is Defendant's motion to strike the class
> allegations in the complaint. This motion is effectively an opposition to Plaintiff's
> anticipated motion for class certification and is premature. *See* 7B Charles A.
> Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* §
> 1795, at 40 (3d ed. 2005) ("Subdivision (d)(4) [of Rule 23 permitting the
> elimination of class allegations] is procedurally inseparable from subdivision
> (c)(1)(A) [governing class certification "at an early practicable time"]"). At the
> proper juncture in this case, and when all concerned are fully informed as to
> relevant circumstances, the Court will entertain a motion for class certification.
> As of now, discovery has not concluded. For the most part, Defendant remains
> firmly in control of the evidence that would bear upon the certification decision.

*Law Offices of Leonard*, 2013 WL 2244811, at *2.

 GEICO's challenges to class certification almost entirely relate to whether individual issues

related to the underlying claims predominate over the common issues.  However, that

determination, i.e., whether those issues predominate, is precisely why discovery is needed.  As

Plaintiffs have seen in other similar cases, all of the "individual" issues GEICO speculates about

now, in the vacuum of no discovery, are easily resolved by collecting all the data into a central

---

[15] *See* MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance, Case No. 2015-1946 CA-01 (Fla. Cir. Ct. 11 Dist.) and MSPA Claims 1, LLC v. IDS Property Casualty Insurance Co., Case No. 15-27940-CA-21 (Fla. Cir. Ct. 11 Dist.).  Both rulings are attached as Exhibits D & E.

database and matching those instances GEICO was a primary payer, many of which GEICO already admitted responsibility as a primary payer to CMS, with those instances where GEICO did not pay. All the "individualized" issues will likely turn out to be, as in other cases, a question of damages and claims administration. The common legal and factual issues, however, still predominate. And, these important questions are driven and resolved through discovery, not through repetitive rhetorical questions, contrived "hypothetical" cases, or a laundry list of case law that has nothing to do with the MSP provisions. *See* No-Fault MTD at 24-31; Settlement MTD at 24-30. The Court should not go down the rabbit hold GEICO is digging, and reserve class certification questions until there has been sufficient discovery.

**B.     GEICO's Challenges to Class Certification Are All Unavailing**

      **1.     The Proposed Class Definitions Are Sufficient Because they Put GEICO on Notice of the Scope of the Alleged Classes**

GEICO challenges Plaintiffs' proposed class definitions. According to GEICO, the proposed class definitions are inappropriate because they "fail[] to define members who are entitled to relief." No-Fault MTD at 22; Settlement MTD at 22 (same). This is a fairly disingenuous argument considering GEICO's first motion to dismiss specifically criticized the class definitions as being fail-safe classes, i.e., "defined so that whether a person qualifies as a member depends on whether the person has a valid claim[.]" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)). Now that the class has been objectively defined, without reference to liability, GEICO now criticizes the class definition because the definition does not incorporate liability. This is not a product of some intrinsic problem with the class. This is GEICO manufacturing (contradicting) problems. GEICO needs to make up its mind about what it wants

the class definition to look like at the pleading stage.[16]

Both the No-Fault and Settlement class definitions are, at this time, objectively defined. They clearly describe and identify groups of class members and relate their membership to the theory of liability put forward under the MSP laws. At the pleading stage, nothing more is required. GEICO raises concerns that the class definitions are overbroad—but that is just speculation. Until there is some discovery to explore GEICO's conduct in reimbursing MAOs, GEICO's concern that uninjured class members could be part of the class definition is just that, a concern. As discovery unfolds, like in most class actions, the class definition may very well change and adapt to the facts and data. At the pleading stage, however, these definitions adequately put GEICO on notice of the scope of the proposed class. Nothing more is required until the merits of class certification are reached.

### 2. GEICO's Bald Demand for More "Facts" Is Meritless

GEICO's claims, without explanation, that Plaintiffs' class allegations fail to allege sufficient facts to support class certification under Rules 23(a) and 23(b)(3). *See* No-Fault MTD at 23-24; Settlement MTD at 23-24. But other than bald assertions, it is unclear what GEICO is concerned about. For example, GEICO takes issue with Plaintiffs' allegation regarding numerosity, in both FACs, that "[t]here are hundreds of MAOs throughout the United States who were not reimbursed by Defendant." No-Fault FAC ¶ 89(a); Settlement FAC ¶ 73(a). GEICO claims this allegation does not meet the "minimal pleading requirements of Rule 8[,]" No-Fault MTD at 24; Settlement MTD at 23-24, but then fails to explain why that is. The purpose of Rule

---

[16] GEICO, in a footnote, also raises some random additional concerns about the class definition. *See* No-Fault MTD at 23 n.9. For example, GEICO asks, "[d]o they have assignments from MAOs in each jurisdiction?" *Id.* This question, however, reveals a basic misunderstanding of this case. These are federal causes of action seeking relief on a nationwide basis. There are no state-by-state jurisdictional issues since this case is governed by uniform federal law. Thus, for example, GEICO's multi-page string cite of cases involving PIP statutes in various state courts are entirely inapposite.

8 is to put the defendant on notice of the claims against it—and, for the purposes of understanding the size of the class, Plaintiffs allege it comprises hundreds of MAOs.  Nothing more is required under Rule 8.  GEICO's claim of "insufficiency" is nothing more than half-hearted attempt to demand more facts when none are actually required.

> ### 3.     Without Discovery It Is Impossible to Know Whether "Individual" Issues Will Predominate over Common Ones

The primary thrust of GEICO's predominance challenge is that, for each underlying unpaid claim, there are, according to GEICO, numerous "facts" that will need to be examined, making this case unsuitable for class resolution.  *See* No-Fault MTD at 25-26; Settlement MTD at 24-26.  Indeed, GECIO lists out pages and pages of potential "questions" that will supposedly need to be answered for every claim.  The problem, however is that it entirely too early to know whether, under Rule 23(b)(3), individualized issue predominate over common ones, i.e., whether these "questions" actually overwhelm the common questions or whether resolving these issues is merely a function of sorting through a database.

The "predominance test is ***qualitative*** rather than quantitative."  *Stillmock v. Weis Markets*, Inc., 385 F. App'x 267, 273 (4th Cir. 2010) (emphasis added).  Indeed, "common issues of liability may still predominate even when some individualized inquiry is required."  *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013).  Thus, if the "qualitatively overarching issue" in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues.  *Id.*  Rule 23(b)(3) "compares the quality of the common questions to those of the noncommon questions."  Newberg on Class Actions § 3:27 (5th ed.).  This is because class certification in such cases will still "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Gunnells v.*

*Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). "Thus, federal courts should 'give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and ... promote judicial efficiency.'" *Id.* (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989)).

Thus, inherent in a predominance analysis is a rigorous analysis of the individual and common issues and a determination about the importance of those issues driving resolution of the lawsuit. Such a detailed analysis simply cannot be done at this early stage of the litigation. GEICO asserts a slew of "individual" issues that they claim are important for this lawsuit, but those assertions are merely speculative claims about what the facts may be, not what they are— neither party knows what those facts are because there has been no discovery. GEICO, for example, likely possesses an easily-accessible repository of data, detailing all of its unpaid MSP claims for MAOs across the United States. If such a database exists (or rather, could be built, as Plaintiffs have done in other MSP class actions that have already been certified), then nearly all of GEICO's speculative concerns about individual issues fall by the wayside. *See Gunnells*, 348 F.3d at 445 ("[T]he third question may require nothing more than a ministerial determination that can be made simply and quickly[.]"). Put simply, whether common issues really do predominate will be the topic of class discovery and expert testimony, and based on the allegations of the FACs, this Court is simply not sufficiently armed to conduct such an analysis or make a predominance ruling at this time absent wholesale speculation.

### 4. Determining Whether Each MAO's Payment Was Reasonable and Necessary Will Not Involve Any Individual Inquiry

In its No-Fault motion, GEICO cites to nearly twenty cases where various state and federal courts refused to certify a class alleging that an auto insurer failed to properly pay claims under

various No-Fault policies.  *See* No-Fault MTD at 29-31.  Nearly all of these case turn on the fact that determining whether medical expenses were reasonable and necessary under the respective no-fault state laws, would implicate individual facts.  Indeed, GEICO cites *Ross-Randolph*, where a court struck class allegations seeking to enforce No-Fault benefits for a class because "the court will have to inquire into each class member's individual claim to determine whether any medical procedure was necessary, expense was reasonable and benefits were due."  2001 WL 36042161, at \*9.  None of these cases, however, apply in this case because unlike state-law based claims seeking to enforce No-Fault benefits, here GEICO is governed by Medicare and, under that federal framework, GEICO waived its right, as a matter of law, to challenge whether the payments made by the MAOs were reasonable and necessary.  Indeed, once an MAO makes a payment for medical items and services on behalf of its enrollees, that payment is conclusive proof that the items and services were reasonable and necessary unless properly challenged through an administrative process.  *See* No-Fault FAC ¶¶ 29-32; 42 U.S.C. § 1395y(a)(1)(A).

Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."  42 U.S.C. § 1395y(a)(1)(A) (emphasis added).  "Because this section contains an express condition of payment—that is, 'no payment may be made'—it explicitly links each Medicare payment to the requirement that the particular item or service be 'reasonable and necessary.'" *Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001) *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016).  Thus, by virtue of making payments, there is a presumption and "organizational determination" by the MAO that the payments were reasonable and necessary.  *See* 42 C.F.R. § 422.566(b) (payment constitutes organizational determination).

28

If a Medicare beneficiary or primary payer contests an MAO's right to reimbursement, the claim is construed as "arising under" the Medicare Act and must be channeled through the administrative remedies process. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Under the Medicare Act, before a Medicare beneficiary or primary payer may challenge a reimbursement claim, it must first exhaust administrative remedies. *Id.* (because a health service's claim arose under the Medicare Act, it was required to exhaust administrative remedies before suing in federal court); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 483–84 (7th Cir. 1990) ("If litigants who have been denied benefits could routinely obtain judicial review of these decisions . . . the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined."); *see, e.g.*, *Baughan v. Thompson*, No. CIV.A. 3:02CV00111, 2003 WL 22295354, at *1 (W.D. Va. Sept. 30, 2003) (dismissing challenges to claim determination for failure to exhaust administrative remedies); *cf. Starnes v. Schweiker*, 748 F.2d 217, 218 (4th Cir. 1984) (explaining that Medicare rules and determinations must go through administrative process before court has jurisdiction).

Courts have repeatedly held that any challenge to Medicare's determination about a payment must first go through the administrative appeals process. *See Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 661 (E.D. La. 2014) (Medicare Advantage enrollee's state court action seeking a declaration that an MAO was not entitled to reimbursement was a claim arising under the Medicare Act that must be exhausted before any judicial review); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329, 1331-32 (S.D. Fla. 2014) (Medicare Advantage enrollee's Florida Consumer Practices Act claim against an MAO for demanding reimbursement greater than what was due was a claim arising under the Medicare Act that must be brought through the administrative appeals process before it could be taken to

federal court); *Cupp v. Johns*, No. 2:14-CV-02016, 2014 WL 916489, at *2 (W.D. Ark. Mar. 10,

2014) (Medicare Advantage enrollee's Arkansas subrogation law action seeking a declaration

that an MAO did not have a right to reimbursement arose under the Medicare Act, and the

appropriate remedy was to go through the administrative review and appeals process required by

the Medicare Act); *Potts v. Rawlings Co.*, LLC, 897 F. Supp. 2d 185, 185 (S.D.N.Y. 2012)

(Medicare Advantage enrollees' action seeking declaratory judgment regarding MAO

reimbursement rights pursuant to a New York anti-subrogation statute arose under the Medicare

Act and was subject to the requirements of § 405(g)).  42 U.S.C. §§ 405(h) and 405(g) create an

exclusive appeals  process for all claims arising under the Medicare Act, including claims

brought in the context of the Medicare Advantage program.  *See Trostle v. Centers for Medicare

& Medicaid Servs.*, No. 1:16-CV-156, 2016 WL 6082131, at *4 (M.D. Pa. Oct. 17, 2016)

("When a claim or dispute arises under the Medicare Act, and the Secretary makes a final

decision, section 405(h) explicitly precludes review by 'any person, tribunal, or governmental

agency[.]'").

Pursuant to 42 C.F.R. § 422.582(b), a party has sixty (60) days to contest an organization

determination, i.e., the MAO's decision to make payment that is reasonable and necessary.  If a

Medicare enrollee disagrees with the organization determination, it can appeal the MAOs

decision.  *See* 42 U.S.C. § 1395w-22(g); *see also W. Heritage*, 832 F.3d at 1240 (holding that a

primary plan could not contest the amount due to an MAO, as no party administratively appealed

the organization determination within sufficient time under 42 C.F.R. § 422.582).  However, as

alleged in the FACs, since GEICO—the primary payer—failed to timely dispute the payments at

issue here, GEICO waived its right to challenge whether the payment was reasonable and

necessary.  *See Trostle*, 2016 WL 6082131, at *6 ("If a claimant fails to follow the explicit

30

administrative process to appeal an unfavorable decision, that decision generally becomes

binding."). "[E]xceptions do not apply . . . to a statutorily-mandated exhaustion requirement like

the one involved in this case." *Cochran v. United States Health Care Fin. Admin.*, 291 F. 3d

775, 780 (11th Cir. 2002). This is why primary payers are, by statute, obligated to take proactive

measures to ensure Medicare is not making payments the primary payer is obligated to make.

*See* No-Fault FAC ¶¶ 34-37. A primary plan's failure to take action has consequences, i.e.,

losing the right to challenge the MAO's decision to make the underlying payments.

To the extent that a state's no-fault laws may be applicable to determine a reimbursement

right or attempt to limit or prevent recovery by an MAO, those laws are preempted by the broad,

express preemption clause in Part C of the Medicare Act:

> The standards established under this part shall supersede any State law or
> regulation (other than State licensing laws or State laws relating to plan solvency)
> with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3); *see* 42 C.F.R. § 422.402; *Potts*, 897 F. Supp. 2d at 195 (finding

New York anti-subrogation law preempted by 42 U.S.C. § 1395w-26(b)(3)). In *Potts*, the court

explained that "[f]or the purposes of the preemption provision, a standard is a statutory provision

or a regulation promulgated under the [Medicare Act] and published in the Code of Federal

Regulations." *Potts*, 897 F. Supp. 2d at 195 (quoting *New York City Health & Hosps. Corp. v.*

*WellCare of New York, Inc.*, 801 F. Supp. 2d 126, 140 (S.D.N.Y. 2011)). "Here, the federal

statute contains extensive provisions with respect to reimbursement rights of MA organizations

in the secondary payer context." *Potts*, 897 F. Supp. 2d at 196. Part C's preemption provision is

thus clear and unambiguous: the standards established under Part C supersede any state law or

regulation with very few exceptions, none of which apply here.

As such, and contrary to GEICO's assertion, the Court will not be forced to conduct

individualized inquiries regarding whether the amounts due to Plaintiffs were for medical bills that were "reasonable, related, and necessary." This is because (1) any dispute by GEICO as to the Class' claims for reimbursement is barred as a result of GEICO's failure to exhaust administrative remedies; and (2) the Medicare Act preempts any state laws, regulations, contract requirements, or other standards that conflict with an MAO's reimbursement rights. *See, e.g.*, *Ocean Harbor*, slip op. at 89 (Exhibit D) ("Defendant is foreclosed from disputing the reimbursement amounts, as no party timely appealed the organization determination to FHCP or the other putative class member determinations."); *IDS Property*, slip. Op at 11 (Exhibit E) ("[A]t this point, the time for an administrative appeal has expired and, therefore, it appears that, Defendant may be time-barred from challenging the propriety or amounts paid by the MAOs.").

### 5.   Plaintiffs' Claims Are Maintainable Under Both Rule 23(b)(2) and 23(b)(3)

Courts do not always preclude class action treatment under Rule 23(b)(2) where a plaintiff also seeks money damages. *E.g.*, *Wilfong v. Rent-A-Ctr., Inc.*, No. 00-CV-680-DRH, 2001 WL 1795093, at *8 (S.D. Ill. Dec. 27, 2001) (certifying a hybrid class pursuant to Rule 23(b)(2) and 23(b)(3); see Newberg on Class Actions § 4:38 (5th ed.) ("[C]ourts use the phrase 'hybrid class action' to refer to a single case in which plaintiffs seek both injunctive relief and monetary damages through certification under more than one section of Rule 23."). Accordingly, the fact that Plaintiffs requested both money damages and injunctive relief, i.e., compelling GEICO to comply with the MSP reporting and reimbursement laws, does not prevent certification of a class under Rule 23(b)(2). There is no hard-rule, particularly at the pleading stage, for Plaintiffs to decided, without any discovery, whether the case is best prosecuted as a Rule 23(b)(2) class, a Rule 23(b)(3) class, or some combination of both.

**6.    Plaintiffs' Claims are Maintainable Under Rule 23(c)(4)**

The proposed National Issues Classes would be "carved at the joints" after disposition of the preliminary questions of the GEICO's status as a primary payer and its duties flowing therefrom.  No-Fault FAC ¶ 97; Settlement FAC ¶ 81.  The individual Class Members would then be able to rely upon the preclusive effect of the determination of GEICO's status as primary payer to then individually litigate specific issues such as damages.  *See* Manual for Complex Litigation, (4th) § 21.24 ("An issues-class approach contemplates a bifurcated trial where the common issues are tried first, followed by individual trials on questions such as proximate causation and damages."); *see Gunnells*, 348 F.3d at 441 ("[S]ubsection 23(c)(4) should be used to separate 'one or more' claims that are appropriate for class treatment[.]").  GEICO claims, as it does throughout its briefs, that even these common issues would require individualized issues.  But, even a superficial reading of the proposed issues in the FACs belie that empty assertion.  There is nothing, as written in the FACs, to warrant the striking of the allegations for a National Issues Class under Rule 23(c)(4).  GEICO's attempt to curtail this option now, at the pleading stage, is not warranted.

**CONCLUSION**

GEICO's motions to dismiss are based, fundamentally, on an incorrect understanding of the pleading requirements and workings of an MSP cause of action.  The FACs properly allege an MSP cause of action pursuant to Rule 8—nothing more is required.  Moreover, GEICO's challenges to class certification are premature and undeveloped—a result of a complete lack of discovery.  Both of GEICO's motions should, therefore, be DENIED.  Should this Court conclude, however, that the FACs are lacking in some way, Plaintiffs' respectfully request leave to correct any such deficiencies with amendment.

33

Dated:  August 28, 2017               Respectfully submitted by,

/s/ R. Brent Wisner
R. Brent Wisner (admitted *pro hac vice*)
Michael L. Baum (admitted *pro hac vice*)
Pedram Esfandiary (admitted *pro hac vice*)
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA  90025
Tel: (310) 207-3233
Fax: (310) 820-7444
mbaum@baumhedlundlaw.com
rbwisner@baumhedlundlaw.com
pesfandiary@baumhedlundlaw.com

Cara J. Luther, Esq., (Bar No. 9112170288)
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
2101 L Street, N.W., Suite 800
Washington, D.C. 20037-1526
Tel: (202) 466-0513
Fax: (202) 466-0527
cluther@baumhedlundlaw.com

**Counsel for Plaintiffs**

**CERTIFICATE OF SERVICE**

I, R. Brent Wisner, hereby certify that, on August 28, 2017, I electronically filed the foregoing with the Clerk for the United States District Court for the District of Maryland using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ R. Brent Wisner
R. Brent Wisner