IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | Civil Action No.: 8:17-cv-00711-PWG |
| | * | |
| vs. | * | Class Action Complaint |
| | * | |
| Government Employees Insurance Company (GEICO), a Maryland Company, and its affiliates, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | Civil Action No.: 8:17-cv-00964-PWG |
| | * | |
| vs. | * | Class Action Complaint |
| | * | |
| Government Employees Insurance Company (GEICO), a Maryland Company, and its affiliates, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S COMBINED REPLY IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS AND CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**Page**

A.  Plaintiffs' Amended Complaints Should Be Dismissed Because
    Plaintiffs Lack Standing.............................................................   1

B.  Plaintiffs' Amended Complaints Should Be Dismissed Under
    *Twombly* and *Iqbal*   ..............................................................   2

C.  Plaintiffs Must Plead Facts To Support Reimbursement Of
    Conditional Payments As A Medicare Secondary Payer..........................   8

D.  The Court Can And Should Dismiss The Class Allegations At The
    Pleading Stage   ......................................................................   12

E.  Plaintiffs' Proposed Class Definitions Fail...................................   15

F.  As A Matter of Law, Plaintiffs Cannot Demonstrate That Common
    Issues Predominate   ................................................................   16

G.  Plaintiffs' Claims Are Not Maintainable Under Rule 23(b)(2) .................   20

H.  Plaintiffs' Claims Are Not Maintainable Under Rule 23(c)(4) .................   20

## CASES

**Page**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 2, 3, 4

*Baptist Hosp. of Miami Inc., v. Demario*, 661 So. 2d 319
    (Fla. Dist. Ct. App. 1995) .............................................................. 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 2, 3, 4, 5

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)........................................................ 3, 4

*Brown v. Thompson*, 374 F. 3d 253 (4th Cir. 2004) ........................................ 4, 5, 8, 9

*Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861
    (5th Cir. 2013), *cert denied*, __ U.S. __, 134 S. Ct. 436 (2013) ................ 11, 18, 20

*California Ins. Guarantee Ass'n ("CIGA") v. Price*,
    2017 WL 1737717 (C.D. Cal. May 3, 2017) ............................................ 11, 12, 18, 20

*CIGA v. Burwell*, 227 F. Supp. 3d 1101 (C.D. Cal. 2017)..................................... 18, 20

*Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653
    (E.D. La. 2014) .............................................................................. 10

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................... 5, 6

*Diacakis v. Comcast Corp.*, 2013 WL 1878921
    (N.D. Cal. May 3, 2013) .............................................................. 15

*Fanning v. United States*, 346 F.3d 386 (3d Cir. 2003)........................................ 9

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ............................................. 5

*Gunnells v. Healthplan Servs., Inc.* 348 F.3d 417 (4th Cir. 2003)........................... 21

*Jay Clogg Realty Grp., Inc. v. Burger King Corp.*,
    298 F.R.D. 304 (D. Md. 2014)................................................... 13

*Law Offices of Leonard I. Desser, P.C. v. Shamrock*
    *Commc'ns, Inc.*, 2013 WL 2244811 (D. Md. May 21, 2013)..................... 13

**Page**

*Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001)............................................................ 18

*MSP Recovery, LLC v. Allstate Ins. Co.*,
    2015 WL 5882122 (S.D. Fla. October 6, 2015)........................................... 5, 6

*MSP Recovery, LLC v. Allstate Ins. Co.*,
    835 F.3d 1351 (11th Cir. 2016) ................................................. 5, 8, 11, 18

*MSP Recovery, LLC v. Allstate Ins. Co.*, Case No. 15-20732 ............................... 6

*MSP Recovery, Inc. v. Allstate Ins. Co.*, Case No. 15-21532 ................................ 6

*MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, No. 2015-1946 CA-01
    (Fla. Cir. Ct. 11th Jud. Cir., Miami-Dade County, Feb. 2, 2017).............. 13, 14

*MSPA Claims 1, LLC v. Security Nat'l Ins. Co.*, Case No.
    2015-28181-CA-13 (11th Jud. Cir. Miami-Dade Cty. Ct.,
    Fla. Mar. 31, 2017)   ................................................................. 6, 17, 18

*MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*,
    No. 15-27940 CA-21 (Fla. Cir. Ct. 11th Jud. Cir.,
    Miami-Dade County, Apr. 20, 2017)............................................................ 14, 15

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ...................................... 15

*Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521 (D. Md. 2001) ............. 17

*Porter v. Farmers Inc.*, 2012 WL 256014 (N.D. Okla. Jan. 27, 2012),
    *aff'd*, 505 F. App'x 787 (10th Cir. 2012)..................................................... 9, 10

*Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012)....................... 19

*Ross–Randolph v. Allstate Ins. Co.*, Civil No. DKC–99–3344,
    2001 WL 36042162 (D. Md. May 21, 2001).............................................. 12, 13, 17

**Page**

*Stanley v. Cent. Garden & Pet Corp.,* 891 F. Supp. 2d 757 (D. Md. 2012)...........   12, 13

*United States v. Baxter Int'l, Inc.,* 345 F.3d 866 (11th Cir. 2003).......................   2, 3, 4, 5

*United States ex rel. Takemoto v. Nationwide Mut. Ins.,* 674 F. App'x 92
   (2d Cir. 2017)   ...................................................................   7

*United States, et al v. Wanaque, et al.,* 2:14-cv-06651, D. NJ. .............................   4

*Universal Health Servs., Inc. v. United States,* __ U.S. __,
   136 S. Ct. 1989 (2016) .................................................................   18

*Warth v. Seldin*, 422 U.S. 490 (1975)....................................................   1

*Wilfong v. Rent-A-Ctr., Inc.,* 2001 WL 1795093 (S.D. Ill. Dec. 27, 2001) ............   20

## RULES, REGULATIONS & STATUTES

Fed. R. Civ. P. 8   .........................................................   3, 4, 8

Fed. R. Civ. P. 9(b)   .......................................................   4

Fed. R. Civ. P. 12(b)(6)   ..................................................   4, 8, 12

Fed. R. Civ. P. 12(f)   .....................................................   12, 13

Fed. R. Civ. P. 23   ........................................................   12, 13

Fed. R. Civ. P. 23(b)(2)   ..................................................   20

Fed. R. Civ. P. 23(b)(3)   ..................................................   13, 14, 17, 20

Fed. R. Civ. P. 23(c)(1)   ..................................................   12

Fed. R. Civ. P. 23(c)(1)(A)   ...............................................   12

Fed. R. Civ. P. 23(c)(4)   ..................................................   20, 21

Fed. R. Civ. P. 23(d)(1)(D)   ...............................................   12, 13

Fed. R. Civ. P. 23(d)(4)   ..................................................   12, 13

**Page**

42 C.F.R. §405.900 ................................................................ 19

42 C.F.R. §411.21 ................................................................. 8, 10

42 C.F.R. §422.108(b) .......................................................... 8, 10

31 U.S.C. §3729(a)(1)(g) ...................................................... 7

42 U.S.C. §1395y(b)(2)(B)(i) ............................................... 8

42 U.S.C. §1395y(b)(2)(B)(ii) .............................................. 9

42 U.S.C. §1395y(a)(1)(A) .................................................... 18

**OTHER**

80 Fed. Reg. 10611 (Feb. 27, 2015).......................................... 19

CMS Medicare Secondary Payer Manual Publication 100-05 .............................. 8

**A.      Plaintiffs' Amended Complaints Should Be Dismissed Because Plaintiffs Lack Standing.**

In opposing GEICO's Motions to Dismiss, Plaintiffs contend that their amended complaints include allegations that "the underlying MAOs, who assigned their rights of recovery to the Plaintiffs, suffered an *economic injury* as [a] result of making payments GEICO was statutorily required to pay in the first place, whether by virture [sic] of an underlying no-fault insurance policy or a settlement agreement." Opp. at 8 (emphasis in original). Plaintiffs further assert that there is a "quantifiable economic loss [that] is a real and cognizable injury sufficient to confer standing to the underlying MAOs and thus, by assignment, to Plaintiffs." *Id.* Yet, there is not a single ***fact*** set forth in either amended complaint demonstrating how Plaintiffs or their MAO assignor(s) suffered an injury-in-fact. Completely absent from both amended complaints are any factual allegations that Plaintiffs suffered an actual "economic injury" or a "quantifiable economic loss." Generically declaring that unidentified MAO assignors have made payments that were not reimbursed by GEICO means nothing because GEICO's obligation to reimburse does not arise until several prerequisites are satisfied.  Plaintiffs' amended complaints represent the quintessential example of threadbare allegations that are abstract and hypothetical rather than concrete and particularized, and thus should be dismissed. Plaintiffs' failure to adequately plead standing in their amended complaints requires dismissal. *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) (explaining that the trial court may permit the plaintiff to supply, by amendment or affidavit, "further particularized allegations of fact" supportive of standing, but that "[i]f, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint ***must be dismissed***" (emphasis added)).

**B.      Plaintiffs' Amended Complaints Should Be Dismissed Under *Twombly* and *Iqbal*.**

Plaintiffs seek the extraordinary relief of class action treatment despite failing to identify a single GEICO no-fault claim or settlement with an MAO beneficiary that would trigger GEICO's obligation to reimburse them or their alleged MAO assignors. Instead, Plaintiffs ask this Court to accept amended complaints that refer generically to no-fault payment obligations and settlements with unidentified MAO beneficiaries but which allege virtually no facts describing an obligation by GEICO to pay or reimburse Plaintiffs or their assignors as a result of a no-fault claim or a liability settlement.

Plaintiffs make the serious, yet conclusory accusation that they have found "a systematic failure of GEICO to comply with MSP reimbursement provisions." Opp. at 6, 7. Yet, there are no facts set forth in the amended complaints that support these "systematic failures." Quite simply, the amended complaints fail to put GEICO on notice of any claim against it. Plaintiffs do not allege an exemplar case that identifies an MAO, a claimant, basic facts about an incident, or specifics concerning GEICO's alleged failure to reimburse Plaintiffs or their MAO assignors under the MSP statute for no-fault payment obligations or obligations arising out of a GEICO claim settlement. Without such basic allegations, there is no way for GEICO to answer the allegations, frame affirmative defenses or formulate a defense.

Despite fatal omissions in their amended complaints, Plaintiffs contend they are entitled to proceed because basic facts such as the enrollee's name, date of the enrollee's accident, the provider of the medical services and the medical expenses GEICO allegedly failed to pay "are the stuff of discovery, not pleading." Opp. at 9. Plaintiffs request an "'extra modicum of leeway'" because "'the information supporting the complainant's case is under the exclusive control of the defendants.'" Opp. at 10 (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866,

882 (11th Cir. 2003)). Thus, Plaintiffs seek to delve into GEICO's files in hopes of identifying a claim to support their unsupported legal theories. Such tactics should be rejected. Plaintiffs admit in their amended complaints and throughout their Opposition that they conducted a "comprehensive review of claims data and various private insurance databases," and cross-checked "millions of records of claims data" to support their allegations of "systematic failures" by GEICO. *See* Settlement Amend. Compl. ("SAC") at ¶50; No-Fault Amend. Compl. ("NFAC") at ¶55; Opp. at 6, 7, 11, and 15. These allegations starkly contrast with Plaintiffs' argument that GEICO has "exclusive control" of information supporting their case. Despite their "comprehensive review" and cross-checking of "millions of records," Plaintiffs supply only meaningless snippets of information, characterized as "illustrative examples," consisting of the claimant's initials and resident state in the SAC, and the claimant's state and date of accident in the NFAC. *See* SAC at ¶53; NFAC at ¶53. Plaintiffs' failure to provide anything more to support their claims is baffling. The purported "illustrative examples" merely set forth generalized and conclusory statements that provide no insight about the factual bases of Plaintiffs' claims. To argue, as Plaintiffs do, that "nothing more is required under Rule 8" (Opp. at 16) simply ignores the Rule 8 pleading requirements as construed by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs must allege facts to support actual, not hypothetical, claims.[1]

---

[1] Relying on *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) and *Twombly*, Plaintiffs contend that they have set forth "'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting their claims." Opp. at 12 (citations omitted). GEICO disputes that contention. Moreover, in affirming the dismissal of a §1983 due process claim, the *Brooks* court stated:

> [A]t some point **factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.**

3

Plaintiffs contend that GEICO is attempting to "inject the pleading requirements of Rule 9(b)" into this case. Opp. at 16. GEICO makes no such contention. Rather, GEICO submits that, under Rules 8 and 12(b)(6) as well as Article III standing principles, Plaintiffs must provide a basic level of detail about their actual claims. Either Plaintiffs have basic facts to support actual claims under their legal theories against GEICO or they do not. If they have such facts, however, those facts should have been plead.[2]

Plaintiffs' reliance on *Baxter* to support the premise that they are not required to allege the underlying particulars of an MSP claim is misplaced.[3] Opp. at 9-11. *Baxter* applied the

---

This continues to be the case after *Iqbal.* . . . . We understand the Court in *Iqbal* **to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading** (something that anyone could do, regardless of what may be prompting the lawsuit), **rather than providing some specific facts to ground those legal claims,** that they must do more. These are the plaintiffs who have not provided the showing required by Rule 8.

*Brooks*, 578 F.3d at 581(citations and quotation marks omitted) (emphasis added).

[2] On September 20, 2017, Plaintiffs submitted a Notice of Supplemental Authority citing a recent Memorandum opinion issued in *United States, et al v. Wanaque,* 2:14-cv-06651, D. N.J. where the Honorable Susan D. Wigenton's denied defendants' motion to dismiss plaintiffs' amended complaint. In *Wanaque*, plaintiffs allege that an in-patient treatment facility ignored its obligation under MSP law to identify and bill primary payers **before** submitting bills to Medicare or Medicaid. Plaintiffs suggest that *Wanaque* supports their position that their amended complaints contain sufficient facts to avoid dismissal. However, a review of *Wanaque* demonstrates that the *Wanaque* amended complaint contained substantial factual allegations which are wholly missing from the NFAC and SAC here. Each of the eight exemplar claims in the *Wanaque* amended complaint include numerous **facts** including but not limited to the (1) identifier for the minor patient; (2) the patient's resident state; (3) details concerning the patient's admission into the defendant's facility; (4) details concerning the physician's attempts to determine the existence and identify of primary payers; (5) details of communications between the attending physician and various named administrators at the defendant's facility; and (6) inquiries by the attending physician to state Health Department officials about coordinating benefits between CMS and primary payers and specific instances where the defendant billed Medicare even though it knew the identity of a primary payer. *See* Exhibit 1, *Wanaque* First Am. Compl. at ¶¶ 73-134. Plaintiffs' belief that *Wanaque* supports their argument is plainly wrong. To the contrary, the amended complaint in *Wanaque* demonstrates the type of facts that are necessary to satisfy the *Twombly* and *Iqbal* pleading requirements.

[3] Citing *Brown v. Thompson*, 374 F. 3d 253, 258 (4th Cir. 2004), Plaintiffs state that "although the [*Baxter*] decision predates *Twombly* and *Iqbal*, the reasoning by the Eleventh Circuit still

dismissal standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), which has since been abrogated. Specifically, the *Baxter* Court stated that a "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the [complainant] can prove no set of facts in support of his claim." *Baxter*, 345 F.3d at 880 (citing *Conley*). The *Conley* standard, however, was categorically rejected by the Supreme Court in *Twombly*. *See* 550 U.S. at 562-63 (announcing that *Conley's* "no set of facts" language has "earned its retirement"). Accordingly, Plaintiffs' desire to be held to the less demanding pre-*Twombly* pleading standard must yield to binding precedent.[4]

In support of its motions, GEICO relied on *MSP Recovery, LLC v. Allstate Ins. Co.*, 2015 WL 5882122 (S.D. Fla. October 6, 2015), where the Honorable Patricia Seitz dismissed the plaintiffs' complaint under Rule 12(b)(6) (the "Seitz *Allstate*" case). In opposing GEICO's motions, Plaintiffs make the erroneous accusation that GEICO's reliance on the Seitz *Allstate* case is both "remarkabl[e]" and "deeply misleading." Opp. at 12-13. Plaintiffs contend, incorrectly, that the case was "abrogated and reversed" by the Eleventh Circuit in *MSP Recovery, LLC v. Allstate Ins. Co., ("MSP Recovery II")*, 835 F.3d 1351 (11th Cir. 2016). Opp. at 12. In

---

applies. Indeed, the Fourth Circuit has endorsed the views expressed in *Baxter*." Opp. at 9 n.4. It is unclear precisely what Plaintiffs mean by this statement. First, the Fourth Circuit does not adhere to the abrogated *Conley* standard set forth in *Baxter*. *See Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (explaining that the *Conley* standard was explicitly overruled in *Twombly*). Second, *Brown* never addressed the issue of whether a plaintiff is required to allege the underlying particulars of an MSP claim. Rather, the only issues in *Brown* were (1) whether Medicare was entitled to reimbursement out of settlement proceeds under the MSP statute regardless of whether the settlement proceeds were reasonably expected to be paid promptly; and (2) whether the self-insurance plan at issue qualified as a primary payer such that Medicare was entitled to reimbursement. *Brown*, 374 F. 3d at 257.

[4] Moreover, *Baxter* is distinguishable. The Eleventh Circuit reversed the district court's dismissal of the plaintiff's complaint because the trial court had improperly required the government to identify in the complaint "**each member** of the plaintiff class on whose behalf Medicare made a conditional payment." *Id.* at 882 (emphasis added). GEICO is not requesting the identity of every member of Plaintiffs' class at the pleading stage. Rather, GEICO asks that Plaintiffs simply allege facts, rather than legal conclusions, to support their theories of liability.

fact, it is Plaintiffs' argument that is "remarkable" and "deeply misleading." **The Seitz *Allstate* case was not included in the Eleventh Circuit consolidated appeal, and most assuredly was not abrogated and reversed by the Eleventh Circuit.** Following Judge Seitz's dismissal order, the case was closed on November 2, 2015 and the dismissal was not appealed. *See* Exhibit 2, Docket Entries for Seitz *Allstate* case. Judge Seitz's analysis is directly on point regarding the applicable pleading requirements that must be satisfied before Plaintiffs can state a claim under the MSP statute.

Presumably, Plaintiffs' confusion resulted from the fact that, in addition to the Seitz *Allstate* case, MSP Recovery, LLC (one of the Plaintiffs suing GEICO in these cases) filed two other cases against Allstate in the Southern District of Florida with identical case captions (but different case numbers and judges).[5] It is regrettable that MSP Recovery's inability to keep track of its own lawsuits resulted in an unfounded accusation against GEICO.

Plaintiffs also ask this Court to disregard the ruling in *MSPA Claims 1, LLC v. Security Nat'l Ins. Co.*, Case No. 2015-28181-CA-13 at *10 (11th Jud. Cir. Miami-Dade Cty. Ct. Fla.). There, the court dismissed the plaintiffs' complaint and class action allegations seeking reimbursement of conditional payments made by an MAO under the insurer's no-fault policies. Plaintiffs request that this Court rely instead upon a trio of decisions from the Southern District of Florida authored by U.S. Magistrate Judge Edwin Torres and adopted by District Judge James L. King in which the court denied insurers' motions to dismiss. Opp. at 13-14, Pl. Exhibits A, B and C. These cases, however, are distinguishable. First, each of those opinions cited with

---

[5] Included in the Eleventh Circuit appeal were (1) *MSP Recovery, LLC v. Allstate Ins. Co.*, Case No. 15-20732, decided by the Honorable Robert N. Scola, Jr.; and (2) *MSP Recovery, Inc. v. Allstate Ins. Co.*, Case No. 15-21532, decided by the Honorable James Lawrence King. *See* Exhibit B. In contrast, the case cited and relied upon by GEICO is Case No. 15-20788, decided by Judge Seitz.

approval, the abrogated *Conley* "no set of facts" pleading standard. *See* Opp. Ex. A at 4; Opp. Ex. B at 3; Opp. Ex. C at 12. Second, each complaint actually contained facts—including the identity of the MAO at issue and its assignment of rights to plaintiffs, the date and details of the accident, details about the medical bills and the amount of "conditional payments" at issue and specific allegations about the defendants' failure to pay—all of which are missing from the NFAC and SAC. *See* Case Nos. 1:15-CV-21504, Doc. No. 35; 1:15-CV-21532, Doc. No. 30; 1:16-CV-20212, Doc. No. 36.

Plaintiffs' attempt to distinguish these cases from *United States ex rel. Takemoto v. Nationwide Mut. Ins.*, 674 F. App'x 92 (2d Cir. 2017), is also unavailing. Opp. at 14. Just like the *Takemoto* plaintiff, Plaintiffs have failed to identify ***any*** facts in their amended complaints showing that they or their alleged MAO assignors are entitled to anything from GEICO. In *Takemoto*, the plaintiff alleged that the defendants violated the False Claims Act because they knowingly and improperly avoided an obligation to pay or transmit money or property to the government under 31 U.S.C. §3729(a)(1)(g). The underlying obligation upon which the plaintiff claimed relief was the requirement under the MSP Act to reimburse CMS for conditional payments. Notably, however, the plaintiff's complaint failed to "identify any beneficiaries for whom [CMS] made conditional payments, the amounts or dates of such payments, an associated settlement, and the relation of any conditional payments to any particular defendant." *Id*. at 95. The Second Circuit held that, "[i]n the absence of such facts admitting a reasonable inference that CMS made a conditional payment on behalf of a particular defendant's beneficiary, there is no basis for a secondary inference that a given defendant was under a reimbursement obligation to CMS." *Id*. The complaint therefore supplied "'nothing but low-octane fuel for speculation' about the requisite reimbursement obligation element of [the plaintiff's] claims, which cannot

defeat Rule 12(b)(6) dismissal even under the basic pleading requirements of Rule 8(a)." *Id.* (citation omitted).

**C.      Plaintiffs Must Plead Facts To Support Reimbursement Of Conditional Payments As A Medicare Secondary Payer.**

Plaintiffs argue that they are not required to plead facts establishing that the MAO payments at issue are "conditional." Opp. at 16-21. Yet, under the MSP statute, the following requirements must be met: as a secondary plan, an MAO is ***prohibited*** from paying unless the primary plan cannot reasonably be expected to make payment promptly or because the intermediary or carrier did not know that the other coverage existed;[6] an MAO is required to "[i]dentify payers that are primary to Medicare," "[i]dentify the amount payable by those payers," and "[c]oordinate its benefits to Medicare enrollees with the benefits of the primary payers";[7] and medical providers are required to identify and bill primary payers and also must have reason to believe payment will not be made promptly by the primary payer before they can even bill a secondary payer.[8] These requirements cannot be read out of the statute as Plaintiffs suggest. Rather, facts must be pled and proved in order for Plaintiffs to invoke a right to reimbursement of a conditional payment under the MSP statute. *See MSP Recovery, LLC,* 835 F.3d at 1361. Because Plaintiffs have failed to do so, their amended complaints must be dismissed.

None of the cases cited by Plaintiffs hold that an MAO may invoke a right to reimbursement from an alleged primary payer where the prerequisite statutory and regulatory obligations giving rise to the right are not satisfied. Plaintiffs assert that in *Brown v. Thompson,* the Fourth Circuit considered and rejected the argument that "Plaintiffs must allege actions by

---

[6] *See* 42 U.S.C. §1395y(b)(2)(B)(i); 42 C.F.R. 411.21 (defining "conditional payment").
[7] 42 C.F.R. §422.108(b).
[8] *See* CMS Medicare Secondary Payer Manual Publication 100-05, Ch. 3 at 30.2.1.

the MAO to deem a payment 'conditional' to state a claim under the MSP laws." Opp. at 19.
Plaintiffs' assertion is wrong. As explained in footnote three, only two issues were addressed in
*Brown,* and neither dealt with the issues raised by GEICO. Plaintiffs further claim that *Brown*
"endors[es]" the automatic nature of reimbursement rights. Opp. at 20. That assertion is also
wrong. The *Brown* court found that "'[a] primary plan . . . shall reimburse' Medicare for any
payment made by Medicare 'with respect to an item or service **if it is demonstrated that such
primary plan has or had a responsibility to make payment with respect to such item or
service**.'" 374 F.3d at 258 (quoting §1395y(b)(2)(B)(ii)) (emphasis added). Thus, a primary plan
is only required to reimburse payments **after** there is a determination that the primary plan had a
responsibility to pay.  Such a determination is anything but "automatic."

Plaintiffs rely on *Fanning v. United States*, 346 F.3d 386, 389 (3d Cir. 2003) to support
their argument that "anytime Medicare 'makes a payment that a primary plan was responsible
for, the payment is merely conditional.'" Opp. at 20 (quoting *Fanning*, 346 F.3d at 389). First, as
discussed in GEICO's motion, the determination of when a primary plan is responsible for a
conditional payment made by an MAO is an issue that must be determined on a case-by-case
basis. Thus, the quoted language in *Fanning* lends no support to Plaintiffs' claim that Medicare
reimbursement rights are automatic. Moreover, the *Fanning* court's comment was *dicta*. The
language was included in a background discussion of the MSP statute, and had no bearing on the
subject matter jurisdiction issue confronting the Third Circuit. *Id.* at 388.

As with the other cases they cite, *Porter v. Farmers Inc.*, 2012 WL 256014 (N.D. Okla.
Jan. 27, 2012), *aff'd*, 505 F. App'x 787 (10th Cir. 2012) also provides no support to Plaintiffs'
position. *Porter* was a bad faith breach of insurance contract lawsuit arising from an automobile
accident. The plaintiff was ultimately determined not to be a Medicare beneficiary at the time of

the accident and Medicare confirmed it was not asserting any right of reimbursement from the plaintiff's uninsured motorist settlement. *Id.* at *11-13, *19. The *Porter* court's discussion about the MSP statute was *dicta*, and had no bearing on the court's determination that the insurance carrier did not act in bad faith. The court only discussed the MSP statute to provide context for the insurance company's delay in issuing the settlement payment resulting from the considerable confusion over whether the plaintiff was eligible for Medicare benefits at the time of the accident (he was not). Finally, in stating that "Medicare's reimbursement rights are automatic and it is not required to give notice of its claim," the *Porter* court relied on 42 C.F.R. §411.21 which merely sets forth certain definitions and is silent about Medicare's reimbursement rights being "automatic" or the absence of a notice requirement.

Finally, *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653 (E.D. La. 2014), is inapposite. The enrollee was in an automobile accident and ignored multiple inquiries from the MAO requesting information regarding the potential existence of primary payers. *Id.* at 656, 669. The MAO paid for the enrollee's medical care, and the enrollee later settled with the tortfeasor. *Id.* at 656. The *Collins* court rejected the enrollee's argument that the MAO's payments were not conditional, holding that an MAO need not "engage in a **thorough investigation** to **unequivocally ascertain** whether payment from another source can be expected." *Id*. at 669 (emphasis added). The court did not hold, as Plaintiffs suggest, than the MAO's payments would have been conditional had the MAO made no attempt to identify primary payers. Indeed, such a holding would plainly violate 42 C.F.R. §422.108(b)—a provision not cited in the court's analysis—which imposes an affirmative obligation on MAOs to identify primary payers and coordinate benefits.

10

Remarkably, within the context of their argument about an MAO's responsibilities under the MSP statute, Plaintiffs gloss over the portion of the Eleventh Circuit's opinion in *MSP Recovery II* that is directly on point. There, the court held that "a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act." 835 F.3d at 1361. The court, however, warned that the mere existence of a contractual obligation

> **does not relieve Plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover. And Defendants may still assert any valid contract defense in arguing against their liability**. We hold only that a contractual obligation may satisfy the demonstrated responsibility requirement, **not that the existence of a contractual obligation conclusively demonstrates liability** under the MSP Act's private cause of action.

*Id.* (emphasis added). [9]

Finally, Plaintiffs' suggestion that a primary payer must reimburse an MAO (or CMS) for any payment made is at odds with the entire MSP scheme. For obvious reasons, Plaintiffs utterly ignore *California Ins. Guarantee Ass'n ("CIGA") v. Price*, 2017 WL 1737717 (C.D. Cal. May 3, 2017) – a case cited by GEICO in its motions. Yet, presumably, they recognize that when an MAO pays for services unrelated to an injury for which GEICO is the primary insurer, the MAO is not entitled to reimbursement. In *Price,* the court ruled that (1) CMS's pursuit of unrelated charges, simply because they were bundled with related charges, is an unlawful practice under the MSP statute; (2) whether medical services are related is a factual determination made on a case-by-case basis*;* and (3) a primary payer does not have a responsibility to make payment for

---

[9] Plaintiffs also ignore *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 864-67 (5th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 436 (2013) (a primary payer's responsibility to reimburse for a conditional payment is subject to the terms and conditions of the primary payer's coverage and is to be distinguished from a determination of medical necessity).

the uncovered items/services just because they were billed under the same line-item charge as the covered item, device, medical supply or service. *Id.* at *4*. Thus, the mere fact that an MAO issued payment does not and cannot demonstrate an automatic requirement that GEICO make reimbursement, as the payment does not prevent GEICO from contesting reimbursement of unrelated charges bundled with payments for covered charges.

**D.     The Court Can And Should Dismiss The Class Allegations At The Pleading Stage.**

Plaintiffs contend that GEICO's challenge to the class action allegations is premature, and assert that discovery is required first. Once again, Plaintiffs are wrong. Rule 23(d)(1)(D) authorizes the Court to dismiss or strike class allegations at the pleading stage. The Court should exercise its discretion to do so here. Given the nature and scope of the myriad issues that will invariably require individualized assessment in every case, the Court is capable of a rigorous analysis of these issues based upon the pleadings and relevant statutes and regulations.

Plaintiffs suggest that GEICO confuses the interplay between Rules 23, 12(b)(6) and 12(f). Opp. at 22. No such confusion exists. The Honorable Deborah K. Chasanow's opinion in *Ross-Randolph*[10] provides the analytical framework for challenges to class allegations at this stage of litigation.[11] Indeed, Judge Chasanow's analysis was followed by Chief Judge Catherine C. Blake in *Stanley v. Cent. Garden & Pet Corp.,* 891 F. Supp. 2d 757 (D. Md. 2012):

---

[10] *Ross-Randolph v. Allstate Ins. Co.,* 2001 WL 36042162 (D. Md. May 11, 2001).

[11] Plaintiffs mistakenly suggest that "a careful reading of [*Ross-Randolph*] shows that Judge Chasanow was applying the standard under Rule 12(f)." Opp. at 22 n.14. Actually, a careful reading demonstrates that Judge Chasanow never mentioned Rule 12(f). Judge Chasanow's analysis began by  noting that "[a] party challenging the validity of maintaining an action under Rule 23 may move for a determination under Rule 23(c)(1) [subsequently renumbered as Rule 23(c)(1)(A)] that a class action is unwarranted." 2001 WL 36042162 at *4.  Judge Chasanow then stated that "[i]f a plaintiff fails to allege sufficient facts to show the requirements under Rule 23 have been met, then pursuant to Rule 23(d)(4) [subsequently renumbered as Rule 23(d)(1)(D)] the court can order that 'the pleadings be amended to eliminate allegations regarding the representation of absent persons….'" *Id.* (citation omitted).

> A court need not wait until class certification is sought to determine whether a party complies with Fed. R. Civ. P. 23.…  *Ross–Randolph v. Allstate Ins. Co.*, Civil No. DKC–99–3344, 2001 WL 36042162, at *4 (D. Md. May 21, 2001) (granting a motion to strike class allegations).  If a plaintiff fails to allege sufficient facts to meet the requirements of Rule 23, the court can order 'the pleadings be amended to eliminate allegations regarding the representation of absent persons….' Fed. R. Civ. P. 23(d)(4).

*Id.* at 769 (citation omitted). Thus, judges in this District have properly utilized Rule 23(d)(1)(D) to dismiss or strike class allegations at the pleading stage. As in *Ross-Randolph* and *Stanley*, it is illogical to waste resources on class certification discovery where it is plain from the face of the amended complaints that the cases are unsuitable for class action treatment.

Plaintiffs' reliance on other cases from this District is unavailing. In *Jay Clogg Realty Grp., Inc. v. Burger King Corp.*, 298 F.R.D. 304 (D. Md. 2014), the defendant filed a Rule 12(f) motion to strike the plaintiffs' Telephone Consumer Protection Act ("TCPA") class allegations, arguing that class actions were not permitted under the TCPA and also challenging the superiority prong of Rule 23(b)(3). *Id.* at 308. The Court concluded that "the law in this district allows TCPA claims to be pursued as class actions" and that superiority existed, and accordingly denied the motion to strike under Rule 12(f). *Id.* at 308-10. Similarly, in *Law Offices of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*, 2013 WL 2244811 (D. Md. May 21, 2013), also a TCPA class action, the Court denied the defendant's motion to strike the class allegations because discovery was well underway (not so here) and because "Defendant remains firmly in control of the evidence that would bear on the certification," (also, not the case here). *Id.* at *2. *Desser* is clearly distinguishable from the cases at bar.

In support of their argument that class allegations should not be dismissed at the pleading stage, Plaintiffs rely on two Florida state court certification rulings: *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, No. 2015-1946 CA-01 (Fla. Cir. Ct. 11th Jud. Cir., Miami-Dade

County, Feb. 2, 2017) and *MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*, No. 15-27940 CA-21 (Fla. Cir. Ct. 11th Jud. Cir., Miami-Dade County, Apr. 20, 2017). Opp. at 23 n.5. Plaintiffs contend that these rulings make it "difficult to see how this Court could conclude that class certification, based on the pleadings alone, would be impossible." *Id.* Plaintiffs, however, fail to disclose that the both rulings are on appeal, and therefore lack precedential value. Moreover, except for several non-substantive changes, the *Ocean Harbor* court fully adopted the plaintiff's 100-page proposed certification order. *Compare Ocean Harbor* proposed order (attached as Exhibit 3), *with* court's order (Ex. D to Pls.' Opp). The *Ocean Harbor* court's "rubber-stamped" certification order cannot be reconciled with the "rigorous analysis" required by Florida courts when evaluating a class certification motion.[12] *See, e.g., Baptist Hosp. of Miami Inc., v. Demario*, 661 So. 2d 319, 321 (Fla. Dist. Ct. App. 1995) ("A class action may be certified only after the trial court determines, on the basis of a rigorous analysis, that the elements of the class action rule have been satisfied."). No rigorous analysis occurred in *Ocean Harbor*.

The *IDS* certification order suffers from the same flaws as *Ocean Harbor*. A cursory comparison of the *IDS* order with the *Ocean Harbor* order shows that the substance of the two orders are essentially the same. Not surprisingly, the 18 common questions of law and fact identified in *Ocean Harbor* are identical to the first 18 common questions identified in *IDS*. Opp.

---

[12] The *Ocean Harbor* court failed to rigorously analyze the plaintiff's purported common questions. Instead, the court adopted verbatim the plaintiffs' proposed list of "questions of law and fact common to the resolution of all claims as asserted by Plaintiff." Pls.' Ex. D at 45-46. Virtually every "common" question proposed by Plaintiffs and adopted by the court, however, will require an individualized review. Given this need for individualized evaluation, neither the *Ocean Harbor* court nor Plaintiffs here explain how common questions could ever predominate. Due to the individualized nature of the questions identified by GEICO, the predominance required for certification of a Rule (b)(3) class is unattainable.

Ex. D at 46-47, ¶¶ A-R; Ex. E at 27-28, ¶¶ A-R.[13] Ultimately, the "common questions" identified in each case are by, their very nature, individualized. As such, predominance cannot be met. That fact, coupled with what appears to be a total absence of any original analysis by either court, renders these decisions unworthy of consideration here.

### E.       Plaintiffs' Proposed Class Definitions Fail.

In their original complaints, Plaintiffs asserted textbook failsafe classes, defining class members as those who allegedly made conditional payments "[w]here the Defendant[] failed to properly pay the medical bills . . . and have otherwise failed to reimburse" class members. Case No. 711, Doc. No. 1 at ¶52; Case No. 964, Doc No. 1 at ¶50. GEICO challenged these definitions because identifying class members would require a determination of whether GEICO failed to **properly pay or reimburse** an MAO or assignee on a case-by-case basis. That is, a liability determination would be required **before** class membership could be ascertained.

Recognizing their error, Plaintiffs omitted the failsafe language from their amended class definitions. The amended definitions, however, simply include all MAOs or assignees that paid accident related medical expenses where GEICO also had no-fault coverage or where GEICO settled a beneficiary's liability claim. While the amended definitions eliminate the liability requirement, the new definitions suffer from over breadth: the existence of no-fault coverage or an insurer's settlement of a liability claim does not render the insurer liable to the MAO.[14]

---

[13] In *IDS*, the plaintiff identified additional common questions which, like the first 18, require individualized case-by-case and beneficiary-by-beneficiary analysis. Opp. Ex E at 28-29, ¶¶ S-X.

[14] Under the amended class definitions, essentially every MAO or assignee would be included as a class member even if it could not prove all the prerequisites for establishing liability or even when GEICO did "properly pay." As held in the authority cited in GEICO's motions (*e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006); *Diacakis v. Comcast Corp.*, 2013 WL 1878921 (N.D. Cal. May 3, 2013)), such all-inclusive definitions, which necessarily include class members that are not entitled to relief for any of a dozen reasons, are defective and fail to advance the resolution of the controversy.

Numerous individual factors (reasonableness, necessity, causation, notice, etc.) are implicated before liability for payment or reimbursement can be established against GEICO. Although Plaintiffs contend that they have set forth an objectively defined class definition (Opp. at 24), in reality, the definitions are so broad that they could conceivably create classes without any member entitled to recovery from GEICO.

Although they removed the fail-safe language from their class definitions, Plaintiffs continue to allege throughout the amended complaints that GEICO "failed to **properly pay**" or "failed to **appropriately reimburse**" class members. SAC at ¶¶51, 56, 69; NFAC at ¶¶55, 61, 79. Plaintiffs use of "properly" and "appropriately" to modify GEICO's duty to pay is a tacit acknowledgement that an MAO can only prevail against GEICO if it first establishes all of the requirements set forth in the MSP statutory and regulatory scheme. Only then can it be said that GEICO failed to **properly pay** or **appropriately reimburse** an MAO. Plaintiffs, however, cannot use such language in their class definition, as doing so would mean that class membership hinges upon a full airing of each individual claim to determine the propriety of GEICO's action (or inaction). In short, it is not GEICO that "needs to make up its mind about what it wants the class definition to look like." Opp. at 24-25. To the contrary, Plaintiffs alone bear the burden of proposing class definitions that are precise, objective and presently ascertainable. No amount of discovery will enable Plaintiffs to meet this burden.

**F.     As A Matter of Law, Plaintiffs Cannot Demonstrate That Common Issues Predominate.**

In its motions, GEICO has shown that the numerous inherently individualized issues in these cases necessarily predominate over common issues should any exist. Plaintiffs' efforts to rebut that showing are unavailing. Plaintiffs argue that the predominating individual issues GEICO has identified are merely "speculative." Opp. at 27. They presume that a database of

"unpaid MSP claims for MAOs across the United States" either already exists or could be built. *Id.* Plaintiffs further suggest that this hypothetical database would moot "nearly all of GEICO's speculative concerns about individual issues." *Id.* Plaintiffs are mistaken because all of the individualized issues GEICO identified are apparent from the face of the amended complaints. As Judge Chasanow explained, "[if] it appears from the pleadings that class certification is unwarranted, the court may strike allegations pertaining to those claims and refuse to allow further discovery." *Ross-Randolph*, 2001 WL 36042162 at *9.[15]  Thus, Plaintiffs' argument— that without discovery it is impossible to know whether individual issues will predominate— should be rejected.

Plaintiffs urge the Court to ignore the numerous no-fault cases cited by GEICO where class allegations were dismissed or class certification was denied. According to Plaintiffs, the bulk of those cases turned on a determination of reasonableness and necessity of medical expenses, and GEICO waived its right to challenge that determination. Opp. at 28. Plaintiffs wrongly portray *Ross-Randolph* as focusing solely on the individualized reasonable and necessary inquiry as the basis for dismissing the class allegations. In *Ross-Randolph*, however, the court specifically discussed and relied upon the multitude of other individual issues inherent in no-fault claims, including whether the claimant had a right to PIP benefits at all, and whether the injuries were related to the accident. 2001 WL 36042162 at *6-9. In addition, Plaintiffs completely ignore the numerous individual issues, in addition to the reasonable and necessary inquiry, identified in *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 529 (D. Md. 2001) and *MSPA Claims 1, LLC v. Security Nat'l Ins.Co.,* Case No. 2015-28181-CA-13 (11th

---

[15] Judge Chasanow further explained that "[e]ven if the court were to permit discovery in this case, however, it likely would not aid Plaintiffs in proving that they satisfy Rule 23(b)(3)." *Id.*

Jud. Cir. Miami-Dade Cty. Ct., Fla. Mar. 31, 2017). Ignoring those issues does not eliminate them from the mix when considering predominance.

Plaintiffs argue that issues of reasonableness and necessity will not require an individual inquiry because once an MAO makes a payment on behalf of its enrollees, the payment is "conclusive proof" that the items and services were reasonable and necessary.[16] Opp. at 28. Yet, their "conclusive proof" argument is directly contradicted by the Eleventh Circuit's *MSP Recovery II* holding that an MAO must **plead and prove** that the defendant's insurance contract actually renders it responsible for primary payment of the subject expenses.[17] They also ignore other federal precedent that mere payment by Medicare does not oblige a primary insurer to pay beyond what its policy or state law requires (*e.g.,* unreasonable, unnecessary and unrelated medical expenses).[18]

Plaintiffs cite *Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001), *abrogated by Universal Health Servs., Inc. v. United States*, __ U.S. __, 136 S. Ct. 1989 (2016) in support of their claim that the reasonable and necessary inquiry is a nonissue. However, *Mikes* merely echoes the general requirement set forth in 42 U.S.C. §1395y(a)(1)(A) that Medicare may only issue payment for medical services that are reasonable and necessary. Neither *Mikes* nor §1395y(a)(1)(A) provides that the act of payment by Medicare (or an MAO) operates as "conclusive proof" of the reasonableness and necessity of a particular medical expense. Plaintiffs cite no authority that this determination is presumed correct or otherwise binding upon a fact finder in court.

---

[16] Plaintiffs ignore that an individual inquiry will be required to determine whether each of the thousands of individual medical transactions at issue relate to the insured's accident—an inquiry that will necessarily predominate in each case.

[17] *MSP Recovery II*, 835 F.3d at 1361.

[18] *Caldera,* 716 F.3d at 864-86; *CIGA v. Burwell*, 227 F. Supp. 3d 1101, 1113-14 (C.D. Cal. 2017); *Price,* 2017 WL 1737717 at *4.

Plaintiffs next argue that GEICO waived its ability to challenge reasonableness and necessity by not administratively appealing the MAO's right to reimbursement. Opp. at 29-31. Nothing in the statute or regulations supports Plaintiffs' legal conclusion on this point. Indeed, CMS recently enacted a regulation allowing for appeals by certain applicable plans, including no-fault insurers, in connection with reimbursement demands by Medicare where Medicare pays secondary to those plans, but **specifically declined to extend that appeal process in connection with MAO reimbursement claims**. *See* 80 Fed. Reg. 10611, 10616 (Feb. 27, 2015) (describing final rule implementation regulations, 42 C.F.R. §405.900 *et seq.*, effective April 28, 2015).[19] Moreover, the cases cited by Plaintiffs to support their argument (Opp. at 29-30) all deal with the exhaustion of administrative remedies by **Medicare beneficiaries themselves**, not primary payers.

Finally, Plaintiffs argue that the statutory and regulatory scheme established under Part C supersedes conflicting state laws because of the preemption provision in Part C of the Medicare Act. Opp. at 31. In support, Plaintiff cite *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012), but *Potts* merely held that New York's anti-subrogation statute was preempted by the Medicare Act. *Id*. at 195. The court did not rule that state laws are preempted when preemption would result in an expansion of insurance coverage where coverage did not otherwise exist. Plaintiffs ignore authority cited by GEICO indicating that MSP laws do not impose greater primary liability on insurers for covering medical expenses than they would

---

[19] In its motion to dismiss filed in Case No. 8:17-cv-00964, GEICO mistakenly stated that the five-step appeal process applied to applicable plans when an MAO seeks reimbursements for conditional payments. That statement was incorrect. Requests to revise the proposed rule to include appeal rights for applicable plans when a Medicare Part C organization pursues an MSP-based recovery from an applicable plan was *specifically rejected*: "This request is outside the scope of this rule. The SMART Act provision for applicable plan appeals amended only the MSP provisions for Medicare Part A and Part B . . . of the Act." *See* 80 Fed. Reg. at 10616.

otherwise have under their own policies.[20]  In short, Plaintiffs' conclusive proof, administrative appeals and preemption arguments are without merit.  Plaintiffs have cited nothing which negates the predominance of individualized issues.[21]

**G.     Plaintiffs' Claims Are Not Maintainable Under Rule 23(b)(2).**

Plaintiffs cite a single case - *Wilfong v. Rent-A-Ctr., Inc.*, 2001 WL 1795093 (S.D. Ill. Dec. 27, 2001) - for the proposition that courts do not always preclude class action treatment under Rule 23(b)(2) where a plaintiff also seeks money damages. Opp. at 32. While the *Wilfong* court certified the class under Rule 23(b)(2) and (b)(3), it specifically determined that the plaintiffs were seeking declaratory relief and "significant injunctive relief" regarding violations of the defendant's employment policies. *Id.* at *7. In contrast, other than passing references to injunctive relief (*see* SAC at ¶¶77, 85(c)(ii); NFAC at ¶¶86, 94(c)(iii)), the predominant relief Plaintiffs seek is undoubtedly monetary. As discussed in GEICO's motions, a class may only be certified under Rule 23(b)(2) if the ***predominant*** relief sought is injunctive or declaratory. Because Plaintiffs claim for injunctive relief is ancillary to the money damages they seek, class treatment under Rule 23(b)(2) is legally untenable.

**H.     Plaintiffs' Claims Are Not Maintainable Under Rule 23(c)(4).**

As argued in GEICO's motions, the five "issues" Plaintiffs seek to certify in each case[22] are not common issues and no class-wide, across the board determination of those issues is possible. Rather, addressing each issue would require individualized review. In addition, in

---

[20] *Caldera*, 716 F. 3d at 865 ("[A]n MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract."); *Price,* 2017 WL 1737717 at *4; *Burwell*, 227 F. Supp. 3d at 1113-14 (C.D. Cal. 2017).

[21] Noticeably absent from Plaintiffs' amended complaints are allegations that handling these cases as Rule 23(b)(3) classes would be superior or manageable.  Nor are these issues addressed in their opposition. Plaintiffs' silence on these critical issues speaks volumes as to the viability of these controversies to proceed as Rule 23(b)(3) class actions.

[22] *See* NFAC at ¶96 (a-e); SAC at ¶80(a-e).

*Gunnells v. Healthplan Servs., Inc.* 348 F.3d 417, 441 (4th Cir. 2003), the Fourth Circuit stated that "subsection 23(c)(4) should be used to separate 'one or more' claims that are appropriate for class treatment, provided that . . . the predominance and all other necessary requirements of subsections (a) and (b) of Rule 23 are met." Plaintiffs ignore the individual characteristics of the five proposed issues and make no attempt to explain how these issues could ever satisfy predominance. The proposed issues classes, as framed, cannot satisfy the standards for prosecuting those issues under Rule 23(c)(4) and, thus, should be dismissed.

For all the foregoing reasons and those stated in GEICO's motions, Defendant Government Employees Insurance Company respectfully requests that Plaintiffs' First Amended Complaints and Class Allegations be dismissed with prejudice.

Respectfully submitted,

<table>
<tr>
<td>

*/s/ George M. Church*

George M. Church (Fed. Bar No. 00133)
Laura A. Cellucci (Fed. Bar No. 25119)
Joshua F. Kahn (Fed. Bar. No. 18238)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
gchurch@milesstockbridge.com
lcellucci@milesstockbridge.com
jkahn@milesstockridge.com

</td>
<td>

*/s/ Peter D. Weinstein*

Peter D. Weinstein (Fed. Bar No. 913502)
COLE, SCOTT & KISSANE, P.A.
Lakeside Office Center, Suite 500
600 N. Pine Island Road
Plantation, Fla. 33324
Tel: (954) 343-3951
peter.weinstein@csklegal.com
Admitted *Pro Hac Vice*

</td>
</tr>
</table>

*Attorneys for Defendant*
*Government Employees Insurance Company*

*4851-6498-6958, v. 2*
