## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MAO-MSO RECOVERY II, LLC,
SERIES PMPI, *et al.*,

      Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, *et al.*,

      Defendants.

Civil Action No. TDC-17-0711

---

MAO-MSO RECOVERY II LLC,
SERIES PMPI, *et al.*,

      Plaintiffs,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, *et al.*,

      Defendants.

Civil Action No. TDC-17-0964

## MEMORANDUM OPINION

In these related cases, Plaintiffs have brought putative class action lawsuits against Defendant Government Employees Insurance Company ("GEICO") and related entities in which they assert violations of the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(3)(A) (2018), and breach of contract. Defendants have filed a "Combined Dispositive Motion" through which they seek dismissal of both cases for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, summary judgment pursuant to Federal Rule of Civil Procedure 56. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D.

Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED, and the Court will certify questions on one issue to the Supreme Court of Maryland.

## BACKGROUND

### I.     Statutory Framework

Medicare is a federal health insurance program for qualified individuals who are age 65 or older and for persons with certain disabilities. *See* 42 U.S.C. §§ 1395–1395*lll*. When first enacted, Medicare consisted of a fee-for-service program operating as the primary payer for nearly all Medicare beneficiaries. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, §§ 101-121, 79 Stat. 286, 290-343 (1965) (enacted as Title XVIII of the Social Security Act). The program has since been expanded, including, as relevant here, by means of the Medicare Secondary Payer provisions ("the MSP Provisions"), 42 U.S.C. § 1395y, and the introduction of Medicare Part C, also known as the Medicare Advantage Program, 42 U.S.C. §§ 1395w-21–1395w-29.

The MSP Provisions, which seek to protect the long-term financial standing of Medicare, provides that Medicare assumes the role of a secondary payer whenever a beneficiary has coverage for medical expenses from an insurer other than Medicare. 42 U.S.C. § 1395y(b)(2)(A); Medicare Secondary Payer Amendments, 71 Fed. Reg. 9,466, 9,467 (interim final rule proposed Feb. 24, 2006) (to be codified at 42 C.F.R. pts. 411, 489). In such instances of dual coverage, the non-Medicare insurer acts as the primary payer, and only if the cost of care exceeds the payment available under the primary policy may Medicare then pay "for the remainder of [the] charge," subject to certain limitations. 42 U.S.C. § 1395y(b)(4). However, in circumstances in which the primary payer "has not made or cannot reasonably be expected to make payment . . . promptly," Medicare may make a conditional payment. *Id*. § 1395y(b)(2)(B)(i). Conditional payments are subject to reimbursement from the primary payer "if it is demonstrated that such primary plan has

2

or had a responsibility to make payment with respect to such item or service." *Id.* § 1395y(b)(2)(B)(ii). This responsibility can be demonstrated through various means, "including but not limited to, a settlement, award, or contractual obligation." 42 C.F.R. § 411.22(b) (2023). If the primary payer fails to provide reimbursement, the United States government ("the Government"), upon receipt of notice that payment is owed, may bring a civil enforcement action to recover the unpaid amount, as well as double damages. 42 U.S.C. § 1395y(b)(2)(B)(iii). As an alternative enforcement mechanism, the statute authorizes a private cause of action to recover the unpaid amount that also permits the recovery of double damages. *Id.* § 1395y(b)(3)(A).

Medicare Part C authorizes private insurance plan options for Medicare beneficiaries through a program first established in 1997 as "Medicare+Choice" and replaced in 2003 by "Medicare Advantage." 42 U.S.C. §§ 1395w-21–1395w-29; *see also* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173 § 201, 117 Stat. 2066, 2176 ("Medicare Modernization Act of 2003") (stating that under Medicare Part C, "any reference to 'Medicare+Choice' is deemed a reference to 'Medicare Advantage'"). Under Medicare Advantage ("MA"), private insurers are paid, for each Medicare beneficiary who chooses to enroll in the program, a fixed monthly amount in exchange for providing Medicare-covered insurance benefits to that beneficiary. 42 U.S.C. §§ 1395w-21(a)(1)(B), 1395w-21(i)(1), 1395w-23(a)(1)(A). Private insurance companies and other entities that contract with Medicare for this purpose are known as Medicare Advantage organizations ("MAOs"). *See* 42 C.F.R. § 422.2. MAOs are required to abide by the coverage determinations set by the United States Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS"), and to provide the required insurance benefits to beneficiaries. *See* 42 U.S.C. §§ 1395w-22(a)(1)(A), 1395w-25(b). Like Medicare, MAOs are considered secondary payers and may, at

3

their discretion, charge primary payers under circumstances in which Medicare would be permitted to do so.  *Id*. § 1395w-22(a)(4).  Pursuant to federal regulation, MAOs "exercise the same rights to recover from a primary plan, entity, or individual" that the Government, through the Secretary of Health and Human Services ("the Secretary"), "exercises under the MSP regulations [relating to Medicare]."  42 C.F.R. § 422.108(f).

## II.    The Claims

Plaintiffs in both cases (collectively, "Plaintiffs") generally allege that Defendants in both cases, consisting of GEICO and related entities (collectively, "the GEICO Defendants"), are primary payer automobile insurance companies who were obligated under insurance policies they issued to pay certain medical expenses of Medicare Advantage enrollees but failed to reimburse the MAOs or other secondary payers which paid those expenses.  Plaintiffs are limited liability companies that were established for the purpose of engaging in a business enterprise under which they seek to recover, through litigation or otherwise, such unpaid reimbursements for their clients, which consist of MAOs and other contractors that are secondary payers ("Assignors").  As a method of recovering such funds, Plaintiffs effectuated "Claims Cost Recovery Agreements," under which such secondary payers assign to Plaintiffs their rights to seek and receive reimbursement from the primary payers.  *See e.g.* Joint Record ("J.R.") 251, ECF Nos. 209, 211, 212 (No. TDC-17-0711), ECF Nos. 192, 194, 195 (No. TDC-17-0964).  In the present cases, Plaintiffs have received assignments of the rights to payment from 89 Assignors.  With some exceptions, these agreements include identical or substantially similar provisions establishing a contingent compensation arrangement under which the client receives a percentage of any recovery obtained from claims pursued by Plaintiffs, and Plaintiffs keep the remainder of the proceeds.  Based on these assignments, Plaintiffs have filed the present cases, consisting of two

4

putative class actions against the GEICO Defendants under the MSP Provisions and the relevant implementing regulations.

The first action, No. TDC-17-0711 ("the No-Fault Action"), has been filed by Plaintiffs MAO-MSO Recovery II, LLC, Series PMPI; MSPA Claims 1, LLC; MSP Recovery Claims, Series LLC; and MSP Recovery Claims Series 44, LLC (collectively, "the No-Fault Action Plaintiffs") against Defendants GEICO, GEICO Casualty Company, GEICO County Mutual Insurance Company, GEICO General Insurance Company, GEICO Choice Insurance Company, GEICO Indemnity Company, GEICO Secure Insurance Company, and GEICO Advantage Insurance Company (collectively, "the No-Fault Action Defendants"). In this case, the No-Fault Action Plaintiffs assert a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) and a direct right of recovery for breach of contract under 42 C.F.R. § 411.24(e). The No-Fault Action Plaintiffs allege that their Assignors paid the medical expenses, or otherwise incurred losses related to those expenses, of MA enrollees who had "no fault" GEICO automobile insurance policies, which the No-Fault Action Plaintiffs define as policies that covered medical expenses arising from the operation of a motor vehicle, regardless of who was at fault. No-Fault Third Am. Compl. ¶ 3 n.1, ECF No. 135 (No. TDC-17-0711). For purposes of "illustration alone," the No-Fault Action Plaintiffs have provided specific allegations relating to a Florida resident and MA enrollee, M.C., who was involved in a motor vehicle accident on April 25, 2014. *Id.* ¶ 66. At the time of the accident, M.C. had a no-fault insurance policy which required one of the No-Fault Action Defendants to pay her medical expenses up to $10,000. Despite that defendant's obligation as a primary payer, the No-Fault Action Plaintiffs claim that the defendant failed to pay M.C.'s medical expenses or reimburse the MAO which provided Medicare coverage to M.C. and made conditional payments on her medical expenses.

5

The second action, No. TDC-17-0964 ("the Third-Party Action"), has been filed by Plaintiffs MAO-MSO Recovery II LLC, Series PMPI; MSPA Claims 1, LLC; MSP Recovery Claims, Series LLC; and MSP Recovery Claims Series 44, LLC (collectively, "the Third-Party Action Plaintiffs") against Defendants GEICO, GEICO Casualty Company, GEICO County Mutual Insurance Company, GEICO General Insurance Company, GEICO Choice Insurance Company, GEICO Indemnity Company, GEICO Secure Insurance Company, GEICO Advantage Insurance Company, and Colonial County Mutual (collectively, "the Third-Party Action Defendants"). In this case, the Third-Party Action Plaintiffs assert a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) in which they allege that their Assignors paid the medical expenses, or otherwise incurred losses related to those expenses, of MA enrollees who were injured in motor vehicle accidents by drivers with automobile insurance policies issued by the Third-Party Action Defendants and incurred medical expenses arising from the accidents. The Third-Party Action Plaintiffs assert that the Third-Party Action Defendants entered into settlement agreements with these MA enrollees, thus demonstrating that the Third-Party Action Defendants were the primary payers for the medical expenses under the MSP Provisions. The Third-Party Action Plaintiffs further allege, however, that their Assignors never received reimbursement for the payments they made. For illustrative purposes, the Third-Party Action Plaintiffs provided specific allegations relating to V.G., an Ohio resident and MA enrollee, who was injured in a motor vehicle accident by a driver who was a GEICO policyholder insured by one of the Third-Party Action Defendants. The Third-Party Action Plaintiffs state that after V.G. filed a claim against the GEICO policyholder, the Third-Party Action Defendant that issued the policy entered into a settlement agreement with V.G. but never repaid the MAO that had previously paid V.G.'s medical expenses.

6

### III.    Procedural History

The original Complaints were filed in the No-Fault Action on March 15, 2017 and in the and Third-Party Action on April 6, 2017. After Amended Complaints were filed in both cases, the GEICO Defendants filed a consolidated Motion to Dismiss in both actions in which they argued, in part, that Plaintiffs lacked standing and did not sufficiently plead factual allegations to support their claims. On February 21, 2018, the Court (Grimm, J.) denied the motion but stated that "insofar as GEICO's motions allege that Plaintiffs lack standing, the denials are without prejudice to renewal at the close of discovery, should the record support the renewal." *MAO-MSO Recovery II, LLC v. Gov't Emps. Ins. Co.*, No. PWG-17-0711, 2018 WL 999920, at \*14 (D. Md. Feb. 21, 2018) ("*GEICO I*"). As part of this decision, the Court ordered limited discovery relating to the assignments, the underlying facts supporting the elements of the reimbursement claims, and class certification.

On April 19, 2018, Plaintiffs filed the Second Amended Complaints in both actions. On February 15, 2019, the Court (Grimm, J.) appointed a Special Master to oversee discovery issues pursuant to Federal Rule of Civil Procedure 53(a)(1)(A) and (C). Under the supervision of the Special Master, the parties conducted a data matching process through which they employed expert witnesses and algorithms to identify in the GEICO Defendants' records specific claimants who made accident-related claims and for whom there was data in the records of the Assignors showing payment for medical expenses associated with those same claims. The data matching process resulted in a list of potential matches from which certain sample claims were selected for purposes of discovery. On March 13, 2023, Plaintiffs filed Third Amended Complaints in both cases, which are now the operative complaints. On January 22, 2024, the GEICO Defendants filed the pending Combined Dispositive Motion.

## DISCUSSION

In the Motion, the GEICO Defendants seek dismissal on the grounds that the Plaintiffs lack standing. The GEICO Defendants also seek summary judgment on the grounds that: (1) Plaintiffs do not have the right to pursue a civil action under the MSP Provisions; (2) the assignments of rights to Plaintiffs are void as against Maryland public policy; and (3) many of the claims are time-barred.

### I.    Standing

In seeking dismissal for lack of standing, the GEICO Defendants argue that standing is lacking because: (1) the sole defendant named in the original Complaint, GEICO, did not insure the individuals referenced in the illustrative claims involving M.C. and V.G.; (2) the claim relating to M.C. fails because there was no injury in fact, and Plaintiffs failed to satisfy state law pre-conditions to suit; and (3) the claim relating to V.G. fails because no plaintiff received a valid assignment of rights relating to that claim. In opposing dismissal, Plaintiffs argue that: (1) the Court has already determined that standing exists; (2) the Motion does not consider the entirety of the evidentiary record; and (3) the evidence relating to the two illustrative claims demonstrates that standing exists.

#### A.    Legal Standard

Article III of the Constitution limits the federal judicial power to resolving "Cases" or "Controversies." U.S. Const. art. III § 2; *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). Accordingly, whether a plaintiff has identified an actual case or controversy, and thus has standing to advance that case, is a question of subject matter jurisdiction. *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to establish subject

8

matter jurisdiction.    The plaintiff has the burden to show that subject matter jurisdiction exists.  *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).    When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192.   The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

The "irreducible constitutional minimum" requirements to establish standing consist of three elements:  (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be fairly traceable to the actions of the defendant; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  An injury in fact must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  Standing must be established for each claim and form of relief sought.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). When there are multiple plaintiffs, the Court need only determine that there is at least one plaintiff

9

with standing for a particular claim in order to consider the claim. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

**B.    Named Defendant**

On the issue of standing, the GEICO Defendants first argue that the cases should be dismissed because the original Complaint in each action named only GEICO as a defendant and that, for the claims of M.C. and V.G., a GEICO affiliate was the actual insuring entity. According to the GEICO Defendants, M.C.'s insurer was GEICO General Insurance Company, and the relevant insurer for V.G.'s claim was GEICO Casualty Company. Although these affiliated entities are now defendants, the GEICO Defendants argue that their subsequent joinder does not establish standing because standing "did not exist" at the time that these cases were commenced. Mot. at 9, 14, ECF Nos. 196-1 (No. TDC-17-0711), 180-1 (No. TDC-17-0964).

The GEICO Defendants' argument appears to be premised on the general statements that "jurisdiction is to be assessed under the facts existing when the complaint is filed" and that "standing is to be determined as of the commencement of the suit." *See Lujan*, 504 U.S. at 570-71 nn.4-5 (opinion of Justice Scalia). From these statements, the GEICO Defendants seek to construct a rule that if an original complaint names the wrong entity as a defendant, the case must be dismissed for lack of standing, and no subsequent amendment to name the correct defendant can cure that original defect.

The GEICO Defendants' argument fails. These quotations from footnotes in a portion of *Lujan* that was not the majority opinion cannot be fairly construed as establishing such a rule. Rather, the majority opinion in *Lujan* makes clear that standing is to be considered "at the successive stages of the litigation," and that "the manner and degree of evidence required" differs depending on the stage. *Lujan*, 504 U.S. at 561. Indeed, since *Lujan*, the United States Supreme

10

Court has held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007); *see Daniels v. Arcade, L.P.*, 477 F. App'x 125, 130-31 (4th Cir. 2012) (citing *Rockwell*) (evaluating standing based on the amended complaint, not the original complaint). In so holding, the Court noted that this principle does not conflict with "[t]he rule that subject-matter jurisdiction depends on the state of things at the time of the action brought," because "[t]he state of things and the originally alleged state of things are not synonymous," and the original allegations may be "replaced by others that establish jurisdiction." *Rockwell Int'l Corp.*, 549 U.S. at 473 (citation omitted). The fact that parties are changed or added does not create an Article III standing problem when the amended complaint names the correct defendant. *See Chancery Clerk of Chickasaw Cnty. v. Wallace*, 646 F.2d 151, 160 (5th Cir. 1981) (stating that "Plaintiffs' misidentification of the appropriate defendants may be corrected by amendment to the pleadings substituting as defendants those state officials with the requisite 'personal stake' in defending the state's interests" without causing "an Article III problem" or "any unfairness to the proper parties defendant"); *cf. Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978) (stating that summary judgment was inappropriate because, although the plaintiff's "claim for damages is against [a third party] and not the defendants he sued," the third party "could have been made a defendant" with leave of the court).

Here, the operative complaints are the Third Amended Complaints filed on March 13, 2023, which list additional GEICO affiliate companies as defendants, including GEICO General Insurance Company and GEICO Casualty Company, which the GEICO Defendants acknowledge are the entities relevant to the claims involving M.C. and V.G. The naming of the proper defendants is sufficient to establish standing at the present time. *See Rockwell Int'l*, 549 U.S. at

11

473. In any event, there is no dispute that even if not stated in the original Complaint, the operative facts at issue—that these entities were the insurers relevant to the M.C. and V.G. claims—were true as of the date of the filing of the original Complaints. *See id.* (noting that "[t]he state of things and the originally alleged state of things are not synonymous"). The Court therefore rejects the GEICO Defendants' claim that these cases must be dismissed for lack of standing because the original Complaints identified the wrong defendants.

Finally, the Court notes that the GEICO Defendants' argument is premised on the assumption that Plaintiffs may establish standing only based on facts relating to the M.C. and V.G. claims, the only two specific claims described in the original Complaints. For the reasons discussed below, the Court does not agree with this premise. *See infra* part I.C.

###     C.     The M.C. and V.G. Claims

The GEICO Defendants also argue that there is no standing because the record demonstrates that neither M.C. nor V.G. have an actionable claim. According to the GEICO Defendants, M.C. suffered no injury in fact because her GEICO insurance benefits were exhausted prior to the commencement of the No-Fault Action, and she failed to satisfy certain state law pre-conditions to suit. As for V.G., the GEICO Defendants assert that the relevant Assignor had not actually assigned its rights to any Plaintiff prior to the initiation of the Third-Party Action, and that Plaintiffs cannot now cure this problem.

In advancing this argument, the GEICO Defendants do not assert a facial challenge to standing, under which the claim is that the allegations in the complaint fail to allege facts upon which standing could be based. *See Kerns*, 585 F.3d at 192 (defining a facial challenge). Indeed, the Court (Grimm, J.) previously denied such a facial challenge in the earlier Motion to Dismiss. *GEICO I*, 2018 WL 999920, at *14. Rather, this argument presents a factual challenge to standing,

12

consisting of a claim that "the jurisdictional allegations of the complaint [are] not true," under which the court considers the evidentiary record and determines "if there are facts to support" those allegations. *Kerns,* 585 F.3d at 192.

In arguing that there is no standing because there are insufficient facts to support the two illustrative claims, the GEICO Defendants rely on two unpublished cases, *MAO-MSO Recovery II, LLC v. Mercury General*, Nos. 17-2525-AB, 17-2557-AB, 2021 WL 3615905 (C.D. Cal. Aug. 12, 2021) ("*Mercury I*"), and *MAO-MSO Recovery II, LLC v. Mercury General*, Nos. 21-56395, 21-56396, 2023 WL 1793469 (9th Cir. Feb. 7, 2023) ("*Mercury II*"), which affirmed *Mercury I.* In *Mercury I*, which related to class action suits brought by three of the plaintiffs in the present cases and asserted similar claims to those alleged here, the district court denied the defendants' facial challenge to standing and permitted data matching discovery, but then concluded that the facts did not establish standing relating to the two illustrative claims specifically referenced in the complaint and dismissed both cases without leave to amend. *Mercury I,* 2021 WL 3615905, at *4-6. In so ruling, the district court declined to consider standing as to other specific claims because they were not the subject of specific allegations in the complaint. *Id.* at *5. On appeal, the court affirmed both the dismissal and the denial of leave to amend. *Mercury II,* 2023 WL 1793469, at *2-3.

Here, however, in denying the earlier Motion to Dismiss and finding sufficient allegations to establish standing, the Court (Grimm, J.) considered all of the allegations and did not rely specifically on the allegations relating to M.C. and V.G. Rather, the Court also relied on broader allegations that Plaintiffs had reviewed claims databases and found evidence of overlapping coverage and payments made by an Assignor that were not reimbursed by a GEICO Defendant. *See, e.g.*, *GEICO I,* 2018 WL 999920, at *5-6. "On a motion to dismiss we presume that general

allegations embrace those specific facts that are necessary to support the claim.'" *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561). Notably, the M.C. and V.G. claims were not those of named plaintiffs but were explicitly identified as illustrative only. Where the Court previously found that the totality of the allegations and the inferences to be drawn from them were sufficient to establish standing at the pleading stage, the Court is not presently limited to the facts relating to the M.C. and V.G. claims and may consider the full evidentiary record to determine whether there are sufficient facts to establish standing.

Upon such review, the Court finds that, regardless of whether the GEICO Defendants are correct that the evidentiary record does not support the individual claims of M.C. and V.G., the full record supports a finding of standing. Specifically, Plaintiffs have submitted a declaration from Dr. Constantijn Panis, a statistician who reviewed the output of the data matching process, who asserts that "the matching algorithm correctly linked Plaintiffs' alleged unreimbursed MA members' medical expenses to automobile accident claims," and that a subset of that output reveals at least five claims against each of the Third-Party Action Defendants and at least four claims against each of the No-Fault Action Defendants. J.R. 2407-2413. Dr. Panis also provides factual details about 22 specific claims beyond those of M.C. and V.G. as reflected in side-by-side charts showing information from the GEICO Defendant's file and from the Assignor's file for each such claim, including facts demonstrating that there were certain medical expenses paid by the Assignor for which the right to reimbursement was assigned to a Plaintiff.

For example, Dr. Panis's charts reference claimant G.S., for whom the GEICO Defendant and the Assignor each recorded an identical name, date of birth, social security number, diagnosis code, and description of G.S.'s injury. The GEICO Defendant's records list a payment of $313.71

14

in relation to an accident involving G.S. that occurred on August 5, 2016, and the Assignor's records show that $923.00 was paid for a claim that was submitted on August 9, 2016. Moreover, Dr. Panis's chart identifies the Assignor for this claim, the Plaintiff that received the assignment, and the date of the assignment. Within the subset of claimants about whom Dr. Panis provides specific information, there is at least one claimant for each defendant in each action. Finally, Plaintiffs have submitted a declaration with a detailed appendix and supporting documentation to establish the chain of assignments between the Assignors and the various Plaintiffs.

Significantly, while the GEICO Defendants assert that there are "systemic standing problems" relating to such data matching exemplars, they do not provide facts supporting this allegation, and they do not provide any basis to contest the specific facts underlying the G.S. claim or any other claim beyond those of M.C. and V.G. Mot. at 17 n.4. They therefore no provide persuasive basis to refute the Court's finding that the evidentiary record establishes standing as to claims other than those of M.C. and V.G.

Finally, the Court notes that even if it were proper to limit Plaintiffs' ability to demonstrate standing to those facts relating to the two specific claims described in the Third Amended Complaint as illustrative, and as a result standing were deemed to be lacking, it would grant leave to amend the operative complaints to add allegations relating to the claims uncovered by the data matching process. Generally, a court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court properly denies such leave "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). The record shows that adding allegations regarding such claims would not be futile, and where Plaintiffs reasonably relied on the prior ruling on standing that was not premised only on

15

the factual allegations relating to M.C. and V.G. claims, there is no basis upon which to find bad faith. Where the data matching process was necessary to uncover the specifics of additional claims and specifically authorized by the Court, the parties were aware that it could result in additional claims such that there would be no prejudice or unfairness resulting from any such amendment at this point.

In summary, the Court finds that the record provides sufficient evidence to establish standing. The Motion will therefore be denied as to that issue.

## II.      Summary Judgment

In their Motion for Summary Judgment, the GEICO Defendants argue that: (1) Plaintiffs lack the legal authority under the MSP Provisions to assert the causes of action in both Counts I and II; (2) Plaintiffs' assignments are void as against Maryland public policy; and (3) many of the claims are time-barred. In opposing summary judgment, Plaintiffs assert that: (1) their Assignors may properly bring the causes of action in Counts I and II under the MSP Provisions; (2) the assignments are valid and not barred by public policy; and (3) the GEICO Defendants' statute of limitations argument is premature.

### A.      Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*,

16

346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

### B.    Count I

The GEICO Defendants argue that Count I in both actions, which asserts a private right cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) based on the GEICO Defendants' failure to reimburse medical expenses paid by the Assignors, fails as a matter of law because, in their view, the statutory provision does not authorize MAOs or their subcontractors to bring a private cause of action.

### 1.    MAOs

The GEICO Defendants first contend that the private cause of action in § 1395y(b)(3)(A) is not available to secondary-payer MAOs. This provision states that:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). Generally, paragraph (1) of this subsection requires health insurance plans to provide coverage to individuals covered by their plans—such as because they are employees of a company which offers coverage through a group health plan—even though they are also eligible for Medicare. *Id.* § 1395y(b)(1). Paragraph (2)(A) establishes the general requirement that Medicare act as a secondary payer and not make payments for medical expenses covered by primary payers. *Id.* § 1395y(b)(2)(A).

Although the United States Court of Appeals for the Fourth Circuit has not yet addressed this issue, three other circuits have held that private entities such as MAOs may assert a cause of

17

action under this provision, which is facially broad and contains no explicit limitations on the type of actor bringing suit. *See Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 73, 75 (2d Cir. 2022) ("On its face, this provision is broad and open-ended. It provides no limitation on which private actors may sue a primary plan that fails to provide reimbursement."); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016) ("We see no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations."); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 359 (3d Cir. 2012) (stating that the "provision is broad and unambiguous, placing no limitations upon which private (i.e., nongovernmental) actors can bring suit"). No circuit court has ruled to the contrary. This Court agrees that the plain language of this provision establishes a private right of action and does not in any way bar MAOs or their assignees from filing such an action.

In nevertheless arguing that MAOs are not included in this provision, the GEICO Defendants focus on the reference to paragraph (2)(B) contained within paragraph (2)(A). Paragraph (2)(A) states that:

> Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—
>
> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

42 U.S.C. § 1395y(b)(2)(A). In turn, paragraph (2)(B), which is entitled "Conditional Payment" and allows for Medicare to make conditional payments to medical care providers and then to seek reimbursement from the primary payers, states in relevant part: "The Secretary may make payment under this subchapter if a primary plan described in subparagraph (A)(ii) has not made or cannot

reasonably be expected to make payment with respect to such item or service promptly," and "Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund." *Id*. § 1395y(b)(2)(B). Relying on the dissenting opinions in *Humana* and other cases, the GEICO Defendants argue that the references in paragraph (2)(B) to "the Secretary" and "the appropriate Trust Fund" demonstrate that paragraph (2)(B) refers only to conditional payments made by the Secretary of Health and Human Services, such that the reference in § 1395y(b)(3)(A) to a private right of action for the failure "to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)" refers only to payments that the Secretary would otherwise be responsible for making, namely payments by the government-administered Medicare program, not payments owed to MAOs which operate under Medicare Part C.

This argument has already been addressed and rejected by the circuit courts which found that MAOs have a private right of action under this statute. Upon review, this Court agrees with their collective analysis. First, as noted in *Aetna*, the Court agrees that "[a]ny limitation to the private cause of action must come from Paragraphs (1) and (2)(A), the paragraphs referenced by the private cause of action provision, and not (2)(B)." *Aetna*, 52 F.4th at 73; *see Humana*, 832 F.3d at 1237 (concluding that "even if paragraph (2)(B) does not apply to MAOs, neither paragraph (2)(A) nor paragraph (3)(A) contain the limiting language found in paragraph (2)(B)"). Second, the Court finds that paragraph (2)(A) relates to payments made by MAOs. The secondary payer provision specifically serves to restrict Medicare from making payments "under this subchapter" for which primary payers are responsible and thus "contemplates primary plans fulfilling their payment obligation." *Humana*, 832 F.3d at 1237. By describing such payments as "[p]ayment[s] under this subchapter," *id.* § 1395y(b)(2)(A), paragraph (2)(A) necessarily refers to the Medicare

19

Act as a whole, which includes payments pursuant to Part C. *See In re Avandia Mktg.*, 685 F.3d at 359-60 (stating that there is language in "other places in the Medicare Act where Congress intentionally limited the applicability of a provision to payments made under particular Parts of the Medicare Act" that conversely "makes clear that 'subchapter' refers to the Medicare Act as a whole" ); *Aetna*, 52 F.4th at 73 (stating that "'this subchapter' refers to the subchapter in which Paragraph (2)(A) is found – namely . . . the subchapter comprising the entirety of the Medicare Act"). This conclusion is reinforced by Part C itself, which confirms that MAOs are secondary payers and specifically in those circumstances "in which payment under this subchapter are made secondary pursuant to section 1395y(b)(2)." 42 U.S.C. § 1395w-22(a)(4). Thus, as noted in *Humana*, "a primary plan that fails to make primary payment has failed to do so 'in accordance with paragraphs (1) and (2)(A),' regardless of whether the secondary payer is the Secretary or an MAO." *Humana*, 832 F.3d at 1237-38.

Finally, in light of these conclusions, the Court agrees that the reference in paragraph (2)(A) to paragraph (2)(B) "does not alter [the] analysis." *Humana*, 832 F.3d at 1237. All that provision does is make an exception to the general bar on Medicare making payments for medical services for which it is the secondary payer that authorizes the Secretary to make conditional advanced payments when the primary payer fails to do so and in no way relieves primary payers from the obligation to pay. Indeed, the fact that this exception appears to be limited only to conditional payments by the Secretary demonstrates that it cannot be construed as barring a private cause of action by an MAO. Accordingly, the Court finds that MAOs may invoke the private right of action under § 1395y(b)(3)A) because there is "no basis to exclude MAOs from [this] broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations." *Id*. at 1238.

20

## 2.     First Tier and Downstream Entities

The GEICO Defendants next argue that even if MAOs have a private cause of action, the Court should find that payments made by non-MAO Assignors, consisting of "first tier" or "downstream" entities, are not within the scope of the statutory private right of action. Mot. at 25. As defined by CMS regulations, a "first tier entity" is "any party that enters into a written arrangement, acceptable to CMS, with an [MAO] to provide administrative services or health care services for a Medicare eligible individual under the MA program," and a "downstream entity" is "any party that enters into a written arrangement, acceptable to CMS, with persons or entities involved with the MA benefit, below the level of the arrangement between an [MAO] and a first tier entity." 42 C.F.R. § 422.2.   Such entities can incur financial costs associated with making conditional payments or reimbursing MAOs for their conditional payments. *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1314 (11th Cir. 2020). The GEICO Defendants assert that any conditional payments made by such entities are made pursuant to contracts with MAOs, not with CMS, so these entities have no statutory remedy to seek recovery for those payments. The GEICO Defendants cite no authority for this argument other than a district court case that was later abrogated by the United States Court of Appeals for the Eleventh Circuit. Mot. at 25 (citing *MSPA Claims I, LLC v. Infinity Prop. & Cas. Grp.*, 374 F. Supp. 3d 1154, 1163 (N.D. Ala. 2019), *abrogated by MSP Recovery Claims, v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1315 (11th Cir. 2020)).

On this issue, the Court finds instructive *MSP Recovery Claims, Series LLC v. ACE American Insurance Company*, 974 F.3d 1305 (11th Cir. 2020) ("*ACE*"), which the parties identify as the sole circuit court case to have addressed this question. In *ACE*, the Eleventh Circuit decided that the private cause of action provision in § 1395y(b)(3)(A), "which has been interpreted to apply

21

to plaintiffs with a connection to a conditional payment, is easily read to cover downstream actors who have borne the cost of a conditional payment." *Id.* at 1314. The court rejected the argument that these entities lack a private right of action because they make conditional payments pursuant to contractual obligations rather than the statute, noting that "when a downstream actor bears the cost of an MAO's conditional payments, that downstream actor suffers an injury squarely within the ambit of the Medicare Secondary Payer Act." *Id.* at 1316. In so ruling, the court relied in part on the breadth of the private right of action provision and the fact that courts have interpreted it as allowing plaintiffs with a connection to Medicare other than MAOs, such as Medicare beneficiaries and medical care providers, to advance private causes of action. *See ACE*, 974 F.3d at 1313; *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 788 (6th Cir. 2014) (holding that a healthcare provider could advance a private cause of action under the MSP Provisions against an automobile insurer that denied coverage for reasons other than Medicare eligibility).

The Court agrees with the reasoning of *ACE* and finds that the private right of action of § 1395y(b)(3)(A) is available to first tier and downstream entities. As already discussed, and as recognized by the case law cited above, the plain language of the provision does not restrict the private right of action to any particular category of individuals or plaintiffs. *See supra* part II.B.1. Where first tier and downstream entities are linked to the Medicare program through the MAOs, and they may incur financial injury as a result of a "primary plan" failing to "provide for primary payment (or appropriate reimbursement)," 42 U.S.C. § 1395y(b)(3)(A), the Court finds that claims relating to payments made by first-tier and downstream entities may be brought under § 1395y(b)(3)(A). *See ACE*, 974 F.3d at 1316.

22

###### C.      Count II

The GEICO Defendants also argue that Count II in the No-Fault Action, which alleges a direct right of recovery for breach of contract pursuant to 42 C.F.R. § 411.24(e), fails as a matter of law.  In Count II, Plaintiffs allege that under this regulation, "MAOs are subrogated the right to recover primary payment from the Defendants for the Defendants' breach of contract with their insured, pursuant to the MSP provisions."  No-Fault Third Am. Compl. ¶ 90.  The theory appears to be that they have the right to sue the No-Fault Action Defendants for breach of contract, because based on the relevant insurance policies, the policyholders have a breach of contract claim against the No-Fault Action Defendants for failing to pay for their medical expenses pursuant to the no-fault provisions, and the Assignors have subrogation rights to assert the contractual rights of those policyholders that they have assigned to the No-Fault Plaintiffs.

The cited regulatory provision provides only that "CMS has a direct right of action to recover from any primary payer" and makes no reference to subrogation or breach of contract.  42 C.F.R. § 411.24(e).  In Count II, however, Plaintiffs also reference 42 C.F.R. § 411.26, entitled "Subrogation," which states that "[w]ith respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer."  42 C.F.R. § 411.26.

This language in the subrogation regulation does not, on its face, demonstrate that it is applicable to MAOs.  It states that "CMS" specifically has subrogation rights and identifies no other entity, in general or specific terms, that is granted such rights.  42 U.S.C. § 411.26.  The primary statute upon which this regulation is based also refers only to the Government, specifically, "[t]he United States," as receiving subrogation rights:

> The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an

individual or any other entity to payment with respect to such item or service under a primary plan.

42 U.S.C. § 1395y(b)(2)(B)(iv).

Plaintiffs, however, cite a separate regulation which states that:

Consistent with § 422.402 concerning the Federal preemption of State law, the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer. The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter.

42 C.F.R. § 422.108(f). Subparts B through D corresponds to 42 C.F.R. §§ 411.20 to 411.54. Based on the language of this provision, the rights that an MAO may exercise to recover from a primary plan include CMS's subrogation right contained in 42 C.F.R. § 411.26.

The GEICO Defendants argue that the Court should not apply this regulation because there is no statutory basis supporting it. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Because the power to promulgate regulations extends only to the power to "effect the will of Congress as expressed in the statute . . . every regulation and rule must be consistent with the terms and provisions of the statute." *Dalton v. United States*, 816 F.2d 971, 974 (4th Cir. 1987) (internal citation omitted). The regulation at issue is found within 42 C.F.R. § 108, entitled "Medicare secondary payer (MSP) procedures" which was promulgated to implement section 232 of the Medicare Modernization Act of 2003, specifically a provision stating that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. §

24

1395w-26(b)(3). Section 232 was promulgated to implement congressional intent to "prohibit[]" States from exercising authority over MA plans in any area other than State licensing laws and State laws relating to plan solvency," including to prevent States from "limit[ing] the amount an MA organization can recover from liable third parties under Medicare secondary payer procedures." Establishment of the Medicare Advantage Program, 40 Fed. Reg. 4588, 4620 (proposed Jan. 28, 2005) (to be codified at 42 C.F.R. pts. 417, 422). Such concerns could fairly include state laws relating to subrogation. For example, in *Nott v. Aetna*, 303 F. Supp. 2d 565 (E.D. Pa. 2004), which pre-dates the regulation, the court noted that there was a conflict between state and federal law where the plaintiff asserted that a state law barred enforcement of subrogation rights, while the subrogation right at issue was contained in a health insurance contract and was specifically authorized by the Medicare Act. *Id*. at 566-67; *see also Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 194-95 (S.D.N.Y. 2012) (finding, after the promulgation of the regulation, that a New York anti-subrogation statute was preempted based in part on 42 U.S.C. § 1395w-26(b)(3) and 42 C.F.R. § 422.108(f)). Moreover, in *In re Avandia Marketing*, in discussing 42 C.F.R. § 422.108(f), the court noted the need for MAOs to have the same recovery mechanisms available to the Government because CMS assumes that they will have a similar rate of collection from primary payers. *Avandia*, 685 F.3d at 366.

In this context, where MAOs already have a statutory private right of action under 42 U.S.C. § 1395y(b)(3)(A), the extension to MAOs of the same range of rights relating to the recovery of payments from primary providers, including rights relating to subrogation that arguably may facilitate recovery, can be fairly construed as within the purview of § 1395w-26(b)(3), which was aimed at preventing states from imposing their own rules on MAOs that would limit their ability recover. The Court therefore finds within § 1395y(b)(3)(A) and § 1395w-

26(b)(3) sufficient statutory authority for 42 C.F.R. § 422.108(f). Because that regulation, in conjunction with 42 C.F.R. § 411.26, grants subrogation rights to secondary-payer MAOs, the Court will deny the Motion as to Count II of the No-Fault Action.

### D.    Maryland Public Policy

The GEICO Defendants also argue that Plaintiffs' claims fail because they are based on assignments that are void as contrary to Maryland public policy. Specifically, the GEICO Defendants rely on *Accrued Financial Services, Inc. v. Prime Retail, Inc.*, 298 F.3d 291 (4th Cir. 2002), in which Accrued Financial Services, Inc. ("Accrued") entered into agreements with commercial tenants in outlet shopping malls under which Accrued reviewed the clients' leases to identify discrepancies between costs charged by their landlords and those allowed by their leases. *Id.* at 294-95. Pursuant to those agreements, the tenants assigned any potential legal claims to Accrued; Accrued was authorized to "contact, negotiate, and settle" with the landlords, and to file lawsuits if necessary, to recover any identified overcharges; and Accrued was permitted to retain 40 to 50 percent of any recovery it obtained. *Id.* at 294-95. In upholding the dismissal of a civil action brought by Accrued against a landlord for improper charges, the court found that the assignments violated "Maryland's strong public policy against the stirring up [of] litigation or promoting litigation for the benefit of the promoter rather than for the benefit of the litigant or the public," and that any such contract is therefore "void in Maryland and will not be enforced by its courts." *Id.* at 299-300.

The court grounded this conclusion in common law prohibitions on champerty, defined as a "bargain with a [party] . . . to divide the land or other matter sued for between them . . . whereupon the champertor is to carry on the party's suit at his own expense"; barratry, defined as "frequently . . . stirring up suits"; and maintenance, defined as "officious intermeddling

26

in a suit that no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it." *Id*. at 298 n.5, 300. While acknowledging that the law no longer strictly bars these forms of conduct, the court found that "Maryland continues to reserve a policy against some of the originally prohibited conduct," specifically, that there is currently a public policy against "a modern form of barratry" consisting of "stirring up litigation and strife, encourag[ing] others either to bring actions, or to make defenses which they have no right to make." *Id*. at 298-99. In finding that the arrangement in *Accrued* violated this public policy, the court focused on the facts that Accrued had no preexisting connection to the underlying claims; the clients were not aware of the existence of claims before Accrued proposed to conduct audits; Accrued received total control over decisions about recovery, including decisions about whether and how to pursue litigation; and Accrued's compensation was dependent on what claims it could identify and pursue to recovery. *Id*. at 297-98. The court noted that while a choice-of-law provision in the assignments provided that California law governed the agreements, that provision was enforceable only "to the extent that the chosen law does not violate a fundamental public policy of the forum state, Maryland." *Id*. at 297.

The GEICO Defendants argue that the assignments to Plaintiffs are "materially indistinguishable" from those found unenforceable in *Accrued* as "essentially lawsuit-mining arrangements." Mot. at 19. Although there are many similarities between the terms of Plaintiffs' assignments and those at issue in *Accrued*, the Court does not find that *Accrued*, even while controlling authority to this Court, provides a sufficiently definitive statement of the parameters of this identified Maryland public policy to allow for a determination of whether Plaintiffs' assignments must be deemed void based on a violation of a strong public policy of Maryland. Notably, *Accrued* does not identify, and this Court has not found, a clear statement of the contours

27

of this public policy in either a Maryland statute or a decision of the Supreme Court of Maryland, formerly known as the Court of Appeals of Maryland ("the Maryland Supreme Court"). Although *Accrued* cited *Son v. Margolius, Mallios, Davis, Rider & Tomar*, 709 A.2d 112 (Md. 1998), in that case the Maryland Supreme Court addressed an entirely different practice in that it considered whether an arrangement under which an attorney shared a portion of the attorney's fees with an intermediary who had connected the plaintiff to the attorney violated a 1908 Maryland barratry statute, Md. Code Ann., Bus. Occ. & Prof. § 10-604(b) (West 2018). *Son*, 709 A.2d. at 121-22. In considering that issue, the court discussed the evolution of the common law and the enactment of the 1908 barratry statute, and it assessed whether the fee-splitting arrangement violated that statute, but it did not consider, much less find, that there is a fundamental public policy in Maryland against barratry, champerty, or maintenance. *See id.* at 119-21. It therefore did not describe the parameters of such a policy and notably did not declare that any such public policy is strong enough to displace a choice-of-law provision and void an assignment without further analysis. *Id.* at 120-21. Although the *Son* court discussed whether the fee-splitting arrangement was void as against public policy, the public policy considered was not one of barratry, but one grounded in the Maryland Lawyer's Rules of Professional Conduct that generally prohibited an attorney from sharing legal fees with a non-attorney. *Id.* at 121-22. The other Maryland case law on this issue cited in *Accrued* consists of two cases from over 100 years ago, neither of which voided an agreement on the basis advanced by the GEICO Defendants in the present case. *See Accrued*, 298 F.3d at 299; *Schaferman v. O'Brien*, 28 Md. 565, 574 (1868); *Wheeler v. Harrison*, 50 A. 523, 526 (Md. 1901).

As for the 1908 barratry statute addressed in *Son*, that provision states that:

> Without an existing relationship or interest in an issue:  (1) a person may not, for personal gain, solicit another person to sue or to retain a lawyer to represent the other person in a lawsuit.

Md. Code Ann., Bus. Occ. & Prof. § 10-604(b).  The language of this statute does not, on its face, establish that Plaintiffs' assignments violate this provision.  Moreover, the existence of this statute does not necessarily demonstrate that this prohibition establishes a public policy of the state against the assignments received by Plaintiffs, let alone one sufficiently strong to displace the application of contrary state law pursuant to a choice-of-law provision or to otherwise render a contract unenforceable in Maryland courts.  *See Bethlehem Steel v. G.C. Zarnas & Co.*, 498 A.2d 605, 608 (Md. 1985) (stating that a dissimilarity between Maryland law and the law of another jurisdiction "does not render the latter contrary to Maryland public policy," and that "for another state's law to be unenforceable, there must be "a strong public policy against its enforcement in Maryland"); *see also Nat'l Glass, Inc. v. J.C. Penney Properties, Inc.,* 650 A.2d 246, 249-50 (Md. 1994) (in finding that a statute evidenced a strong public policy, considering the fact that the Maryland legislature made an explicit determination of public policy as part of its analysis).  Particularly where most if not all of Plaintiffs' assignments have choice-of-law provisions stating that those contracts are governed by the law of states other than Maryland, this Court finds a lack of controlling Maryland authority that would permit a definitive determination of whether Plaintiffs' assignments are void as against Maryland public policy.

Under Maryland's Uniform Certification of Questions Act, a federal court may certify a question of law to the Maryland Supreme Court if "the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State."  Md. Code Ann., Cts. & Jud. Proc. § 12–603

(West 2020). In a May 6, 2024 Order, the Court sought the parties' views on whether it should certify a question or questions to the Maryland Supreme Court on this issue. Although both sides oppose such certification, neither side's arguments against certification are persuasive. While the GEICO Defendants argue that certification is not necessary because controlling Maryland authority exists, they rely on the discussion in *Accrued* of *Son*, other case law, and the barratry statute. For the reasons discussed above, those sources do not provide a sufficiently clear and definitive statement of Maryland law on this issue that can be applied to the present case. As for Plaintiffs, they primarily argue that their assignments are "markedly different" from those in *Accrued*. Pls.' Supp. Brief at 1, ECF Nos. 227 (No. TDC-17-0711), 210 (No. TDC-17-0964). There are, however, notable similarities, including that the Assignors generally were not aware that they had claims at the time that they entered into the assignments; Plaintiffs had no preexisting interest in the claims; Plaintiffs were assigned any and all legal claims and have control over any litigation conducted; and in many instances, Plaintiffs' compensation was based on a contingent arrangement under which the Assignors would receive a percentage of the recovery and Plaintiffs would receive the remainder. While there are also differences that preclude an unequivocal finding that Plaintiffs' assignments are void as against public policy under *Accrued*, the similarities are sufficiently substantial that there is a real possibility that guidance from the Maryland Supreme Court on the specific contours of any Maryland public policy against barratry or champerty may be dispositive of Plaintiffs' claims.

"The purpose of the Maryland Uniform Certification of Questions Act is to promote the *widest possible use* of the certification process in order to promote judicial economy and the proper application of Maryland's law in a foreign forum." *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1056 (Md. 2010) (citation omitted). It "removes the need for judicial guesswork"

in circumstances in which there are "questions of Maryland law that are unsettled, uncertain, or otherwise controversial in light of cases decided by other courts." *Id*. (quoting Richman & Reynolds, Understanding Conflict of Laws § 105 (3d ed. 2002)). Here, the answer to the questions of whether there is a Maryland public policy relating to barratry or champerty that is violated by Plaintiffs' assignments, and whether that public policy is sufficiently strong to displace choice-of-law provisions, may be determinative of an issue in this case and may even be dispositive as to the entire case. As discussed above, there is no controlling appellate decision, constitutional provision, or statute that clearly resolves this issue. For these reasons, the Court will certify the following questions to the Maryland Supreme Court: (1) whether it is the current fundamental public policy of Maryland to prohibit schemes to stir up and promote litigation for the benefit of the promoter rather than for the benefit of the real party in interest; (2) if there is such a public policy, what are the specific terms of such a public policy; and (3) if there is such a public policy, whether it is sufficiently strong that any agreement that violates it cannot be enforced by courts in Maryland, regardless of any choice-of-law provision contained in the agreement. In light of the certification, the Motion will be denied without prejudice as to this issue, other pending motions will be dismissed without prejudice to refiling after the Maryland Supreme Court addresses the certified questions, and these cases will be stayed pending the resolution of the certification process.

### E.     Statute of Limitations

Finally, in the Motion, the GEICO Defendants also contend that many of Plaintiffs claims are time-barred. Because resolution of this issue would not be dispositive of all claims and may not be necessary, the Court declines to address it at this time. The Motion will be denied without prejudice as to this issue.

31

## CONCLUSION

For the foregoing reasons, the Combined Dispositive Motion will be DENIED, in that the Motion will be denied on the issues of standing and the legal authority to assert the causes of action in Counts I and II, denied without prejudice as to the public policy issue so that it may be certified to the Maryland Supreme Court, and denied without prejudice as to the issue of the statute of limitations. A separate Order shall issue.

Date:   June 10, 2024

THEODORE D. CHUANG
United States District Judge

32