**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

MAO-MSO RECOVERY II, LLC,
MSP RECOVERY, LLC,
MSPA CLAIMS 1, LLC,
MSP RECOVERY CLAIMS, SERIES LLC,
MAO-MSO RECOVERY II, LLC, SERIES
PMPI and
MSP RECOVERY CLAIMS SERIES 44,
LLC,

     Plaintiffs,

     v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, *et al.*,

     Defendants.

Civil Action No. 17-0711-TDC

---

MSPA CLAIMS 1, LLC,
MSP RECOVERY CLAIMS, SERIES LLC,
MSP RECOVERY CLAIMS SERIES 44,
LLC and
MAO-MSO RECOVERY II LLC, SERIES
PMPI,

     Plaintiffs,

     v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, *et al.*,

     Defendants.

Civil Action No. 17-0964-TDC

**MEMORANDUM OPINION**

In these related cases, Plaintiffs are limited liability companies that were assigned the rights

to pursue unpaid reimbursements on behalf of Medicare Advantage organizations ("MAOs") and

other secondary payers that had paid certain medical expenses of Medicare Advantage enrollees. According to Plaintiffs, Defendants, including Government Employees Insurance Company ("GEICO"), are automobile insurance companies that, as primary payers, were obligated to pay such expenses pursuant to the Medicare Secondary Payer statute, 42 U.S.C. § 1395y.  In the operative complaints, Plaintiffs seek reimbursement from Defendants pursuant to 42 U.S.C. § 1395y(b)(3)(A), which states: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  42 U.S.C. § 1395y(b)(3)(A).  Generally, paragraph (1) of this subsection requires health insurance plans to provide coverage to individuals covered by their plans—such as because they are employees of a company which offers coverage through a group health plan—even though they are also eligible for Medicare. *Id.* § 1395y(b)(1).  Paragraph (2)(A) establishes the general requirement that Medicare act as a secondary payer and not make payments for medical expenses covered by primary payers. *Id.* § 1395y(b)(2)(A).

Previously, Defendants filed a dispositive motion in which, among other arguments, they sought summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that § 1395y(b)(3)(A) does not authorize MAOs to bring a private cause of action.  On June 10, 2024, the Court denied Defendants' motion, including because it found that the statute authorized suits by MAOs and by "first tier" and "downstream" entities that enter into agreements with MAOs and incur financial costs associated with making conditional payments or reimbursing MAOs for their conditional payments. *MAO-MSO Recovery II, LLC, Series PMPI v. Gov't Emps. Ins. Co.*, No. 17-0711-TDC, 2024 WL 2924063, at *9 (D. Md. June 10, 2024); *see* 42 C.F.R. § 422.2 (defining first tier and downstream entities).  The accompanying Memorandum Opinion sets forth the

2

applicable statutory framework for these cases, the relevant facts and procedural history, and the Court's reasoning for its conclusion that the statute provides for a private right of action for Plaintiffs, all of which are incorporated by reference. *See MAO-MSO Recovery II, LLC, Series PMPI*, 2024 WL 2924063, at *1–3, *7–10.

Since that ruling, limited progress has been made in these cases. On July 16, 2024, the Court certified questions of state law to the Supreme Court of Maryland, which held on July 11, 2025 that the assignments of rights to Plaintiffs are not void as against Maryland public policy. *See Gov't Emps. Ins. Co. v. MAO-MSO Recovery II, LLC, Series PMPI*, 339 A.3d 858, 860 (Md. 2025). Plaintiffs and Defendants have since retained new counsel, with whom the Court held Case Management Conferences on January 22, 2026 and March 6, 2026 to discuss mediation, discovery, and multiple proposed motions, including Defendants' Motion to Sever Plaintiffs' Claims. These cases are presently in discovery, and a trial is expected to occur in the spring of 2027, approximately 10 years after the initiation of these cases.

Over 18 months after the ruling at issue, Defendants filed a Motion for Certification of the Court's June 10, 2024 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("the Motion for Certification"), which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion for Certification will be denied.

## DISCUSSION

In the Motion, Defendants seek to appeal the Court's determination in the June 10, 2024 Order that 42 U.S.C. § 1395y(b)(3)(A) permits MAOs and their downstream entities to advance a private cause of action to recover medical expenses that should have been paid by primary payers such as GEICO. Because that ruling was a non-final order and thus not ordinarily appealable until

3

the end of the case, Defendants ask the Court to certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## I.      Legal Standard

Interlocutory appeals "are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). A federal district court may certify for appeal an order that is not otherwise appealable if it concludes (1) that the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Piecemeal interlocutory appeals should be "avoided" because review of non-final judgments is "effectively and more efficiently reviewed together in one appeal" at the end of the litigation. *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993). Since certification under § 1292(b) should be granted "sparingly," the statute's requirements must be "strictly construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.* ("*Michaels*"), 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)).

## II.     Controlling Question of Law

The United States Court of Appeals for the Fourth Circuit has defined a controlling question of law to be a "pure question of law," that is, "an abstract legal issue that the court of appeals can decide quickly and cleanly." *Id.* (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)). A pure question of law does not require the appellate court "to delve beyond the surface of the record in order to determine the facts." *Id.* at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). In contrast, a question is not a controlling question of law where the appellate court is asked to consider "whether the district court properly

applied settled law to the facts or evidence of a particular case." *Id.* (quoting *McFarlin*, 381 F.3d at 1259).

The parties do not dispute that the question of whether § 1395y(b)(3)(A) authorizes MAOs to bring a private cause of action to secure payment of medical expenses by primary payers is a controlling question of law.  Because this question is a purely legal issue that may be readily resolved by an appellate court, and a holding that § 1395y(b)(3)(A) does not confer a private right of action on MAOs or their downstream entities would resolve Plaintiffs' claims and would thus be controlling, the Court finds that the first element of the test is satisfied.

## III.   Substantial Ground for Difference of Opinion

On the second element, whether there is "substantial ground for difference of opinion" on a pure question of law, courts may find substantial grounds "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  However, the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).  Lack of unanimity among courts, *North Carolina ex rel. Howes v. W.R. Peele, Sr. Tr.* ("*Howes*"), 889 F. Supp. 849, 852 (E.D.N.C. 1995), and a lack of relevant authority, *Union Cnty. v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th Cir. 2008), do not suffice.  Similarly, a party's disagreement with the decision of the district court, no matter how strong, does not establish substantial grounds. *Couch*, 611 F.3d at 633.

The Fourth Circuit has not yet decided whether § 1395y(b)(3)(A) permits suits such as Plaintiffs' present action, but it is not a novel question of law in that other circuits have addressed and decided the issue, and those courts are not "in dispute on the question." *Id.*  The three circuits

5

to have directly addressed the question, the United States Courts of Appeals for the Second, Third, and Eleventh Circuits, have all held that the statute confers such a private right of action. *See Aetna Life Ins. Co. v. Big Y Foods, Inc.* ("*Aetna*"), 52 F.4th 66, 73 (2d Cir. 2022); *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Avandia*"), 685 F.3d 353, 359 (3d Cir. 2012); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.* ("*Humana I*"), 832 F.3d 1229, 1236–38 (11th Cir. 2016). With no disagreement among the circuits, and with no other compelling basis to find substantial grounds for disagreement, such as a novel and difficult legal question or a complex issue of foreign law, this element is not satisfied.

Defendants nevertheless argue that this element is satisfied for several reasons. First, Defendants question the Third Circuit's decision in *Avandia* because it relied in part on deference to an agency's interpretation of § 1395y(b)(3)(A), which "is no longer defensible" after the overruling of *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Mot. at 12, ECF Nos. 262-1 (17-0711-TDC), 245-1 (17-0964-TDC); *see Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (overruling *Chevron*). The court, however, applied *Chevron* deference only as an alternative path to its conclusion. *See Avandia*, 685 F.3d at 365–66 ("[W]e hold the text of § 1395y(b)(3)(A) to unambiguously provide [MAOs] with a private cause of action."). Where the Third Circuit primarily reached its determination based on the plain language of the statute, there is no basis to conclude that its decision is now in question.

Relatedly, Defendants argue that because a judge on the Second Circuit concurred in *Aetna* based on *Chevron* deference, that judge would likely conclude differently now. *See Aetna*, 52 F.4th at 76–77 (Nardini, J., concurring in the judgment). Beyond the fact that the concurring opinion does not state whether that would be the case, *see id.*, the fact remains that the other judges

6

on the panel, constituting a majority, found the private right of action based on the plain language of the statute, so there is no basis to conclude that the Second Circuit would rule differently now.

Defendants also assert that a substantial ground for a difference of opinion exists in the federal judiciary on this issue because judges dissented from the Eleventh Circuit's decision in *Humana I* and from the subsequent denial of rehearing en banc. *See Humana I*, 832 F.3d at 1240 (W. Pryor, J., dissenting); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 880 F.3d 1284, 1288–91 (11th Cir. 2018) (Tjoflat, J., dissenting from denial of rehearing en banc). However, regardless of the persuasive value of those dissenting opinions, the test for whether there is a substantial ground for difference of opinion generally focuses not on if judges disagree, but on if courts do so. *See Couch*, 611 F.3d at 633 (stating that under § 1292(b), courts traditionally find "a substantial ground for a difference of opinion" when "the circuits are in dispute on the question," and that it is insufficient to show "[t]hat settled law might be applied differently"). While there is no bar on considering dissenting opinions as part of the analysis, Defendants have not cited, and this Court has not identified, case law in which dissenting opinions alone have been found to establish a substantial ground for a difference of opinion. *See, e.g.*, *David v. Alphin*, No. 07-CV-11-RJC, 2009 WL 3633889, at *4 (W.D.N.C. Oct. 30, 2009) (finding that "a dissent in an Eighth Circuit opinion" and two amicus briefs were insufficient to demonstrate a substantial ground for difference of opinion on "a matter of first impression in the Fourth Circuit"); *Simmons v. Galvin*, No. 01-11040-MLW, 2008 WL 11456109, at *2 (D. Mass. Jan. 16, 2008) (finding that a split between the Second and Ninth Circuits, both of which included dissents, demonstrated a substantial ground for a difference of opinion).

Here, where there is no split among the circuits or even among district courts, and where Defendants do not seek review of a novel legal issue, the dissenting opinions cited by Defendants

do not tip the scale sufficiently to warrant a finding in their favor. Where all three circuits to address this issue have held that MAOs have a private cause of action based on the "broad and unambiguous" language of the statute, and where this Court has already rejected Defendants' convoluted reading of § 1395y(b)(3)(A) as inconsistent with that statutory language, the Court does not find that the identified dissenting views, while certainly entitled to respect, are sufficiently persuasive to justify certification of an interlocutory appeal in this case. *Avandia*, 685 F.3d at 359; *see Aetna*, 52 F.4th at 73; *Humana I*, 832 F.3d at 1236; *MAO-MSO Recovery II, LLC, Series PMPI*, 2024 WL 2924063, at *7–10.

Next, Defendants point to two decisions of the United States Court of Appeals for the Sixth Circuit that addressed the meaning of § 1395y(b)(3)(A) but in relation to questions about whether certain conditions must be satisfied in order to bring a private right of action. *See Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund* ("*Bio-Medical*"), 656 F.3d 277, 279–80, 286 (6th Cir. 2011) (in a case against a private insurer under § 1395y(b)(3)(A), holding that "a healthcare provider need not previously 'demonstrate' a private insurer's responsibility to pay before bringing a lawsuit under the Act's private cause of action" and stating that "a primary plan is liable under the private cause of action when it discriminates against planholders on the basis of their Medicare eligibility and therefore causes Medicare to step in and (temporarily) foot the bill"); *DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, 978 F.3d 326, 337 (6th Cir. 2020) (in a case against a private insurer under § 1395y(b)(3)(A) for alleged discrimination against end-stage renal disease patients, holding that the Medicare Secondary Payer statute "require[s] a conditional payment by Medicare before a planholder (or a planholder's assignee) may sue under the private cause of action"), *rev'd on other grounds*, 142 S. Ct. 1968, 1973–75 (2022). These cases in no way addressed or ruled on whether the private

8

cause of action in § 1395y(b)(3)(A) is available to MAOs, which were not involved in those cases. Although Defendants assert that these decisions are "irreconcilable" with those of the Second, Third, and Eleventh Circuits, Mot. at 11, this Court finds that the analysis of § 1395y(b)(3)(A) in *Bio-Medical* and in *DaVita*, which focused on different issues, does not present any irreconcilable conflict with its analysis or that of the circuits that have found a private cause of action for MAOs. The Sixth Circuit's opinions therefore do not provide a basis to find a substantial ground for a difference of opinion on the present issue.

Finally, Defendants point to one federal district court that has reached their preferred outcome, but that decision was overturned by the Third Circuit. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 07-MD-01871, 2011 WL 2413488, at *1 (E.D. Pa. June 13, 2011), *rev'd*, 685 F.3d 353 (3d Cir. 2012). Defendants do not cite any other district court that has held that the private cause of action is not available to MAOs. Even if other district courts had ruled in Defendants' favor, that would not provide a sufficient basis to certify an interlocutory appeal here in light of the unanimity of circuit authority. *See Couch*, 611 F.3d at 633; *Howes*, 889 F. Supp. at 852.

As Defendants' arguments are unavailing, the Court concludes that the second element is not met, and the Motion will be denied on this basis. *See Couch*, 611 F.3d at 633 (stating that all three elements of § 1292(b) must be met).

## IV.    Material Advancement of the Termination of the Litigation

As for the third element, whether an immediate appeal may materially advance the ultimate termination of the litigation, certification of an interlocutory appeal is appropriate only "in exceptional situations in which doing so would avoid protracted and expensive litigation." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, No. 88-8120, 1989 WL 42583, at *2 (4th Cir. Apr. 26, 1989)

(unpublished) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). More often, an interlocutory appeal can cause "delay, adding costs and diminishing coherence" and "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson*, 515 U.S. at 309. Thus, under this prong, the mere fact that an issue's "resolution at this time may save pre-trial and trial effort and expense is not determinative"; rather, the "question best adapted" to interlocutory review is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin*, 1989 WL 42583, at *5 (citing *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986)); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (stating that this element is met when "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation"). Where litigation is likely to continue in a significant way regardless of the resolution of an interlocutory appeal, the appeal does not materially advance the termination of the case. *See Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 528 (D. Md. 2016) (declining to certify an interlocutory appeal where a reversal would likely lead to re-filed litigation in state court).

Here, the resolution of the question might materially advance the ultimate termination of the litigation in that a ruling by the Fourth Circuit in Defendants' favor would end the case. However, a ruling in Plaintiffs' favor would not. The resolution of the question will thus not necessarily be "completely dispositive of the litigation . . . whichever way it goes." *Fannin*, 1989 WL 42583, at *5. Further, if Defendants prevail in the litigation before this Court, an appeal on this question, and the expenditure of appellate court resources, would have "turned out to be unnecessary." *Johnson*, 515 U.S. at 309. Nevertheless, where there is at least a possibility that

10

the resolution of the interlocutory appeal would end the case, the Court finds that the minimum requirement for this element is satisfied.

## V.    Undue Delay

Finally, some courts recognize an independent "nonstatutory requirement" of § 1292(b): that "the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000); *see Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (stating that "a district judge should not grant an inexcusably dilatory request" for certification under § 1292(b) that was filed two months after the order); *Ferraro v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (denying a § 1292(b) motion in part because it was filed more than two months after the order). Plainly, the appropriate time to seek certification of the June 10, 2024 Order would have been immediately following that ruling, such that the interlocutory appeal could have occurred during the year that the Court awaited a ruling from the Maryland Supreme Court. Defendants' claim that they could not seek such review because this Court had stayed the case pending the Maryland Supreme Court ruling is entirely unpersuasive, as there was no reason that they could not have sought a lifting of the stay for the limited purpose of approving such an interlocutory appeal. Further, even after the Maryland Supreme Court ruling on July 11, 2025, Defendants neither sought certification nor sought to lift the stay for another five months until December 22, 2025, when it first notified the Court of its intent to seek an interlocutory appeal.

This delay must be viewed in light of the history of this case, which is now close to 10 years old. In that context, waiting one-and-a-half years to seek certification is unacceptable. The fact that Defendants have recently retained new counsel does not excuse the failure to take actions

11

that should have been taken earlier in the case. Indeed, the claim by Defendants' counsel that these cases, which were filed in 2017, are "practically speaking, . . . at [their] start," Reply at 9, ECF Nos. 274 (17-0711-TDC), 257 (17-0964-TDC), illustrates an utter lack of appreciation for the need for timely resolution of disputes and strongly suggests that Defendants' strategy, both in relation to seeking an interlocutory appeal and otherwise, is to prolong the delay in resolving these cases for strategic reasons. Thus, to the extent that undue delay is a relevant factor, it provides an additional basis for denial of the Motion.

Even without consideration of the undue delay, as discussed above, because the Court finds that the issue presented does not involve a substantial ground for a difference of opinion, the Motion will be denied. In any eventual appeal of this case, the parties will be able to present their arguments on § 1395y(b)(3)(A) to the Fourth Circuit in the ordinary course of litigation.

## CONCLUSION

For the foregoing reasons, the Motion for Certification of the Court's June 10, 2024 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) will be DENIED. A separate Order shall issue.

Date: June 29, 2026

THEODORE D. CHUANG
United States District Judge

12